EXHIBIT "A"

IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| | |
|---|---|
| MEGHAN E. KLEIN, individually and in her capacity as Executrix of the ESTATE OF MICHAEL P. DONATUCCI<br>629 Swedesford Road<br>Malvern, PA 19355<br><br>*Plaintiffs*<br><br>*vs.*<br><br>RONALD R. DONATUCCI, SR., ESQUIRE, individually and in his capacity as REGISTER OF WILLS OF THE CITY OF PHILADELPHIA and CLERK OF THE ORPHANS' COURT DIVISION OF THE COURT OF COMMON PLEAS OF PHILADELPHIA<br>Room 180, City Hall<br>Philadelphia, PA 19107; and<br><br>CITY OF PHILADELPHIA<br>1515 Arch Street, 14th Floor<br>Philadelphia, PA 19102; and<br><br>RONALD R. DONATUCCI, JR.<br>3515 Capri Court<br>Philadelphia, PA 19145; and<br><br>RONALD MICHAEL RONALD, L.P.<br>104 Queen Street<br>Philadelphia, PA 19147; and<br><br>RRM ASSOCIATES, LLC<br>104 Queen Street<br>Philadelphia, PA 19147; and<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB<br>1 West Lancaster Avenue<br>Paoli, PA 19301; and<br><br>DEBRA J. FOGLIETTA<br>1402 E. Moyamensing Avenue, Unit 3<br>Philadelphia, PA 19107; and | CIVIL ACTION<br><br>NO. 2018-12018-TT<br><br>**NOTICE TO DEFEND** |

c/o Ronald R. Donatucci, SR

OFFICE OF THE PROTHONOTARY CHESTER CO. PA.
2019 MAR 21  PM 3:44
FILED

1

JAMES F. MANNION, ESQUIRE
1755 Thistle Way
Malvern, PA 19355; and

MANNION PRIOR, LLP
840 First Avenue, Suite 100
King of Prussia, PA 19406-1459; and

**NOTICE TO DEFEND**

FRANK DeSIMONE, ESQUIRE
123 S. Broad Street, Suite 2500
Philadelphia, PA 19109; and

BRIMFIELD CAPITAL, LLC
45 Brimfield Road
Audubon, PA 19403; and

HAU-KAY T. SIU
45 Brimfield Road
Audubon, PA 19403

*Defendants*

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defense or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Chester County Bar Association
15 W. Gay Street
West Chester, PA 19380
610-429-1500

BERKOWITZ KLEIN, LLP
Robert A. Klein, Esquire
Pa. Attorney Id. No. 44670
629 B Swedesford Road
Swedesford Corporate Center
Malvern, PA 19355-1530
Tel. 610-889-3200

Local Counsel for Plaintiffs
Meghan E. Klein, individually and in
her capacity as Executrix of the
Estate of Michael P. Donatucci

## IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

MEGHAN E. KLEIN, individually and in her
capacity as Executrix of the ESTATE OF
MICHAEL P. DONATUCCI
629 Swedesford Road
Malvern, PA 19355

          *Plaintiffs*

*vs.*

RONALD R. DONATUCCI, SR., ESQUIRE,
individually and in his capacity as
REGISTER OF WILLS OF THE CITY OF
PHILADELPHIA and CLERK OF THE
ORPHANS' COURT DIVISION OF THE
COURT OF COMMON PLEAS OF
PHILADELPHIA
Room 180, City Hall
Philadelphia, PA 19107; and

CITY OF PHILADELPHIA
1515 Arch Street, 14th Floor
Philadelphia, PA 19102; and

RONALD R. DONATUCCI, JR.
3515 Capri Court
Philadelphia, PA 19145; and

RONALD MICHAEL RONALD, L.P.
104 Queen Street
Philadelphia, PA 19147; and

RRM ASSOCIATES, LLC
104 Queen Street
Philadelphia, PA 19147; and

DOCKET NO. 2018-12018-TT

COMPLAINT

JURY TRIAL DEMANDED

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.
2019 MAR 21  PM 3: 44

1

WILMINGTON SAVINGS FUND
SOCIETY, FSB
1 West Lancaster Avenue
Paoli, PA 19301; and

DEBRA J. FOGLIETTA
1402 E. Moyamensing Avenue, Unit 3
Philadelphia, PA 19107; and

JAMES F. MANNION, ESQUIRE
1755 Thistle Way
Malvern, PA 19355; and

MANNION PRIOR, LLP
840 First Avenue, Suite 100
King of Prussia, PA 19406-1459; and

FRANK DeSIMONE, ESQUIRE
123 S. Broad Street, Suite 2500
Philadelphia, PA 19109; and

BRIMFIELD CAPITAL, LLC
45 Brimfield Road
Audubon, PA 19403; and

HAU-KAY T. SIU
45 Brimfield Road
Audubon, PA 19403

*Defendants*

Plaintiff Meghan E. Klein, individually, and in her capacity as the Executrix of the Estate of Michael P. Donatucci, deceased (the "Estate"), respectfully submits this Complaint and alleges as follows:

## INTRODUCTION

The allegations set forth herein are virtually identical to the allegations in the already pending federal action, *Meghan E. Klein, individually and in her capacity as Executrix of the Estate of Michael P. Donatucci v. Ronald R. Donatucci, Sr., Esquire, individually and in his*

2

*capacity as Register of Wills of the City of Philadelphia and Clerk of the Orphans' Court Division, et al.*, U.S. District Court for the Eastern District of Pennsylvania, Civ. A. No. 2:19-cv-00893-MMB, filed March 1, 2019 (the "Federal Court Action"). Only out of an abundance of caution was the summons filed in this Court, in order to preserve Plaintiffs' rights and claims in the event it becomes necessary to litigate them in this Court. These claims should be tried in the Federal Court Action Plaintiffs have initiated. There is no need (and indeed, it would be improper in light of the pending Federal Court Action) for this Court to decide them now. For this reason, Plaintiffs anticipate requesting the Court to stay this case during the pendency of the Federal Court Action, which could obviate the need for further proceedings in this Court. Meghan makes these allegations here only to preserve her rights and claims and avoid any prejudice in the event that the Federal Court should determine that these allegations will not be heard by the Federal Court but in this Court.

The following allegations and numbered paragraphs correspond to those in the Complaint in the Federal Court Action.

1.      This is a 42 U.S.C. § 1983 lawsuit, with state law claims, to enjoin and recover for the continuing gross abuse of power by Defendant Ronald R. Donatucci, Sr., Esquire ("Donatucci"), the Register of Wills of Philadelphia and Clerk of the Orphans' Court Division of the Court of Common Pleas of Philadelphia. Specifically, Donatucci, who probated his son's Will, is misusing the power of his office to harass the Plaintiff, Meghan E. Klein, the young and grieving fiancée (and girlfriend of more than 10 years) of Donatucci's son, Michael, who committed suicide in July 2016, two months prior to their wedding date. Meghan was named by her fiancé to be the Executrix and primary beneficiary of his Estate. His mother is the only other beneficiary of his Estate.

2.      Donatucci has worn many hats over the years. In particular, in addition to serving as Register of Wills for nearly 40 years, Donatucci is in the real estate business. He, along with his two sons, Michael and Ronald R. Donatucci, Jr. ("Donatucci Jr."), were partners in numerous commercial real estate projects in the City of Philadelphia, through limited liability companies and other business entities, and they managed those properties through a family real estate business, Debro Investments.

3.      Under Michael's Will (which Donatucci, again the Register of Wills, initially tried to hide), Meghan, along with Michael's mother (Donatucci's ex-wife), inherited Michael's minority interests in those properties.

4.      From the moment that Michael's death was revealed, Donatucci's one goal has been to remove Meghan as Executrix and to strong arm her into surrendering primarily her inherited real estate interests.

5.      One of the driving forces of this scheme has been to deprive her of information regarding Michael's shared business interests with his father. Donatucci has gone to extreme lengths to hide information from Meghan, including taking possession of Michael's phone and email accounts (including changing passwords) upon his passing and withholding them from the Executrix, Michael's grieving fiancée, despite the fact that she was also specifically named digital executrix in Michael's Will. It took multiple court orders to compel Donatucci's cooperation in this regard, though it remains unclear as to whether information was tampered with, altered, or destroyed by Donatucci and/or others at his direction, including Donatucci Jr.

6.      Donatucci has used the power of his office to interfere with Meghan's rights and is attempting to terrorize her into surrendering her to-be-inherited interests for almost nothing. Because of his long-standing position, Donatucci has enormous political power in the Philadelphia

legal community. From the moment of Michael's passing, Donatucci directed official actors to doing his bidding so that he could obtain a personal advantage with regard to his business dealings with Michael – a classic abuse of power.

7.      On July 15, 2016, in the hours after Michael's apparent suicide (he purportedly killed himself at the apartment that he shared with Meghan), Donatucci directed the removal and replacement of police officers of the Philadelphia Police Department who were investigating Michael's death at the apartment (which is adjoined to Donatucci's home in the Queen Village section of Philadelphia), with police officers friendly to Donatucci. Donatucci and City employees from the Register of Wills Office, at the direction of Donatucci, removed belongings of Michael and Meghan from the apartment over a period of time beginning on the date of Michael's passing (including at the crime scene). Most critically, they took Michael's Will and cell phone which contained emails, text messages and voicemails, which are relevant to the business disputes between Meghan, as the beneficiary, and Donatucci. Of course, Donatucci did not want Meghan to see the Will which appointed her Executrix and made her the principal beneficiary of Michael's Estate. If not for an email that Michael had sent prior to his death with a delivery date set for after his death via a program called Boomerang, the Will would have been kept from Meghan by Donatucci.

8.      Similarly, on the days following Michael's death, City employees and Donatucci Jr. removed, among other things, Michael's laptop, USBs and files, which also contained information relevant to the later business dispute between Meghan and Donatucci, none which has been returned to the Executrix. All were taken in contravention of the law.

9.      At the same time, using his official power as a form of intimidation, Donatucci obtained items of Michael's from Michael's employer, the Philadelphia Pension Fund, without informing

Meghan as the Executrix. The Pension Fund refused to turn over to the Executrix Michael's personal belongings and USBs, ultimately providing her only with redacted copies.

10.     Notwithstanding that he is the Register of Wills and should have immediately recused himself at the inception, Donatucci insisted that Meghan file the Will (that he initially stole and tried to suppress) for probate at his office. Shortly thereafter, Donatucci attempted to strong arm Meghan into selling to him Michael's real estate interests (including those Michael owned independent of Donatucci) for a fraction of their value and also into relinquishing her role as Executrix. When she refused to do so, he used the power of his office to harass and persecute her.

11.     One of many examples is that Donatucci interfered with the Estate's contractual relations in the real estate project regarding a property owned by the Estate in which Donatucci had no interest but wished to obtain for himself. Specifically, Donatucci used the power of his office in order to intimidate, influence, coerce, or persuade the bank that served as mortgagee for the business entity owning the property, Wilmington Savings Fund Society, FSB ("WSFS"), into attempting to declare a default for no good reason so that Donatucci could obtain the property for himself. This has been the unfortunate pattern of conduct.

12.     Similarly, directing a former FBI agent who is aligned with him to carry the message, Donatucci threatened Meghan's then counsel, the Philadelphia law firm Conrad O'Brien, P.C. (the "Conrad Firm"), which resulted in the Conrad Firm withdrawing as counsel to Meghan and the Estate in various state court litigations, including several between Meghan and Donatucci. The threat to the Conrad Firm was very simple – stop representing Meghan or you will be punished by the Donatucci political machine.

13.     In April 2017, upon Meghan filing the inheritance tax return regarding the Estate with the Pennsylvania Department of Revenue, Donatucci was unlawfully tipped off as to the filing and

equally unlawfully obtained a copy of the return from the Department of Revenue for his personal use. Donatucci then meddled with the inheritance tax filing by communicating with the Department of Revenue.

14.     As recounted below, there are various state court proceedings between Donatucci, nominally in his capacity as a former business partner of Michael, and Meghan, as the person who is to inherit Michael's business interests (and who is attempting to carry out her duty to Michael's mother who also is to inherit a portion of Michael's interest). But at all times, the reality is that Meghan is not litigating against a person who is merely named Donatucci – she is litigating against the Register of Wills of the City of Philadelphia of nearly the last 40 years – an individual cloaked in governmental power and who has raw political power even greater than technically afforded him by his position.

15.     The bottom line is that Donatucci wields so much political power because of his official position that Meghan cannot receive equal treatment under the law. This case is the very reason why there are federal courts – when state and local actors so abuse their power that the only recourse is a federal court. Donatucci has turned the state court system in and around Philadelphia into Mississippi right after reconstruction ended.

16.     What should have been a routine business divorce between a beneficiary and the majority partner of various real estate entities has turned into a persecution by one of the most powerful political figures in Philadelphia against a bereaved fiancée. This must stop and only federal power can right this imbalance.

17.     Thus, Meghan has come to this Court to enjoin this pattern of governmental abuse and to have this Court adjudicate her disputes with Donatucci, because they cannot be fairly judged in the state and local courts in Philadelphia.

18.     Thus, in addition to injunction and damages, under her § 1983 claims, she is also seeking a partition of the interests in the business entities that she has inherited and owns jointly with Donatucci and a recovery in various state law claims. These pendent claims are not only related to the § 1983 action, but are inextricably bound by it as described above. Only this Court can grant her the unbiased relief that she needs free of Donatucci's intimidation.

## THE PARTIES

19.     Plaintiff Meghan E. Klein is a resident of Lafayette Hill, Montgomery County, Pennsylvania.

20.     The Estate was probated in Philadelphia and maintains an address in Malvern, Chester County, Pennsylvania.

21.     Defendant Ronald R. Donatucci, Sr., Esquire, is an adult individual, an attorney licensed in Pennsylvania, and an employee of the City of Philadelphia, and he is sued in his individual capacity and in his capacity as the Register of Wills and Clerk of the Orphans' Court ("Donatucci"). He resides in Philadelphia, Pennsylvania. Donatucci is Michael's father.

22.     Defendant City of Philadelphia ("City") is a municipal corporation, duly organized under the laws of the Commonwealth of Pennsylvania, and is the employer of Donatucci, in his capacity as the Register of Wills and Clerk of the Orphans' Court.

23.     Defendant Ronald R. Donatucci, Jr. ("Donatucci Jr.") is an adult individual who resides in Philadelphia, Pennsylvania. He is Donatucci's son, and is Michael's brother.

24.     Defendant Ronald, Michael and Ronald, L.P. is a limited partnership with its principal place of business in Philadelphia, Pennsylvania. At the time of Michael's death, the limited partners of Ronald, Michael and Ronald, L.P., in addition to Michael (33%), were Donatucci (33%), and Donatucci Jr. (33%), and the general partner is Donatucci (1%).

8

25.     Defendant RRM Associates, LLC is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania. At the time of Michael's death, the members of RRM Associates, LLC, in addition to Michael (33%), were Donatucci (34%) and Donatucci Jr. (33%). The managing member of RRM Associates, LLC is Donatucci.

26.     Defendant Wilmington Savings Fund Society, FSB ("WSFS" or "Bank") is a federal savings bank with offices located in Philadelphia and its surrounding counties in Pennsylvania. WSFS was the mortgagee on a certain piece of real estate in which Michael had a majority interest.

27.     Defendant Debra J. Foglietta ("Foglietta") is an adult individual who resides in Philadelphia, Pennsylvania. Foglietta is Michael's mother.

28.     Defendant James F. Mannion, Esquire is an adult individual and an attorney licensed in Pennsylvania who is sued in his individual capacity and in his capacity as a partner in Defendant Mannion Prior. He maintains his office in King of Prussia, Montgomery County, Pennsylvania and resides in Malvern, Chester County, Pennsylvania.

29.     Defendant Mannion Prior, LLP is a law firm with its principal place of business located in King of Prussia, Montgomery County, Pennsylvania. James F. Mannion, Esquire and Mannion Prior are counsel for Donatucci, and they are hereinafter separately or together referred to as "Mannion."

30.     Defendant Frank DeSimone, Esquire ("DeSimone") is an adult individual and an attorney licensed in Pennsylvania. He maintains his office in Philadelphia and resides in Bryn Mawr, Montgomery County, Pennsylvania. DeSimone is counsel for Foglietta.

31.     Defendant Brimfield Capital, LLC ("Brimfield") is a Pennsylvania limited liability company with its principal place of business located in Audubon, Montgomery County, Pennsylvania.

9

32.     Defendant Hau-Kay T. Siu ("Siu") is an adult individual who resides in Audubon, Montgomery County, Pennsylvania. Based on information and belief, Siu and his wife, Katy Siu, are, and at relevant times were, the sole members of Brimfield. Brimfield is the minority member in Penn Peak Capital, LLC in which Michael was a majority member.

## JURISDICTION AND VENUE

33.     This Court has concurrent jurisdiction with the Federal Court over Plaintiffs' federal claims.

34.     This Court has jurisdiction over Plaintiffs' state law claims.

35.     This Court has jurisdiction over the Defendants, as their conduct against Plaintiffs has occurred in, is occurring in, has impacted, and/or is impacting Chester County where the Estate maintains an office.

## FACTUAL ALLEGATIONS

### A.     MICHAEL'S TRAGIC DEATH AND SUBSEQUENT EVENTS

36.     Michael died on July 15, 2016, tragically having taken his own life.

37.     At the time of his death, Michael and Meghan had been dating for more than 10 years, since college, and were due to be married on September 24, 2016.

38.     At that time also, Michael, a Chartered Financial Analyst, was serving as the Chief Investment Officer of the Philadelphia Board of Pensions and Retirement ("Philadelphia Pension Fund"), having started that position on June 1, 2016 after about eight years working with the institutional group at SEI Investments in Oaks, Pennsylvania.

39.     Michael's Will named his fiancée, Meghan, the Executrix of his Estate.

40.     At the time of Michael's death, Michael and Meghan shared an apartment, one of two apartments connected to Donatucci's home in Queen Village in South Philadelphia.

41.  Meghan found Michael in their bathroom on the evening of July 15, 2016, dead from an apparent gunshot wound to the head, upon her arrival home from work. It was determined that Michael died earlier that afternoon in their apartment.

42.  Based on information and belief, Donatucci's surveillance cameras indicate that Michael arrived home to the apartment that afternoon at almost the same time as Donatucci himself.

43.  That evening, upon Meghan finding Michael and following the police's arrival at the scene, Donatucci directed that police investigating Michael's death be removed from the premises and replaced by other police with whom he was familiar, and he, members of his family, friends, and city employees entered the apartment Michael and Meghan shared and went through and removed their belongings, including Michael's cell phone and Will. Donatucci and City employees under his control, and Donatucci Jr. continued to access and remove items from the apartment in the days and weeks that followed, without Meghan's permission and over her objection.

44.  Michael's Will was in his "Tumi bag" (per an email from Michael, discussed below) in the apartment he shared with Meghan at the time of his death on July 15, 2016.

45.  Donatucci took from the apartment Michael's Tumi bag (containing his Will) and Michael's cell phone, among other items, and brought them into his home on July 15, 2016.

46.  Donatucci took possession of Michael's Will on the evening of July 15, 2016 and was fully aware of its contents on that date and the days that followed, and Donatucci hid it from Meghan as he went about planning Michael's funeral in the following days without any input from her.

47.  Michael's Will may never have been discovered but for an email Michael sent delayed (via a program called "Boomerang") to Meghan, Donatucci, and Michael's mother, Foglietta, for delivery on July 18, 2016, three days after Michael's death. Michael's email directed that the original of his Will was in his Tumi bag.

11

48.     It was not until after this email was received by Donatucci that he returned the original Will to the apartment.

49.     As regards Michael's cell phone, despite promising many times to deliver it to Meghan, who, according to Michael's Will was also named Executrix of Michael's <u>digital</u> assets (in addition to being Michael's fiancée), Donatucci refused to allow her to even see it and maintained possession of the phone until recently.

50.     Only recently, after two Orders dated June 12, 2018 and December 13, 2018 were issued by the Honorable Ronald C. Nagle, Senior Judge of the Court of Common Pleas of Chester County (who upon Plaintiffs' petition, was appointed to preside over Orphans' Court proceedings regarding this Estate, discussed *infra*), did Donatucci turn over Michael's phone after having handled and possibly having tampered with its data.

51.     Donatucci had left Michael's cell phone in the possession of his City employee, Emilio DiGregorio ("DiGregorio"), who had complete and unfettered access to the information on the phone and to Michael's email and other accounts, to the exclusion of Plaintiffs. The cell phone and various accounts were searched by DiGregorio at Donatucci's direction and the passwords to Michael's email accounts were changed by Donatucci, preventing Meghan from accessing the accounts. Nothing that was in Michael's possession should have been handled and possessed by anyone other than Meghan, who, as mentioned, stands in Michael's place as the Executrix and "Digital Executor" of his Estate. As an attorney admitted to the Bar in Pennsylvania and as the Register of Wills responsible for admitting Michael's Will to probate and issuing Letters Testamentary to Meghan, Donatucci well knows this.

52.     On information and belief, in about December 2018, without right, or notice to or permission of Plaintiffs, Donatucci, Mannion, and Mannion Prior took, tampered with, and/or

copied information in Michael's cell phone and Michael's email and other accounts, and they have refused to turn over the copies they made despite Plaintiffs' request.

## B.   MICHAEL'S WILL ADMITTED TO PROBATE BY DONATUCCI

53.   Michael's Will named two beneficiaries:

> First, his mother, Debra J. Foglietta (Donatucci's ex-wife), who is the sister-in-law of the Honorable Angelo Foglietta, a Judge of the Court of Common Pleas of Philadelphia and close friend of Donatucci's; and
>
> Second, his fiancée, Plaintiff Meghan E. Klein.

54.   Michael's father, Donatucci, and Michael's mother, Foglietta, divorced in the early 1990s and have had a historically contentious relationship.

55.   Neither Michael's father nor his brother, Donatucci Jr., are beneficiaries of the Estate.

56.   Foglietta's interest in the Estate consists of a 25% share of Michael's interests in real estate he held with his father, Donatucci, and brother, Donatucci Jr. ("Michael's Commonly-Held Realty Interests").

57.   The other 75% share of Michael's Commonly-Held Realty Interests was left to Meghan, as were two properties in which Michael was a 100% owner (the "20th Street Property") or majority owner (the "Girard Avenue Property"), plus all other accounts and assets of the Estate. Meghan is also the residuary beneficiary under Michael's Will.

58.   On August 11, 2016, following a meeting insisted upon by Donatucci, Michael's Will was admitted to probate by Donatucci, acting in his official capacity as Register of Wills, a position which he has held for nearly 40 consecutive years, and following the probate, Letters Testamentary were granted to Meghan as Executrix by Donatucci.

59.   Despite the foregoing, as shown below, Meghan has been under attack by Donatucci.

### C.   DONATUCCI'S WITHHOLDING OF ASSETS BELONGING TO PLAINTIFFS

60.    By statute, one aspect of Meghan's fiduciary duty as Executrix is to "take possession of, maintain and administer all the real and personal estate of the decedent." 20 Pa. C.S.A. § 3311. In other words, Meghan bears the responsibility to "preserve and protect the property for distribution to the proper persons within a reasonable time." *In re Estate of Campbell*, 692 A.2d 1098, 1101 (Pa. Super. 1997). As Register of Wills and Clerk of the Orphans' Court, Donatucci knows this.

61.    As Executrix, Meghan has the right to take possession of all assets, items and personal papers, documentation, and things of Michael's personal estate. 20 Pa. C.S.A. § 3311. She also has a right, individually, to take possession of her own personal belongings. As Register of Wills and Clerk of the Orphans' Court, Donatucci knows this.

62.    As Executrix, Meghan has the right to require the production of information, documentation, and things by Donatucci as part of her inherent powers and duties under 20 Pa. C.S.A. § 3332. This includes those documents and things that Donatucci took from Michael and Meghan without permission, as well as information and things Donatucci owes to Plaintiffs by virtue of Plaintiffs' interest in real estate they own with Donatucci. As an attorney, Register of Wills, and Clerk of the Orphans' Court, Donatucci knows this.

63.    Indeed, the Register of Wills' website specifically states that the role of the "personal representative," or Executrix in this case, includes "locating and protecting the assets of the estate." Emphasis added. Donatucci has no right to dictate what Estate assets, information, and things will be produced and how they will be produced.

64.    Since Michael's death, despite Meghan's request that Donatucci not enter Michael and Meghan's apartment without her, Donatucci (and others at his direction, including Donatucci's family members – including Donatucci Jr., friends, and city employees – including Claudine

Catalano ("Catalano") (and her husband, Thomas Pipino), Damian Ruth ("Ruth"), and others) have entered Meghan and Michael's apartment numerous times without notice or permission and have taken assets owned by Plaintiffs, including Michael's laptop, USBs and files, and other personal belongings. Donatucci's actions violate the Philadelphia Renter's Handbook and constitute trespassing and violations of Meghan's privacy rights, among others. As an owner of Debro Investments (through which Donatucci's real estate holdings are managed), former Chief of Enforcement for the City's Department of Licenses and Inspections, as well as Register of Wills and an attorney, Donatucci knows this conduct is not proper. As noted above, Michael's cell phone and Will were also taken by Donatucci on the day Michael passed, and Michael's cell phone and email accounts have been possessed and handled by at least one City employee, DiGregorio, at Donatucci's direction.

65.    Donatucci has changed the lock on the apartment Meghan and Michael shared and has failed to provide Meghan with a new set of keys so that she could obtain her and Michael's belongings.

66.    Donatucci also instructed his City employee, Damian Ruth, to remove some of Meghan and Michael's belongings from the apartment, again without notice to Meghan and without her permission.

67.    As noted, Donatucci or City employees at his direction accessed and changed the passwords on Michael's email accounts, blocking Meghan from accessing the accounts even though, according to Michael's Will, she is the Executrix and beneficiary of Michael's digital assets. Donatucci denied doing so to the Orphans' Court. He was eventually caught in this lie when, under court orders, he was recently forced to turn over the new passwords he created for Michael's email accounts.

68.     Donatucci has also taken Michael's possessions from his office at the Pension Fund.

69.     In addition, Donatucci has taken or prevented Plaintiffs from possessing information and data regarding Michael's Commonly-Held Realty Interests, including records from Michael's Quickbooks accounts which Michael instituted for the family real estate business, Debro Investments, and he is doing so despite clear and direct orders issued by Judge Nagle to turn over such information and data to Plaintiffs. Donatucci has likewise taken rents owed to Plaintiffs from certain real estate in which they have an interest. Donatucci has deliberately taken or prevented Plaintiffs from possessing the rents and other records and things to prevent Plaintiffs from conducting a complete and accurate evaluation of Michael's Commonly-Held Realty Interests, among other things such as completing tax returns. This conduct is illegal and improper. Donatucci (as an attorney, Register of Wills, and Orphans' Court Clerk) and his counsel, Mannion, know this.

70.     Donatucci is also aware of and cooperating in Michael's brother, Donatucci Jr.'s, failure to pay Plaintiffs a debt which Michael had difficulty collecting from his brother prior to his death. Despite being aware of Michael's struggle in this regard, Donatucci has demanded that the Plaintiffs release Donatucci Jr. of this debt without payment (and without any supporting documentation).

71.     Relevant documents and files, as well as Meghan and Michael's belongings, continue to be withheld from Plaintiffs by Donatucci and Mannion, despite Meghan's many requests, two Orders issued by Judge Nagle, and two Orders issued by the Chester County Court of Common Pleas in litigation regarding the Girard Avenue Property.

72.     Donatucci has claimed in response to discovery in the state court case regarding the Girard Avenue Property in Chester County that he destroyed his communications with other defendants

in the state court action regarding the Estate. This conduct is illegal and improper. Donatucci (as an attorney, Register of Wills, and Orphans' Court Clerk) and Mannion know this.

73. Documents, data, and things belonging to Plaintiffs are believed to have also been destroyed by Donatucci, or by others at his direction. These items have likewise not been turned over to the Estate, despite Plaintiffs' requests and Judge Nagle's Orders.

74. Donatucci has shown a pattern of failing or refusing to cooperate with court orders in regard to this Estate and other matters. The dockets of Courts of Common Pleas in Pennsylvania reflect Donatucci has failed to comply with discovery and court orders compelling discovery, including in a pending case Plaintiffs recently discovered was filed against Meghan, Donatucci, Donatucci Jr., and others bearing on a property in which Plaintiffs have an interest (1179 S. 13th Street in Philadelphia), and it appears from the docket in that case that Donatucci accepted service on behalf of Meghan in October 2017 without Meghan's consent. *See Saulin-Frock et al. v. Donatucci et al.*, August Term 2016, No. 1133.

75. At the end of 2018, Judge Nagle retired. The President Judge of the Court of Common Pleas of Philadelphia has yet to take any action to see that a fair and impartial judge replace him to handle various pending Estate matters, including Meghan's pending petition for sanctions, Donatucci's contempt of the two Orphans' Court Orders mentioned above, and a baseless petition Donatucci filed in 2017 (discussed *infra*) to have Meghan removed as Executrix and Donatucci appointed as executor in her place. For reasons discussed *infra*, the integrity of the state court system to handle these matters is compromised by Donatucci's involvement.

76. As recently as January 2019, Meghan demanded again that Donatucci fully comply with Judge Nagle's Orders, including that Donatucci turn over copies Meghan recently learned Donatucci and Mannion made of Michael's cell phone and email accounts without notice to her

17

and without her permission (no chain of custody information regarding those items has been provided either, despite Meghan's request). Donatucci failed to respond or comply with the Orders, and, on information and belief, Donatucci is now using his power to influence the assignment of a new judge, which he plans to use to his advantage in these various matters.

77.     Donatucci and Mannion have been uncooperative throughout the Orphans' Court proceedings, having twice obtained stays of those proceedings, including based on a false promise to Judge Nagle and Plaintiffs that Donatucci would turn over everything he has taken from Plaintiffs. Donatucci and Mannion used the stays only to continue the scheme to unfairly leverage and extort a deal for Donatucci and Mannion's benefit.

78.     This pattern of conduct, including but not limited to Donatucci's and Mannion's threats and other meddling in matters undermining Plaintiffs' rights, is prejudicing Plaintiffs and violating their constitutional rights to privacy, property, and access to the courts, including to counsel.

### D.     DONATUCCI'S MEDDLING IN THE ESTATE'S AFFAIRS

79.     Unbeknownst to Plaintiffs at the time, Defendants began meddling in the Estate's affairs in the summer of 2016, shortly after Michael died.

80.     Donatucci meddled in the Estate's ownership of the Girard Avenue Property. This Property was owned by Penn Peak Capital, LLC ("Penn Peak"), in which Michael was majority member and Brimfield (controlled by Siu) was minority member ("Brimfield/Siu").

81.     Defendant WSFS was the mortgagee on the Girard Avenue Property, which had been conservatively appraised by WSFS for $460,000 in early 2016. The loan balance on the date of Michael's death was approximately $325,600.

82.     Donatucci has a long standing relationship with WSFS, which is also the mortgagee on a number of Donatucci's and Donatucci Jr.'s real estate holdings. WSFS, including its vice

president, Herb Matter ("Matter") has been intimidated, influenced, coerced or persuaded into conspiring with Donatucci because of Donatucci's official power.

83.    On August 26, 2016 and days following, within almost a month of Michael's passing, Meghan was in contact both in person and by phone with WSFS to make the mortgage payments as well as obtain information regarding the loan. Despite providing the necessary paperwork to prove Michael's death as well as her position as Executrix, the Bank refused her payment and refused to provide her with information. Meghan was told by WSFS that she would have to prove her ownership in Penn Peak if she wanted to make payments or obtain loan information. At the time, Meghan did not have access to a copy of the Penn Peak Operating Agreement. WSFS in fact already had a signed copy of the Operating Agreement in its file, but the Bank refused to respond to Meghan's inquiries about the loan or to accept her payments without her producing a separate copy of the Operating Agreement to the Bank.

84.    Unbeknownst to Meghan at that time, Donatucci was communicating with WSFS and Brimfield/Siu about a plan for him to take over the Girard Avenue Property (in which he had no legal or equitable interest) and was influencing the Bank's improper treatment of Meghan, including blocking her payments.

85.    Indeed, the Bank was acting at Donatucci's bidding, following his every request because of his official position and for the Bank's own economic advantage. Donatucci wanted the Bank to declare a default so that Meghan would have to sell her interest to him cheaply or so he could buy it from the Bank after foreclosure.

86.    On September 18, 2016, Donatucci proposed directly to Meghan that he would pay her a nominal sum over an extended period of time for all of Michael's Commonly-Held Realty Interests, plus the two properties in which Donatucci had no interest, i.e., the Girard Avenue

Property (which belonged to the LLC, Penn Peak) and Michael's 20th Street Property (which Michael owned outright). Donatucci's proposal was also contingent on Meghan allowing him to take over as executor of Michael's Estate, so that, among other things (including controlling information and things of the Estate), he could cheat his ex-wife, Foglietta out of her inheritance by paying her a nominal sum for her share of Michael's Commonly-Held Realty Interests. His offer not only severely undervalued Michael's Commonly-Held Realty Interests (which were determined to have a net value of close to $2 million by Michael, who was proficient in real estate valuation, before he passed), but also severely undervalued the Girard Avenue and 20th Street properties. Meghan's refusal to accept Donatucci's deal and her unwillingness to serve as either chair or a member of the board of a foundation that Donatucci initiated on the day of Michael's death angered Donatucci, who, unbeknownst to Meghan at the time, immediately set out to retaliate against her by sabotaging Meghan's efforts to carry out her fiduciary duties in order to gain control of the Estate, including primarily Michael's valuable real estate assets, as well as attempt to maintain his control of the information and things he did not wish to turn over to Meghan (significantly, the information on Michael's cell phone and in Michael's email accounts).

87.     Various iterations of Donatucci's demands were repeated in calls and writings by Donatucci's counsel, Mannion and Mannior Prior (hereinafter together referred to as "Mannion") and his solicitor at the Register of Wills office, Charles Golden, Esquire ("Golden"), who purported to represent Foglietta and indicated she supported Donatucci's demands.

88.     Because Donatucci, on his own and through Mannion and Golden, was unable strike a deal for himself with Meghan, Donatucci (with the help of Mannion) commenced a scheme to take over the Girard Avenue Property, and ultimately the Estate, soliciting the support of Brimfield/Siu and WSFS, who were both willing to oblige for their own selfish gain.

89.     As part of the scheme, WSFS delayed accepting Meghan's payments until September 16, 2016, after informing Meghan that the loan was in default for nonpayment of installments due, despite Meghan's prior efforts to make the payments.

90.     After Meghan confronted WSFS about its improper refusal to receive her payments, WSFS accepted her payment, and WSFS led her to believe there were no other issues with the loan nor would there be if Meghan continued making payments by the 25th day of each month to keep the loan current pending her disposition of the Property (as Meghan and Brimfield/Siu agreed), i.e., the same monthly payments Michael had made before his demise. These were the terms the Bank told Meghan would apply to the loan, and on which she reasonably relied. The terms required by the Bank were met in good faith each month by Meghan since Michael's passing and through the date she ultimately sold the property.

91.     The Bank is withholding communications between Donatucci and the Banks' vice president, Matter, and, as mentioned above, Donatucci claims he destroyed his written communications regarding the Estate and, specifically, the Girard Avenue Property. These acts of obstruction and hiding or destroying evidence are in furtherance of Donatucci's scheme against Plaintiffs.

92.     As Executrix, Meghan paid and continued to pay 100% of all outstanding debts on behalf of Penn Peak, including mortgage payments to the Bank, property and liability insurance, real estate taxes, utilities, building maintenance, and professional fees. Consistent with Donatucci's scheme, in order to put financial pressure on Meghan, the minority member in Penn Peak, Brimfield/Siu, contributed no funds since Michael's passing (and has contributed nothing to date).

93.     Donatucci, clothed with the power of his office with the City, continued to take advantage of the crushing blow Meghan suffered as a result of the death of her fiancé Michael by repeatedly

21

pressuring her (with the assistance and cooperation of the Bank and minority member, unbeknownst to Meghan) to sell the Girard Avenue Property to him under duress and for far less than fair market value and attached to a number of contingencies, including relinquishing her role as Executrix to him and relinquishing the Estate's ownership in Michael's Commonly-Held Realty Interests, which Dontatucci and Mannion falsely claimed at one point had a "negative value."

94.     Initially, Donatucci and Mannion's tactics involved deliberately creating a false sense of urgency around alleged safety conditions of the Girard Avenue Property as a means of pressuring the Estate to sell to Donatucci. When Meghan did not meet Donatucci's demands, Donatucci leveraged this manufactured "urgency" against Meghan in attempt to rid Meghan of her interest in the Property by having WSFS attempt to (improperly) call the loan.

95.     Specifically, Donatucci, through his attorneys, alleged that the Property was in a "terribly dangerous and unsafe condition" and threatened that insurance on the Property would not be renewed. These allegations proved to be entirely false.

96.     Unbeknownst to Meghan, Donatucci was communicating with WSFS behind her back to set up the scenario for the Bank to call the loan and eliminate Meghan's interest in the Girard Avenue Property.

97.     Pursuant to Donatucci's instructions, on November 15, 2016, WSFS contacted Meghan to tell her the insurance was due to expire at the end of the month and that the Bank needed to see evidence that Meghan would renew, as well as that WSFS had "some real concerns" with the condition of the house pursuant to pictures they had allegedly seen, which Meghan later learned were taken by Donatucci and sent by him to the Bank. Meghan's counsel at the time, Richard Lipow, Esquire ("Lipow"), in reply, asked to see the pictures and confirmed that insurance would

be obtained. In fact, there was never any lapse in the insurance coverage and the coverage was obtained by Meghan without any difficulty.

98.     Three days later, on November 18, 2016, WSFS threatened to call the loan on the pretense of Michael's passing under a due on death provision in the mortgage note. However, as noted above, in September 2016, Matter on behalf of WSFS had agreed of his own volition that the loan would not be in default as long as Meghan kept the mortgage and insurance payments current pending her disposition of the Property. This agreement by WSFS had been confirmed by phone and in an email from Matter to Meghan on September 20, 2016 and was reinforced in follow up communication. As noted above, in accordance with the agreement, Meghan made timely payments to WSFS each month and the loan, taxes, and insurance on the Property were kept current at all times.

99.     Despite Lipow's pushing back on WSFS's improper actions in light of WSFS's prior agreement with Meghan, WSFS maintained its new position in concert with Donatucci and demanded an inspection of the property. On November 25, 2016, WSFS's engineer, J. Jeffrey Grant, MSCE, MBA, of GAC Associates, Inc., inspected the Girard Avenue Property and determined it to be structurally sound and secure. This determination by the engineer was a striking contrast to Donatucci's self-serving and baseless allegations that the Property was in a "terribly dangerous and unsafe condition" and that insurance on the Property would not be renewed.

100.    Meanwhile, Donatucci boldly continued to express interest in obtaining the Girard Avenue Property and on December 19, 2016, through Mannion, informed Meghan that "Tony Siu [(the minority partner)] is represented by Rich Mulcahey, who is ready to engage in discussions" about the Girard Avenue Property. At about this time, the Bank demanded a meeting with Meghan.

101.   On December 21, 2016, Meghan, who had been making efforts to sell the Property pursuant to her agreement with the Bank, met with a prospective buyer, Don Ventresca, at the Girard Avenue Property. When they met, Ventresca, who appeared to be unaware the property was owned by a "Donatucci," told Meghan that Donatucci "takes care of all my zoning and permits" for Ventresca's real estate development business. While Ventresca showed interest in the property, having made a low-value verbal offer, he abruptly stopped communicating with Meghan after she insisted she needed to be at the property for all showings and would not turn over the lockbox code to him, as he requested.

102.   On January 6, 2017, at the demand of WSFS, Meghan met with WSFS's counsel, Phillip Berger, and Amy Erickson, an assistant vice president of WSFS. Despite Meghan's and her mother's (who attended with Meghan) attempts to share with WSFS's representative and counsel what had occurred, including the Bank's improper actions, the meeting was used by WSFS to threaten Meghan with additional costs, foreclosure, and a judgment by confession against Meghan, and to demand that Meghan turn over the names of the prospective buyers with whom Meghan was in communication. This was concerning because the broker with whom Meghan was working to sell the Property advised that prospective buyers were aware of Donatucci's interest in the Property. Meghan justifiably believed that Donatucci could retaliate against the prospective buyers if they purchased the Property, by adversely affecting its permitted use and by impacting zoning and permits on the buyer's other projects in the City, including through his son Donatucci Jr., also a real estate developer, who is currently an L&I Board member.

103.   After receiving an uninvited forbearance agreement sent shortly after the January 6, 2017 meeting, on January 25, 2017 Meghan's litigation counsel, Robert Feltoon, Esquire of Conrad O'Brien, PC ("Feltoon"), wrote to WSFS and pointed out the meddling by Donatucci in

conjunction with the Bank's sudden change in tenor since agreeing to accept Meghan's payments

in September 2016 and urged the bank to withdraw its November 18, 2017 email threatening to

call the loan. WSFS never responded to Feltoon's January 25, 2017 letter, which is a sure sign that

WSFS did not dispute the accuracy of the facts set forth in the letter. This was Feltoon's first

introduction to WSFS and first public communication as counsel for Meghan in her capacity as

Executrix and majority member of Penn Peak. WSFS then promptly informed Donatucci and/or

Mannion of Feltoon's involvement in this matter, because Mannion proceeded the next day to

contact Feltoon's law partner, who Mannion already knew, regarding Feltoon's involvement on

behalf of Meghan, and to express Donatucci's continued interest in the Girard Avenue Property.

The only way Mannion could have learned that Meghan had retained Feltoon was through WSFS.

104.    In the days that followed, Mannion repeatedly called Feltoon, and others at the law firm

Conrad O'Brien, P.C., demanding to know the specific nature of the firm's involvement on behalf

of Meghan. On February 10, 2017, Mannion expressed to Feltoon Donatucci's interest in the

Girard Avenue Property and stated that Donatucci wanted access to the Property and planned to

get into the building through Siu.

105.    On February 16, 2017, WSFS wrote to Feltoon that as long as the monthly payments are

being made to WSFS when due, and as long as the insurance on the real property collateral remains

current, and all real estate taxes remain paid and current, WSFS will allow Meghan to have until

at least August 31, 2017 to sell the Girard Avenue Property and repay the loan in full.

106.    Donatucci's improper conduct in support of his attempts to gain control of the Girard

Avenue Property continued to unfold over the ensuing months.

25

### E.   PATTERN OF THREATENING, HARASSING, AND IMPROPER CONDUCT IS STILL ONGOING

107.   Over the course of the Estate, Donatucci has resorted to bullying, intimidating, and threatening Meghan and her counsel in various ways, even causing Meghan to be concerned for her own safety as well as for the safety of her family at times. For example, Conrad O'Brien, P.C. was threatened by Donatucci, through a former FBI agent, Dave Gentile, who called a senior member of the law firm, stating that he was calling at the direction of Donatucci to deliver Donatucci's threat that the firm's reputation would be harmed if the firm continued to represent Meghan. This threat caused severe emotional stress to Meghan and her family, as it resonated with them after having received an earlier warning about Donatucci's dishonest dealings.

108.   Earlier, in January 2017, Donatucci made contact with Meghan's brother-in-law, when his staff at the Register of Wills' office, acting at the direction of Donatucci, followed him into a center city coffee shop and cornered him and his colleague until Donatucci arrived to deliver a message for and obtain information about Meghan regarding the Estate.

109.   Donatucci also attacked and threatened Meghan in an email from his counsel, Mannion, dated June 17, 2017 in which they blamed Meghan for Michael's death and stated that they would force her to "re-liv[e] these terrible events" if she did not accept their demands. Donatucci and Mannion had been depleting Plaintiffs' assets with claims and interference despite the probated Will and Meghan's authority as Executrix, and they threatened at that time to further deplete Meghan's finances with a Will Contest if she did not agree to their demands (which, as discussed below, they later filed in keeping with their threat but have since withdrawn knowing that the Will Contest was a sham and filed for an improper purpose).

110.   Donatucci has made a number of personal attacks against Meghan including publicly. In addition to Mannion's June 17, 2017 email, on July 3, 2017, Donatucci was quoted in a

Philadelphia newspaper, stating that Michael took his own life because "he was afraid to get married," and raised the highly publicized *Carter* case involving a young woman accused (and since the date of the article, convicted) of encouraging her boyfriend to commit suicide as though it were relevant to his son's death. These statements by Donatucci were intended to harass, intimidate, embarrass, and disparage Meghan.

111.    Foglietta has exhibited a similar pattern of harassment and threats against Meghan through emails, letters, and text and public Facebook messages, all of which were likewise intended to intimidate and disparage Meghan and many of which aligned with the timing of Donatucci's settlement demands and/or threats. Foglietta's behavior, like Donatucci's, is also in part retaliatory. Meghan's counsel turned over to federal authorities Foglietta's demand that Meghan pay her $40,000 (which Foglietta alleges Michael was holding in cash for her) that she did not disclose to her creditors, the Chapter 7 Bankruptcy Trustee, the United States Trustee, and the United States Bankruptcy Court in bankruptcy proceedings she commenced (with the help of Solicitor Golden and other counsel) in the United States Bankruptcy Court for the District of New Jersey. Donatucci and Solicitor Golden have repeatedly demanded that Meghan pay Foglietta out of funds belonging to Meghan despite their knowledge of the Estate's concern regarding this illegal activity.

112.    Despite having no interest in the Estate and inconsistent with the duties of a Register of Wills, Donatucci also created numerous other obstacles for Plaintiffs intended to interfere with their affairs. He has forced the Estate and Meghan to incur substantial legal fees and expenses to overcome the obstacles he has created, and he is using this as leverage in making demands of the Estate over Michael's real estate interests.

113.    For example, as part of this pattern of conduct against Plaintiffs, Donatucci withheld rents the Donatucci family real estate management company, Debro Investments, collected for Michael

on the 20th Street Property which Michael owned outright and left to Meghan. Those rents, which are used to pay the mortgage on the property, were withheld from Meghan by Donatucci for more than six months, again despite Meghan's numerous requests as Executrix.

114.    With respect to Michael's Commonly-Held Realty Interests, Donatucci's refusal to share financial information (other than debts) forced the Estate to file federal and state fiduciary income tax returns without complete information such as K-1s. Donatucci refused to turn such information over despite Meghan's many requests.

115.    Despite refusing to pay to Plaintiffs any revenues they are owed from rents generated by the Commonly-Held Realty Interests, Donatucci has made demands that Meghan must immediately sign up for certain mortgage financing, including a line of credit from PNC Bank, an institution with which Donatucci has a close relationship through his friend Salvatore Patti, PNC's senior vice president of commercial banking. Meghan responded to an inquiry from PNC regarding the line of credit and requesting information in that regard by letter dated May 12, 2017, and her counsel at the time, Conrad O'Brien, P.C., also followed up with PNC by letter dated June 7, 2017. Having received no response from PNC and having heard nothing further from PNC, Donatucci, or Mannion regarding the line of credit in more than nine months, it was likely not a coincidence on the day before a February 9, 2018 conference with the Orphans' Court that Mannion produced a demanding letter from PNC dated February 7, 2018, which Mannion unfairly used at the conference to suggest that Meghan was not meeting her fiduciary duties.

116.    Information Donatucci took from Plaintiffs and/or is withholding is needed to evaluate Michael's Commonly-Held Realty Interests, including for partitioning the properties and also to accurately complete tax returns. After having several meetings with Mannion in early 2017, in which Meghan's counsel shared in great detail the results of their investigative work and expert

consultation regarding the properties (due to Donatucci's failure to provide the necessary financial information), Donatucci and Mannion demanded additional meetings, falsely promising to provide the requested information, but never doing so. The meetings were a deliberate tactic to wear down Plaintiffs and waste their financial resources. Despite subsequent Orders of the Orphans' Court of which he is the Clerk, to date Donatucci has produced only incomplete information including regarding debts, re-published information from the public record regarding tax assessments that Plaintiffs already had obtained from the public record, a few incomplete bank valuation reports, and reports only recently prepared by an accountant without including any source documents (such as the Quickbooks referred to above). As mentioned, Donatucci and Mannion do not want to provide this information to Meghan, as it would disprove Donatucci's unsubstantiated position that Michael's Commonly Held Realty Interests have a "negative value." Donatucci's "negative value" starkly contrasts with his son's, who was a Chartered Financial Analyst and intimately familiar with the finances related to the Commonly-Held Realty Interests, nearly $2 million net valuation in 2016.

### F.    DONATUCCI'S CONTINUED INTERFERENCE WITH AND EFFORTS TO TAKE THE GIRARD AVENUE PROPERTY

117.    On March 11, 2017, Meghan obtained a signed Agreement of Sale from a buyer for a $460,000 cash sale of the Girard Avenue Property ("Cash Sale"). That same day Meghan sent the Agreement of Sale to Siu.

118.    Meanwhile, Donatucci, who was aware of the Cash Sale buyer from Siu, pressed for access to the Property, alleging his low-ball offer was a result of structural issues with the Property, which was false, and that he allegedly needed to inspect it. Donatucci, who was already very familiar with the Property, having accessed it on at least several occasions following Michael's passing

through the minority member, without Meghan's knowledge or consent, was well aware of the Property's condition, including that it had no structural issues.

119.   At the same time, on March 15, 2017, out of nowhere, without having objected to any of the terms of the Agreement of Sale or having objected to the price (as it would have only made it more expensive for Donatucci to outbid the Cash Sale buyer), Siu demanded that he be guaranteed to receive payment of $50,000 if he approved the Cash Sale, far more than he would have been entitled to under Penn Peak's Operating Agreement.

120.   On March 17, 2017, Siu's counsel, Richard Mulcahey, Esquire ("Mulcahey"), (of the law firm Schubert, Gallagher, Tyler and Mulcahey in Philadelphia, to which, on information and belief, Donatucci through his Register of Wills office and/or the Orphans' Court provides appointments) added a demand that a judgment lien in favor of Siu be recorded against the Girard Avenue Property and stated, in regard to paying the mortgage and the possibility of foreclosure, "I am sure you know that your client has more to lose than mine."

121.   On March 21, 2017, Mulcahey, who obtained the name of the Cash Sale buyer from the Agreement of Sale, reached out to the broker for the Cash Sale buyer without any notice to Meghan.

122.   Also, on March 21, 2017, in an effort to avoid greater loss through foreclosure, Meghan agreed to include language in the Agreement of Sale of the Cash Sale, confirming Siu would be paid $50,000 at the closing.

123.   In response, on that same day, Mulcahey added yet another demand, requiring without any basis, a *lis pendens,* despite the fact that Meghan had already promised Sui would receive $50,000 at the closing table before title passed to the Cash Sale buyer and had agreed to include that demand in the Agreement of Sale. Meghan, who had grown increasingly skeptical of Siu's motives by this

30

point and had other concerns about a *lis pendens,* rejected the demand for a *lis pendens,* and on

March 22, 2017, Mulcahey, on behalf of Brimfield/Siu, flatly refused to consent to the Cash Sale.

In concert with Donatucci, Siu and Brimfield continued to withhold consent to the Cash Sale, and,

as a result, the Cash Sale fell through.

124.    On April 6, 2017, upon further attempts by Donatucci to force his demands upon Plaintiffs,

Feltoon on behalf of Meghan reiterated the request to Donatucci's counsel, Mannion, for

documents with respect to the properties, including for tax return purposes, and other assets of

Plaintiffs including but not limited Meghan's belongings in the apartment she shared with Michael.

Donatucci failed to comply, and continued to make unreasonable demands while withholding the

necessary information needed to evaluate such demands.

125.    On April 14, 2017, out of nowhere, WSFS demanded that Meghan disclose her efforts to

sell the Girard Avenue Property. WSFS's letter came within several days of Meghan receiving

letters from Donatucci's Solicitor Charles Golden, purportedly on behalf of Foglietta, and from

PNC Bank, also closely connected to Donatucci, as mentioned above. All efforts were meant to

pressure Meghan to sell Plaintiffs' realty interests (not just the Girard Avenue Property) to

Donatucci quickly and for a cheap price.

126.    Golden's letter demanded Meghan "promptly liquidate the real estate interests," i.e., accept

Donatucci's demands for the Girard Avenue Property and Michael's Commonly-Held Realty

Interests (which would effectively cheat his alleged client, Foglietta, out of her interest), while

PNC Bank requested information from Meghan as if an obligor on a certain entity's line of credit,

despite failing to respond to Meghan's earlier request for debt instruments relative to that line of

credit. Meghan mentioned in her reply to PNC Bank that she hoped PNC's letter was not due to

third party interference (i.e., Donatucci); as mentioned, no reply from PNC to Meghan's response was received.

127.    On April 21, 2017, Meghan contacted the Cash Sale buyer to see if it could increase its offer for the Girard Avenue Property, in an attempt to salvage the deal and get Brimfield/Siu on board. Talks continued thereafter until it became apparent that the buyer's position was not changing because, in the buyer's view, Brimfield/Siu was being unreasonable.

128.    On June 30, 2017, Meghan, as Executrix and as successor of Michael's majority (77.5%) membership interest in Penn Peak, in an effort to avoid further loss through foreclosure of the Girard Avenue Property, filed a Complaint against Brimfield and Siu in the Court of Common Pleas of Chester County under Docket No. 17-06631-MJ (the "Penn Peak Dissolution Case"). On July 11, 2017, Meghan filed a Petition seeking judicial dissolution of Penn Peak in the Penn Peak Dissolution Case and an evidentiary hearing on that Petition was scheduled for August 18, 2017.

129.    On August 23, 2017, following the evidentiary hearing, the Court of Common Pleas of Chester County entered an Order granting Meghan's Petition seeking judicial dissolution of Penn Peak and authorizing her alone (without the minority member's consent) to sell Penn Peak's sole real estate asset, the Girard Avenue Property, and pay off WSFS and other creditors of Penn Peak.

### G.    DONATUCCI'S RETALIATORY AND MALICIOUS WILL CONTEST AND REMOVAL PETITION

130.    On July 19, 2017, angered by Plaintiffs' institution of the Penn Peak Dissolution Case and their refusal to accept Donatucci's demands to sell their realty interests to him for a low price and that Meghan relinquish her role as Executrix to him, Donatucci, through his life-long friend Defendant Frank DeSimone, Esquire, a Philadelphia criminal defense attorney, retaliated against Meghan by filing a petition to remove her as Executrix in the name of Donatucci's ex-wife, Foglietta (the "Removal Petition"). Donatucci could not file the Removal Petition in his own name

32

because he is not a beneficiary under Michael's Will, and for that reason was without standing to raise any of the issues in the Removal Petition. The Removal Petition claimed, *inter alia*, that Meghan was not carrying out her fiduciary duties in regard to Penn Peak and the Girard Avenue Property. Nothing could have been farther from the truth, as was shown at the August 18, 2017 hearing in the Penn Peak Dissolution Case.

131.    On August 4, 2017, Donatucci through Mannion also filed a Will Contest in his Orphans' Court. This Will Contest was an appeal by Donatucci from his own decision as a judicial officer admitting Michael's Will to probate a year prior. Under Pennsylvania law, the admission of a Will to probate by the Register of Wills is a judicial decision. *See, e.g., Mangold v. Neuman*, 371 Pa. 496, 498, 91 A.2d 904, 905 (1952). Four days later, Donatucci's personal friend and decades-long colleague, Administrative Judge of the Orphans' Court Division, Matthew Carrafiello, ordered the issuance of a citation to Meghan, directing her to show cause why Donatucci's Will Contest should not be sustained. Judge Carrafiello also issued a similar citation to Meghan with respect to the Removal Petition.

132.    Donatucci's approach to the filings was twofold – he not only sought to become a beneficiary of Michael's Estate, attempting to take what Michael left his fiancée and his mother through a Will Contest, but also sought to gain control of Plaintiffs' assets and the Estate, which was the purpose of his Removal Petition. If the Removal Petition were to be granted and Meghan were to be removed as Executrix, Donatucci would benefit personally by becoming executor of the Estate under a provision of Michael's Will naming Donatucci as the contingent executor, and he would thereby take control of Plaintiffs' assets and the Estate, to the detriment of Plaintiffs.

133.    Donatucci attempted to serve the Will Contest and Removal Petition on Sunday, August 13, 2017. That day, several business cards with a threatening message from a Constable, Joseph

C. Valerio, were left on the front and back doors of Meghan's parents' residence in Lafayette Hill, as well as on the cars on the driveway of the property, reading:

> "A warrant for your arrest may be issued which may lead to your incarceration. Call my office immediately for information on how to resolve this matter."

This was alarming to Meghan and her family who were confused by such a notice.

134.   On Monday, August 14, 2017, Meghan's counsel at that time, Feltoon, called Mannion and inquired whether he and Donatucci were attempting to serve Meghan and advised that the Constable's business cards were left at Meghan's parents' home the day before. Mannion acknowledged that service of the Will Contest (and Removal Petition, as was later learned) was attempted on that Sunday. Feltoon and Mannion discussed resuming discussions regarding Donatucci's demands, but the ensuing actions ran counter to that discussion.

135.   On the evening of August 22, 2017, Donatucci sent several Constables (at least two of whom were armed) to Meghan's parents' residence in Lafayette Hill as if they were there to make an arrest, yelling and banging loudly on the front and back doors as well as windows at the kitchen at the rear of the home. Meghan's mother who was sitting in the kitchen felt very threatened by the Constables. The Constables inquired as to whether Meghan was "at the gym," insisted that they wait for her to arrive home to serve her, and refused to leave the papers with Meghan's mother, or in the alternative to serve Meghan's lawyers at Conrad O'Brien, P.C., whom Meghan's mother called upon the Constables' arrival to her home. The Constables insisted that they had to serve Meghan. Because of the Constables' actions, Police arrived at the scene and required the three Constables, all of whom were from outside the area, to leave the premises. At that point, one of the Constables handed Meghan's mother the Will Contest and the Removal Petition and demanded that she sign for them. This scene could only have been intended as an intimidation tactic by

Donatucci, Mannion, and DeSimone, to frighten, pressure and embarrass Meghan and her family in front of neighbors and friends in their quiet neighborhood.

136.    Meghan later became aware that Donatucci also sent a process server <u>undercover</u> to Meghan's best friend's wedding on Friday evening, August 18, 2017, in an attempt to serve Meghan with the Will Contest and Removal Petition *at the wedding.*

137.    The process server came to the wedding dressed to blend in with the guests in order to gain access, and he lurked around the various wedding locations, including Old St. Mary's Church in Philadelphia where the ceremony was held, the Loews Hotel where wedding guests were staying, and the Crystal Team Room in Philadelphia where the reception took place. Earlier that same day, August 18, 2017, Meghan had testified in the Penn Peak Dissolution Case. Donatucci was fully aware of those proceedings, and it became evident when opposing counsel began questioning Meghan, including regarding Donatucci's Orphans' Court filings that had not yet been served upon Meghan.

138.    Apparently unhappy with the proceedings and Meghan's testimony on August 18, 2017, Donatucci set out to retaliate and deliberately upset Meghan by attempting to serve her with his Will Contest and Removal Petition at her friend's wedding, which was less than a year after Michael and Meghan's planned wedding date of September 24, 2016. Donatucci's attempt to hurt Meghan and ruin the evening at her friend's wedding failed, but he unfairly disrupted and distracted the bride, the bride's family, and Meghan's friends who had noticed the uninvited process server and out of concern for Meghan shielded her from his continued pursuit of her that evening, unbeknownst to Meghan.

139.    Donatucci's conduct in directing the above action shows just how far he will go to advance his scheme against Plaintiffs.

140.    Donatucci's Will Contest and Removal Petition were a sham intended to harass, intimidate and threaten Meghan in order to advance Donatucci's scheme to unfairly leverage and extort a deal with Plaintiffs.

141.    In the Will Contest, Donatucci claimed that Michael "had a long history of anxiety and depression" and, for that reason, he lacked testamentary capacity. Assuming, *arguendo*, Donatucci's claim that Michael had such "history" was true, these facts were known to Donatucci when he admitted Michael's Will to probate and granted Letters Testamentary to Meghan. Donatucci was also aware of and in possession of the alleged prior will at the time of probate.

142.    Given the stringent process followed by the Register in probating wills, the fact that Donatucci is responsible for "hear[ing] testimony with regard to any challenge and makes a decision accepting or rejecting the [Will]" per his website, and this particular set of circumstances involving his son, it is highly unlikely that Donatucci, who has been serving in the same position for close to 40 years, erred in his judicial decision to admit *his son's* Will to probate.

143.    In fact, Donatucci consulted Mannion and Eugene Gillin, Esquire of the law firm Harkins and Harkins prior to probating Michael's Will, and, as noted, was fully aware of the alleged prior will. Donatucci boasted to friends and family on the days following Michael's death about his son's impressive presentation that he made on the day he passed to the Philadelphia Pension Fund's Board as Chief Investment Officer. Also, on July 18, 2016, WHYY reported that Mayor Kenney stated:

> [Michael] [was] a good kid, very smart, actually [only weeks earlier] he saved us millions of dollars by exiting investments before Brexit hit, he had the foresight and understanding. He saw Brexit was coming and he got our money out of areas that were at risk [. . .]

144.    It is undeniable that Michael had testamentary capacity and that the Will Contest was a sham, filed by Donatucci only for leverage and to extort Meghan to accept his demands. Michael's

36

probated Will indicates he had intelligent knowledge regarding the natural objects of his bounty, the property he possessed, and what he desired to be done with it.

145.    As discussed below, faced with being held in contempt of an Orphans' Court's Order dated June 12, 2018 compelling him to cooperate with Estate administration and to turn over property of the Estate and Meghan that he wrongfully took for himself and/or removed from Meghan and Michael's apartment (after already failing to comply during a stay which he requested and obtained to allow him to produce such information and things), and faced with sanctions regarding matters raised in conjunction with Plaintiffs' petition filed on January 21, 2018 (amended April 17, 2018) calling to the Orphans' Court's attention Donatucci's various bad faith conduct and his threats against Meghan and her counsel, including for filing a falsified record with the Court (redacted without disclosure), in a desperate attempt to avoid a further order of the Orphans' Court against him, Donatucci withdrew his baseless Will Contest on November 8, 2018. As discussed below, a further Order of the Orphans' Court was entered against Donatucci on December 13, 2018, with which Donatucci still has not fully complied and is in contempt. Contrary to what Donatucci may believe, withdrawing his Will Contest does not rid him of his obligations to the Estate, nor does it invalidate or diminish the years' worth of undue hardship he has inflicted upon the Estate.

146.    Donatucci's role in the Removal Petition is apparent from the Petition's contents (Donatucci is the source of many of its factual allegations) and from Donatucci's arranging for his friend DeSimone to file it in his ex-wife's name. The Removal Petition was intended to unfairly pressure Meghan to give up her interests in the Estate, including, but not limited to, in Penn Peak and the Girard Avenue Property.

147.    For example, the following allegations in the Removal Petition have nothing to do with Foglietta or her interests in Michael's Estate, and their source could only be Donatucci:

- The Estate failed to make payments on the mortgage on the Girard Avenue Property.

- Donatucci visited the Girard Avenue Property.

- The Girard Avenue Property was dangerous and unsecured.

- Meghan has failed to make payments on the Girard Avenue Property.

- Meghan's actions and inactions with respect to the Girard Avenue Property are jeopardizing the Estate and exposing its assets to liability.

Except for the allegation that Donatucci visited the Girard Avenue Property (which was done behind Meghan's back), the rest of the allegations were false, and this was demonstrated at the August 18, 2017 hearing in the Penn Peak Dissolution Case.

148.    In fact, drafts of the Removal Petition recently uncovered in the litigation pending in Chester County show that it was prepared by Donatucci and Mannion and sent to Solicitor Golden and DeSimone to be filed. A draft shows that Donatucci had set out to attack Meghan's mental capacity, just as he purported to do with respect to Michael in the Will Contest he has since withdrawn. Not only has Meghan executed all of her fiduciary duties to the highest level, but Donatucci has had no contact with her nor any firsthand (or secondhand for that matter) knowledge of her mental or emotional capacity to challenge her service as Executrix.

149.    The Removal Petition was filed by DeSimone in Foglietta's name on July 19, 2017. The Removal Petition is a fraud on the same Orphans' Court for which Donatucci serves as its Clerk.

150.    Indeed, Foglietta, who has no interest in the Girard Avenue Property (100% of Michael's interest in the Property was left to Meghan), which is one of primary focuses of the Removal Petition, admitted in pleadings filed in the Orphans' Court that she has no firsthand knowledge of the facts alleged in the Removal Petition in that regard.

151.    The Removal Petition also alleges that Michael's Commonly-Held Realty Interests are "illiquid, non-marketable private interests, which are not readily saleable," and therefore should be sold to Donatucci for well under the properties' open market values, which is a clear indication of Donatucci's involvement. Foglietta could have no personal reason to make such assertions unless she was being coerced or induced by Donatucci.

152.    Donatucci's friend, DeSimone, and Golden, Donatucci's Solicitor as Register of Wills, are helping him do his bidding, using Foglietta's name in the Removal Petition to make false arguments that Meghan is breaching her fiduciary duty as Executrix of Michael's Estate by not agreeing to Donatucci's demands. As a potential seller of her share of the co-owned real estate, it is certainly not in Foglietta's personal interest to embrace the position that the property interests she shares with Meghan are "illiquid, non-marketable private interests, which are not readily salable." The only person who benefits from that view is the majority owner of the Commonly-Held Realty – Donatucci – who has repeatedly tried to acquire the Estate's interest for far under the fair market value, and certainly under the value the properties would generate in a court-ordered partition proceeding. In fact, Donatucci's demands, if accepted by Meghan in her capacity as Executrix, would actually cheat Foglietta out of her rightful inheritance, the value of her interest in the Commonly-Held Realty Interests left to her in Michael's Will.

153.    Foglietta knows this, as she contacted Plaintiffs last summer, in a text to Meghan's father, stating that Donatucci "is my ex and not looking after my interests. I know that." This admission supports that the Removal Petition is a fraud on the Orphans' Court, being perpetrated by Donatucci, Mannion, Solicitor Golden, DeSimone, and Foglietta.

154.    The above shows that Donatucci is using the Removal Petition as part of a scheme to have Meghan removed as Executrix based on false accusations, likely inducing Foglietta to cooperate

with him against Meghan pursuant to an undisclosed deal. This is further supported by the fact that Foglietta appears to have reached an agreement with Donatucci for a monetary sum in exchange for (at least part of) her 25% interest in Michael's Commonly-Held Realty Interests. According to Foglietta's admissions in the Orphans' Court proceedings, part of that agreement includes that Donatucci is paying for her to live in one of the co-owned properties (1402 E. Moyamensing Avenue, Unit 3, in Philadelphia, among the hottest real estate in the City) in which the Estate has an interest but is not receiving its share of rents. This sort of deal between Donatucci and Foglietta would not appear to be improper except for the fact that it is champertous in view of the Removal Petition. Foglietta's continuing with the Removal Petition (even though possibly forced by Donatucci against her will) in light of her expressed willingness to accept Donatucci's various demands (and her already having accepted at least part of that deal), is bad faith, collusive, and fraudulent, if not illegal. Foglietta's complicitness in Donatucci's baseless Will Contest, failing to object or respond to the Will Contest despite the fact that doing so would be in her best interest, also supports Donatucci's and Foglietta's champertous conduct. As noted above, Foglietta through Solicitor Golden demanded earlier, long before the Removal Petition was filed on July 19, 2017, that Meghan accept Donatucci's demands, which shows she had a deal then that she was willing to take. Donatucci's use of her name on the Removal Petition is an outrageous and malicious act. This conduct is indicative of his extorting Foglietta, as well as Meghan. Donatucci has disregarded his official duties, undermining both the authority of his position and his ability to carry out those duties.

155.    As this conduct is being carried out within the plain view of the state court, there can be no doubt that the Court is turning a blind eye and is complicit in Donatucci's outrageously improper conduct.

156.    As shown herein, there is a pattern of Donatucci abusing his power and retaliating when his demands are not met. It is clear that Donatucci made no error in probating Michael's Will, but rather that he made a conscious and deliberate decision to probate the Will on August 11, 2016 with the forethought that he would be able to coerce Meghan to meet his demands. His actions show that he never intended to see the Will Contest and Removal Petition through, and that he filed both for an improper goal of using them as leverage in continuing to try to force Meghan to accept his demands (while taking steps to avoid publicity on his cases), because if she didn't, he would continue to use his power to wear her down financially and attack her without any regard for the law, the duties of his office, and the harm he is causing to her.

157.    Donatucci has taken various steps to avoid negative public attention on his improper conduct, which has been raised by Plaintiffs in response to Donatucci's Will Contest and Removal Petition.

- He obtained two stays of the Orphans' Court proceedings under the guise of wanting to a) comply with Plaintiffs' requests for information and things, as he is required by law to do, and resolve with Meghan (as he claimed in September 2017 after Plaintiffs filed a response to the Removal Petition) and b) turn over to Plaintiffs the information and things they requested (as he claimed in February 2018 after Plaintiffs filed a petition to compel and for sanctions that reported to the court his threats against Plaintiffs and their counsel).

- He has to date failed to comply not only with the Executrix's requests for information, documents, and things but also with Orders of the state courts. He is withholding information, and has even admitted to destroying information, that he is required to produce because he does not want the information discovered and/or

published on the record. This is another key reason why Donatucci withdrew his Will Contest on November 8, 2018.

- Significantly, public access to the Philadelphia Orphans' Court docket online, which docket Donatucci controls in his capacity as Register of Wills and Orphans' Court Clerk, has been off line and unavailable for a significant period of time.

### H.   DONATUCCI'S MEDDLING INVOLVING THE ESTATE'S INHERITANCE RETURN

158.   Donatucci's refusal to turn over records from Meghan and Michael's apartment as well as his refusal to provide other records bearing on Michael's Commonly-Held Realty Interests, which were needed by Meghan to prepare the Estate's inheritance return, delayed preparation of the return. Meghan also reached out to the IRS for information and was informed that Donatucci had failed to file tax returns regarding certain of the Commonly-Held Realty Interests.

159.   Upon Meghan's filing the Inheritance return, on information and belief, Donatucci used his power as Register to obtain a copy of the return. On or about April 13, 2017, Mannion obtained a copy of the return from Donatucci, which he later appended to the Removal Petition, filed July 19, 2017, without proper redaction in the Orphans' Court. As of July 19, 2017, the inheritance return was still pending review by the Pennsylvania Department of Revenue and was not publicly available.

160.   Despite the fact that the inheritance return Meghan *timely* filed was prepared and signed by a Certified Public Accountant with the assistance of tax counsel and consistent with the Department of Revenue's REV-1500 instructions, on information and belief, Donatucci and his counsel, and Foglietta accused and are continuing to accuse Meghan of committing perjury by reporting false information in the inheritance return. On information and belief, these statements have been made by such Defendants to the Department of Revenue and to others.

161.    Donatucci and Mannion and/or his law firm Mannion Prior also used and are continuing to use the Removal Petition to make similar and other false and defamatory statements about Meghan. They alleged in the Removal Petition that the inheritance return was filed late (their apparent objective in failing to turn over records), which was false. As noted, while the Removal Petition was falsely filed in Donatucci's ex-wife's name (as noted above, Donatucci had no standing to raise any of the issues in the Removal Petition since he is not a beneficiary under Michael's Will), Donatucci and Mannion and/or his law firm Mannion Prior are the source of the statements in that Petition.

162.    In addition to taking property of Meghan and the Estate from the apartment shared by Meghan and Michael, and withholding other things and information from Meghan despite her numerous requests and Orders of the state courts, Donatucci has failed to reimburse the Estate for inheritance tax on a joint right of survivorship account.

163.    Further, Donatucci and persons acting at his direction, including members of his office of the Register of Wills and Foglietta, meddled and improperly communicated with the Pennsylvania Department of Revenue in regard to the inheritance tax return while it was pending and under review by that Department.

164.    The Register of Wills should have no interaction with the Department of Revenue in regard to the inheritance return, as the return was filed timely and the inheritance tax owed was paid in full. According to the Register of Wills website, the Register serves "**only** as an agent for the filing of the Inheritance Tax Return and the payment of the Inheritance Tax." Emphasis Added.

165.    Based on information and belief, as a result of Donatucci's meddling and interference with the Department of Revenue in regard to the inheritance return, the Estate was assessed additional tax, penalties and interest.

43

166.    As a result, in April 2018, Plaintiffs were forced to incur the expense of filing a request for

an administrative correction and an appeal of the additional tax, penalties and interest assessed

against the Estate, which, per a decision of Susan Hower, Tax Appeals Reviewer, issued on May

10, 2018, was fully successful but at considerable unnecessary expense to Plaintiffs.

## I.    DONATUCCI'S CONTINUING MEDDLING IN THE ESTATE LEADS TO AN INJUNCTION BEING ENTERED AGAINST HIM

167.    After the Removal Petition and Will Contest were filed, in view of Donatucci's ongoing

scheme, and WSFS's threat to call the loan, foreclose on the Girard Avenue Property, and confess

judgment against Meghan despite the Chester County Court's August 23, 2017 Order giving

Meghan sole authority to sell the Property and pay off the mortgage, Plaintiffs were forced to

initiate action against Donatucci and other parties (including WSFS and Brimfield/Siu) in the case

entitled *Estate of Michael P. Donatucci et al. v. Wilmington Savings Fund Society, FSB et al.* in

the Court of Common Pleas of Chester County, Docket No. 17-08494-TT (the "Chester County

Action").

168.    On August 31, 2017, an Injunction Order was entered against all the defendants in the

Chester County Action. The Injunction Order restrained Donatucci, WSFS, and Brimfield/Siu

from, *inter alia*, further interference with the Girard Avenue Property (in which Donatucci had no

interest but was trying to obtain for himself through the above scheme) and prohibited WSFS from

calling or accelerating the loan or exercising any rights under its loan documents against Plaintiffs.

169.    Despite Plaintiffs' reporting Donatucci's conduct in pleadings and testimony before the

Chester County Court and the entry of the Injunction, Donatucci did not relent. He verbally taunted

Meghan and her mother, including berating them with "the truth will come out" and calling them

"horrible people," *inside* a Chester County courtroom, while the Judge and counsel were in the

court's chambers for a conference prior to a hearing on September 18, 2017 in the Chester County Action.

170.    At that September 18, 2017 hearing in the Chester County Action, several employees of the Register of Wills office accompanied Donatucci (including DiGregorio and Catalano), despite the fact that Donatucci was joined in that action only in his individual capacity.

171.    Following the hearing, over objections of Donatucci, WSFS, and Brimfield/Siu, the Chester County Court entered further Orders reinforcing and keeping in place the Injunction pending the sale of the Girard Avenue Property, and also compelling such defendants' cooperation with discovery, which, in concert and consistent with their scheme, they have not met.

172.    In the Chester County Action, Donatucci, WSFS, and Brimfield/Siu have repeatedly abused process by filing baseless pleadings and engaging in dilatory conduct intended to cause Plaintiffs to incur unnecessary litigation expenses and enhance false claims for attorneys' fees and other damages. These Defendants have also deliberately and in concert with each other withheld, hidden, altered, and/or destroyed documents and information that are discoverable, relevant, and required to be turned over to Plaintiffs, in violation of the rules of court and the Chester County Court's clear and direct Orders.

173.    The pattern and nature of Donatucci's conduct in the foregoing proceedings in the Orphans' Court and Chester County Action demonstrates his improper discriminatory purpose and continuous departure from common practice of a reasonable person in the position of Register of Wills and Clerk of the Orphans' Court. His recurring unlawful conduct exhibits no legitimate exercise of discretion or decision-making. This conduct has had the purpose of, and it continues to be intended to wear down Meghan and hinder or prevent her from pursuing a proper partitioning of Michael's Commonly-Held Realty Interests in the Philadelphia courts in which Donatucci has

influence and control, and coerce unfairly Plaintiffs to accept his demands. He wields his power with impunity in Philadelphia, because the City and its court system are complicit and reward Donatucci's politics by turning a blind eye to his improper conduct. The examples below are among many already noted:

- Threatening Plaintiffs and their counsel and interfering with their legal representation.

- Harassing, retaliating, and conspiring with others against Plaintiffs for rejecting his demands.

- Harassing and retaliating against Plaintiffs for exercising their First Amendment rights to free speech and access to the courts, and for Plaintiffs' filing the Penn Peak Dissolution Case on June 30, 2017 (regarding a property in which Donatucci had no legal or equitable interest) in violation of her Fifth and Fourteenth Amendment rights to due process and equal protection. Those rights have also been violated by Donatucci's retaliatory filings of the Removal Petition in his ex-wife's name and the Will Contest appealing his judicial decision as Register to probate Michael's Will as being valid and enforceable.

- Harassing and retaliating against Plaintiffs for exercising their First Amendment rights to free speech and access to the courts in testifying in the Penn Peak Dissolution Case on August 18, 2017.

- The taunting and harassing of Meghan in the courtroom in the Chester County Action on September 18, 2017 in retaliation for pursuing her legal rights in the courts, in violation of her rights under the First, Fifth and Fourteenth Amendments.

- Entering the apartment Meghan and Michael shared without permission and taking Meghan's and Michael's belongings. Using city employees (including DiGregorio, Catalano and her husband, and Ruth) to remove Meghan's and Michael's belongings, including files and records regarding the Estate, and regarding real estate in which he, Donatucci Jr., and Michael or his Estate have interests (including city employees DiGregorio and Samantha Valtri), by which Donatucci took Plaintiffs' property without right, public purpose, or just compensation, in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

- Taking Michael's Will and keeping it from Meghan (until he was caught when Michael's Boomerang email arrived three days after his death).

- Disdain for clear and direct Court Orders compelling his cooperation and requiring him to turn over property, records and things that he took from Plaintiffs (which, again, also violates the Fifth and Fourteenth Amendments).

- Lying to the Court about changing passwords to Michael's email accounts and entering Michael and Meghan's apartment and taking their belongings.

- Destroying documents as revealed in the Chester County litigation.

- Falsifying phone records concerning Michael's cell phone filed in the court record.

174.   This conduct by Donatucci undermines the authority of his office with the City and his ability to carry out his duties as Register of Wills and Clerk of the Orphans' Court.

175.   The City's court system likewise undermines the confidence of those who come before it when officials such as Donatucci bear influence for their own personal gain.

176.    While Donatucci's actions in this Estate continue to depart from the Register's common practice, the pattern of his using his office to intentionally discriminate for his own gain is not limited to this case. For example:

- *Sisinia Pro v. Ronald R. Donatucci, Register of Wills*, 81 F.3d 1283 (3rd Cir. 1996), a case that was filed in this Court (Civ. A. No. 94-6001, before the late Honorable Stewart Dalzell) in which Donatucci was the subject of claims of violating civil rights for retaliating against a witness for his former wife during their divorce.

- *Lask v. Ronald R. Donatucci, Register of Wills, et al.*, also filed in this Court (Civ. A. 06-3066, before the late Honorable Norma L. Shapiro), in which it was claimed that Donatucci, represented by DeSimone, was refusing to grant hearings or approve the appointment of a decedent's daughter and intestate heir (who was also an attorney) to serve as administrator of her late mother's estate in favor of a political ally.

177.    In Philadelphia City Hall and throughout Pennsylvania's branches of government, matters involving Donatucci evoke bias in his favor.

178.    The institutional integrity of the judicial process is being corrupted by Donatucci's influence in regard to this Estate.

179.    It is no secret that for decades Donatucci has openly used his official power and influence to benefit himself and persons selected by him. In his own words, "Mr. Donatucci is 'convinced patronage works'." Claudia Vargas, 'It's patronage. It works:' Donatucci seeks 10th term, Philadelphia Inquirer (Oct. 26, 2015), http://www.philly.com/philly/news/breaking/20151026 __It_s_patronage__It_works___Donatucci_seeks_10th_term.html. As far back as 1994, the Philadelphia Inquirer began reporting about Donatucci's "Private Empire" made during his time as a public official, and his often blurring the lines between that Empire and his position as Register

of Wills, and also characterizing him as "the Prince of Patronage." In 2011 the Inquirer Editorial

Board published an article titled "Register of Wills Uses Patronage to Keep Job."

180.    Donatucci has frequent personal and professional interactions with the judges of the Courts,

and it is well known that he has provided significant support to many of judges' political

campaigns. Through his official positions, Donatucci is in a position to have *ex parte* conversations

with the judges about substantive and procedural matters.

181.    More recently, in connection with this case, consistent with his threatening harm to

Plaintiffs' counsel's reputation if they (Feltoon and his firm Conrad O'Brien, P.C.) continued to

represent Meghan in regard to the Estate and in line with his scheme to wear down Meghan

financially and force her to accept his demands, on information and belief Donatucci is using his

office, power, and influence in the courts to retaliate against and harm Meghan's father, both in

his reputation and financially, as shown below.

## J.    DONATUCCI'S THREATENING MEGHAN'S COUNSEL HAS CAUSED HER AND THE ESTATE SIGNIFICANT HARM AND EXPENSE

182.    Feltoon represented the Estate in various litigation including in a slip and fall case

regarding the Estate's property at 1227 S. 20th Street, the Penn Peak Dissolution Case, the Will

Contest and Removal Petition matters initiated by Donatucci, and the Chester County Litigation

in which the Injunction was entered against Donatucci and certain other parties noted above.

Feltoon abruptly withdrew from all of these matters in early 2018, due to Donatucci's and

Mannion's interference with Feltoon's representation of Meghan.

183.    As noted above, Donatucci threatened that Feltoon's law firm's reputation would be

harmed if the firm continued to represent Meghan. Mannion likewise interfered with Meghan's

representation by hiring Feltoon's firm to represent him in another matter (without disclosure),

shortly after the threat was made by Donatucci. The interference with the Estate's and the

Executrix's counsel (including Donatucci's threat to their counsel) compromised the Estate/Executrix's representation in this matter and resulted in significant expense to the Estate and the Executrix.

> **K.   DONATUCCI'S INTERFERENCE HAS EXTENDED BEYOND MICHAEL'S ESTATE TO MATTERS EVEN TANGENTIALLY INVOLVING THE EXECUTRIX, INCLUDING HER FATHER'S LAW PRACTICE IN STATE COURT**

184.   Feltoon had also been representing Meghan's father (the undersigned local counsel for Plaintiffs) in his capacity as Administrator D.B.N. of the *Estate of John McGarry* in proceedings pending in the Orphans' Court in Philadelphia and in two appeals before the Superior Court of Pennsylvania prior to his representing Plaintiffs. The *McGarry Estate* has been pending since 2009, and Meghan's father was appointed Administrator DBN in 2011 when the prior administrator was replaced for not doing his job by the Honorable Joseph D. O'Keefe, then the Administrative Judge of the Orphans' Court.

185.   As a result of the foregoing conduct by Donatucci and his counsel in Michael's Estate, last spring Feltoon petitioned the Court for permission to withdraw from the *McGarry Estate* (what should have been an entirely unrelated matter) despite having already been paid with funds advanced by the Meghan's father, which should have been reimbursed to him from funds held on account (but which were frozen by the Court) in the *McGarry Estate*.

186.   In March 2018, Judge Carrafiello, who is the current Administrative Judge of the Orphans' Court and who issued the citations to Meghan in Donatucci's Will Contest and Removal Petition, recused himself and the entire Orphans' Court bench from hearing matters involving the Meghan's father *sua sponte*, including in the *McGarry Estate*, apparently in view of the Will Contest and Removal Petition initiated by Donatucci against Meghan. *See* letter from President Judge Idee C. Fox dated December 14, 2018, attached hereto as **Exhibit "A"**.

187.    Unbeknownst to Meghan's father at the time, but revealed to him in President Judge Fox's December 14, 2018 letter, Judge Carrafiello apparently had "also notified the then President Judge [Sheila Woods-Skipper] that a request to appoint an out of county judge should be made to the Supreme Court" in the *McGarry Estate*.

188.    Judge Carrafiello's notification to President Judge Woods-Skipper that a request to appoint an out-of-county judge should be made to the Supreme Court was ignored and no such request was made and the *McGarry Estate* matter was passed on to the Civil Trial Division.

189.    Subsequently, Donatucci and his counsel in the Chester County Litigation, Chester County Republican Party Chairman Valentino F. DiGiorgio, III, Esquire and Samantha Kats, Esquire of the Stradley Ronon law firm (which also represents the former administrator in the *McGarry Estate*, Dylan McGarry, a special assistant to the Lieutenant Governor of Pennsylvania), attempted to use the proceedings in the *McGarry Estate* to gain a further unfair advantage against Meghan by attempting to obtain privileged information bearing on Michael's Estate that Donatucci and his counsel apparently anticipated would be disclosed at a June 11, 2018 hearing that was scheduled on Feltoon's petition to withdraw from the *McGarry Estate* after Donatucci's interference.

190.    Fully aware that the proceedings in regard to Feltoon's petition to withdraw from the *McGarry Estate* were directly intertwined with Michael's Estate (from which Feltoon had withdrawn without permission of the Court in January 2018) and in spite of Judge Carrafiello's recommendation an out-of-county judge be assigned, the Court assigned a Civil Trial Division Judge, the Honorable M. Teresa Sarmina, to preside over the proceedings in the *McGarry Estate*.

191.    In those proceedings on June 11, 2018 before Judge Sarmina, Feltoon had indicated he would introduce evidence of the details of the Orphans' Court proceedings in both the *McGarry Estate* and Michael's Estate.

192.    Over Meghan's father's objection based on attorney-client and work product privileges,

Judge Sarmina ruled that Feltoon was permitted to introduce <u>privileged information</u> from both the

*McGarry Estate* and Michael's Estate in support of his petition to withdraw in the *McGarry Estate*.

This presented a very serious and highly unfair dilemma for Meghan's father, which he expressed

to Judge Sarmina, as the disclosure of privileged information would prejudice both the *McGarry*

*Estate* and Michael's Estate.

193.    Donatucci's other counsel, Mannion Prior, also meddled in the June 11, 2018 hearing. In

fact, as Feltoon was about to discuss and introduce records covered by the attorney-client and work

product privileges (over Meghan's father's objections), including in regard to Michael's Estate,

the following occurred:

> MR. KLEIN[ ]: . . . There is a gentleman here and he wouldn't identify himself to
> me.
>
> THE COURT: Is he here for me? Sir, who are you?
>
> THE WITNESS: I'm sorry. Just an (sic) spectator, Your Honor.
>
> THE COURT: Who are you?
>
> THE WITNESS: I'm answering the question. I'm for an entity that may be
> interested in this proceeding, Your Honor.
>
> THE COURT: What do you have to do with the proceeding?
>
> THE WITNESS: I don't. I represent someone who may have some interest in some
> of the representation (sic) that Mr. Klein may make.
>
> MR. KLEIN[ ]: May I ask who, Your Honor?
>
> THE COURT: So who are you here on behalf of.
>
> THE WITNESS: I'm on behalf of a law firm, Your Honor.

THE COURT: Which one?

THE WITNESS: Mannion Prior, a law firm out of King of Prussia.

THE COURT: Who do they represent? Do you know?

MR. KLEIN[ ]: They represent Mr. Donatucci, Your Honor. Thank you.

THE COURT: Okay.

MR. KLEIN[ ]: And for the record, the Stradley Firm that represents Mr. McGarry

- - [also represents Donatucci in the above-referenced "Chester County Action"]

MR. O'MARA [of the Stradley Firm]: Your Honor, I don't know that (sic) true. I

heard that last week [when it was raised by Mr. Klein]. I've been unable to confirm

that. I too want to make clear that I'm not necessarily agreeing with that

representation.

THE COURT: Thank you, Mr. O'Mara.

MR. KLEIN[ ]: The case is pending in Chester County before Judge Wheatcraft

[(i.e., the above-referenced "Chester County Action")] and two lawyers have

appeared [from] the Stradley Firm on behalf of Mr. Donatucci [against the

Executrix of Michael's Estate].

THE COURT: Who are they?

MR. KLEIN[ ]: Mr. DeGeorgio (sic) was one of the names.

MR. O'MARA: He's an attorney in my law firm.

MR. KLEIN[ ]: His appearance is entered of public record. Is there a Samantha

Kats?

MR. O'MARA: There is an attorney at our firm by that name.

MR. KLEIN[ ]: She also appeared and she also appeared [in] the McGarry Estate

on behalf of Mr. McGarry. So everyone here knows each other. Getting back to the

point that Mr. Kent [(attorney for Mr. Feltoon)] was speaking about. Nothing in my

affidavit waived the attorney/client privilege. I raised something that is pending in

a public record [(Mr. Donatucci's threat that Mr. Feltoon's law firm's reputation

would be harmed if the firm continued to represent the Executrix of Michael's

Estate)], in a matter involving my daughter, as executrix to Michael Donatucci's

estate. And I submit the linkage there needs to be addressed. It needs to be

addressed because it is the only reason, the only, contained (sic), the only reason

that Mr. Feltone (sic) sought to withdraw. There could be no other reason. They

know that. . . .

Transcript June 11, 2018 hearing at 19:6 – 21:21 (excerpts of which are attached as **Exhibit "B"**;

references are to "page number: line number(s)") (hereinafter Tr. 6-11-18, __:__).

194.    The Court ruled that Feltoon was authorized to introduce (without any limitation)

privileged communications regarding Michael's Estate (as well as the *McGarry Estate*) as

evidence at the hearing, despite the fact that such disclosure would be occurring in the presence of

Donatucci's counsel (the law firms of Stradley Ronon Stevens & Young, LLP and Mannion Prior,

LLP) to the extreme prejudice and detriment of both the *McGarry Estate* and Michael's Estate,

including pending litigation with Mr. Donatucci. Judge Sarmina failed to minimize the harm that

would have otherwise been caused to both Estates had Mr. Klein forgone his fiduciary duties to

the Estates and allowed the proceeding to continue as the Court proposed. This is further supported

by the fact that such disclosure of unlimited privileged communications was not relevant to the

issue before the Court, i.e., Donatucci's threat to Feltoon, which led to Feltoon's withdrawing from Michael's Estate and petitioning to withdraw from the *McGarry Estate*.

195.    As a result of this ruling, the Executrix's father under duress and, in the words of Judge Sarmina, "in between a rock and hard place" (Tr. 6-11-18, 47: 6-7 (**Ex. B**)), was forced to withdraw his opposition to Feltoon's petition, resulting in the Stradley Ronon firm taking unfair advantage of the *McGarry Estate* in a settlement agreement by which it will be able to 1) take over the estate administration and, being left to their own devices, gouge funds from the *McGarry Estate* for alleged fees without substantiation, and 2) cheat Meghan's father and his law firm (who have never been paid for their legal services since 2011) out of being reimbursed substantial attorneys' fees and costs they are long owed, having been incurred on behalf of the *McGarry Estate*. Meghan's father (Administrator D.B.N. in the *McGarry Estate*) is forced to continue to proceed with the settlement despite these facts, in view of the unfair financial burden it has caused him and his law firm.

196.    Pursuant to an Order issued by Civil Trial Division Judge Sarmina, Feltoon's appearance in the *McGarry Estate* was withdrawn in June 2018.

197.    The proceedings in the *McGarry Estate* with respect to Feltoon's petition to withdraw reflect an appearance of impropriety that could have (and should have) been avoided had the Court recused itself as Judge Carrafiello had apparently warned then President Judge Woods-Skipper last March. **Ex. A**, p. 1.

198.    After the Executrix's father was severely prejudiced by the Court's handling of Feltoon's petition to withdraw in the *McGarry Estate,* in a letter of December 14, 2018 to the Superior Court in regard to the *McGarry Estate* (**Ex. A**) presiding President Judge Fox stated, the Court now is "prepared to submit a request to the Supreme Court for the appointment of an out of county judge"

to rule on the Joint Petition to approve the settlement in the *McGarry Estate*. This letter was sent to the Superior Court only after Judge Carrafiello referred the Joint Petition to Judge Sarmina on November 27, 2018, in light of her having handled the June 11, 2018 hearing. *See* letter from Judge Carrafiello dated November 27, 2018, together with an Order of the Superior Court dated November 19, 2018 and related acknowledgements of receipt of that Order signed by Judge Carrafiello and Judge Sarmina, attached hereto as **Exhibit "C"**.

199.    It appears from her letter that President Judge Fox is now of the view that an out-of-county judge must preside over the *McGarry Estate* in view of the Executrix's father's involvement, even though Judge Carrafiello previously notified her predecessor that an out-of-county judge should have been appointed to decide Feltoon's petition to withdraw from the *McGarry Estate*. It is unclear why Judge Fox, who appeared at the June 11, 2018 hearing and appears was aware of the predicament raised by the proceeding, believes it was proper for a Civil Trial Division Judge in Philadelphia to hear Feltoon's petition to withdraw (**Ex. A**, n.1), but that the same Judge should not preside over a petition to approve the settlement in the *McGarry Estate*, particularly when Feltoon's petition to withdraw at least equally involved details of the Orphans' Court proceedings with significant implications in both the *McGarry Estate* and Michael's Estate.

200.    Especially in light of President Judge Fox's recent letter, no Judge of the Court of Common Pleas of Philadelphia should have presided over proceedings regarding Feltoon's petition which involved improper conduct of one of the court's own officials, Register and Orphans' Court Clerk Donatucci. The Court's ruling in favor of Feltoon resulted in the *McGarry Estate* and its Administrator D.B.N. being left without counsel in the Orphans' Court proceedings (no reasonable lawyer is willing to substitute their appearance for Feltoon in the *McGarry Estate*, especially in view of the extensive pending litigation in Michael's Estate involving Donatucci), which led

Meghan's father to be forced to settle under duress and yet to still not be paid for services rendered dating back to 2011.

**L.    THE ESTATE IS BEING UNFAIRLY PREJUDICED BY THE STATE COURT DUE TO DONATUCCI'S REPEATED INAPPROPRIATE INFLUENCE**

201.    Comments by the Court of Common Pleas during a hearing held on December 14, 2018 in the slip and fall case against the Estate's 20th Street Property revealed an unacceptable appearance of impropriety and unfair bias against the Estate, and the Court's actions in that regard caused the Estate to be forced to agree to pay a settlement of the claim, after the claimant had already agreed that no payment would be required from the Estate. The claim dated back to a period before Michael purchased insurance for the property, and as a result the claim was not insured. The Estate is now forced to pay the settlement out of its own funds. This result furthers Donatucci's strategy to wear down the Plaintiffs by depleting Meghan's and the Estate's funds to force Meghan to agree to his terms for him to obtain Michael's Commonly-Held Realty Interests for a cheap price.

202.    This is a perfect example of why a partitioning of Michael's Commonly-Held Realty Interests cannot be determined in the state court system and must be done through this Federal Court.

203.    During the hearing in the slip and fall case, the state court showed <u>bias against the Estate</u> by providing an unwarranted and improper advisory opinion against the Estate after the claimant had already agreed to accept a settlement from the Estate's co-defendant and dismiss the claim against the Estate.

204.    The state court Judge's bias was evident almost immediately as she instructed the Estate's counsel to refer to his client as "Klein," *not* the Donatucci Estate (despite the fact that Plaintiff's claim is against the Executrix, solely in her capacity as Executrix of Michael Donatucci's Estate),

indicating that the Estate's counsel should stop "bringing Donatucci's name into this - - [because] neither he nor his family are in my case." The state court also insisted on referring to the Estate's Property at issue in the case as the "Klein property," which it is not.

205.    At the conclusion of the hearing, the state court Judge added "I'm sure that [counsel for the Estate] will order the transcript [of the December 14, 2018 hearing] so that not only the Court but the plaintiff can get it. I'd like to keep the costs down to a minimum to the plaintiff here." This statement of the Judge is troubling given the matters at issue in the case and shows a completely unsubstantiated bias in favor of the claimant and against the Estate.

206.    The state court Judge even went as far as to single out Meghan's father, who was not counsel of record on the case or participating in the hearing that day (but was merely in attendance at the December 14, 2018 hearing on behalf of the Estate), to reprimand him for allegedly "using up whatever money is in the estate," as if the Estate's preparing a defense to a major jury action and proffering evidence, as it did, to substantiate claims of the Estate for fraud and abuse of process for an illegitimate slip and fall case, was wasteful.

207.    The combination of the advisory opinion pre-judging the case against Meghan along with the other inappropriate comments by the state court Judge, are indicative of Donatucci's influence which undermines Meghan's confidence in the state court system.

## COUNT I
## AGAINST DONATUCCI
*In his Capacity as Register of Wills of the City of Philadelphia and Orphans' Court Clerk*
*and in his Individual Capacity*
### 42 U.S.C. § 1983 – Equal Protection – Class of One

208.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

209.    Donatucci's actions consist of a disturbing pattern of deliberate and unjustified official harassment actionable under the Equal Protection Clause of the Fourteenth Amendment.

210.    The Equal Protection Clause is intended to protect against purely arbitrary government classifications, even when a classification consists of singling out just one person, as is the case here, with different treatment for arbitrary and irrational purposes. Meghan was intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment.

211.    Donatucci's actions, the product of subjective ill-will, were deliberately discriminatory. He probated Michael's Will with no intention of honoring the privilege granted by the probate and fully intending to use his power and knowledge as Register to undermine Meghan for his own gain.

212.    Donatucci's actions following the probate through the present were taken for vindictive and harassing purposes, i.e., they were retaliatory and intended to advance his own personal interests (including financial interests to the detriment of the Estate). His actions were malicious and intentional and constitute an abuse of his office, wherein his personal agenda was consistently put ahead of his duties as Register.

213.    As shown above, at relevant times Donatucci was clothed with and was using the authority that he possessed of the City of Philadelphia and Commonwealth of Pennsylvania in his positions of Register of Wills and Clerk of the Orphans' Court Division of the Court of Common Pleas of Philadelphia, and used and misused his power and authority of the state.

214.    As shown above, at relevant times Donatucci exercised power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.

215.    As shown above, there is a sufficiently close nexus between the state and Donatucci's actions so that his actions may fairly be treated as that of the state itself.

216.    The state created the legal framework governing Donatucci's conduct, and his conduct is fairly attributable to the state.

217.    As shown above, Donatucci's wrongful actions involve treatment of Plaintiffs departing from the norm or common practice regarding his and the office of the Register of Wills' role in regard to probate of wills and administration of estates.

218.    Donatucci intentionally treated Meghan differently than others similarly situated whom his office serves. He not only failed to uphold the validity of the Will which his office conferred upon probate but also failed to honor the position he granted to Meghan as Executrix or Personal Representative of the Estate by virtue of the probate and letters testamentary granted.

219.    There was no rational basis for the difference in treatment that began almost immediately following his judicial decision.

220.    The pattern of conduct by Donatucci is not a legitimate exercise of discretion in his official positions as an employee of the state.

221.    There was no rational or proper purpose for appealing his own decision to admit Michael's Will to probate and meddling in the Estate. Other Personal Representatives of estates probated and administered in Philadelphia and in Pennsylvania are not similarly treated and abused.

222.    Donatucci was motivated by illegitimate animus and ill-will against Meghan.

223.    Donatucci's actions were wanton, malicious, outrageous, and conducted with full knowledge of the law and exhibited reckless indifference to the foreseeable risks of harm to Meghan and the Estate.

224.    As a result of the foregoing, the Estate has suffered and continues to suffer damages, including but not limited to compensatory, punitive and consequential damages, including but not limited to value of property damaged or destroyed, value of legal services reasonably needed and

obtained to deal with Donatucci's repeated and ongoing conduct, prejudgment interest, and a sum commensurate with punishing Donatucci for his evil motive or intentional behavior driven primarily by desire for gain, or reckless and callous disregard for, and malicious and wanton violations of Plaintiffs' constitutional rights, for his intentionally inducing others to participate in such conduct, and to deter Donatucci and others like him from doing similar things in the future.

225.    As a result of the foregoing, Meghan has suffered and continues to suffer damages, including but not limited to those items of damages referred to in the paragraph above, emotional harm, fear, humiliation, ridicule, mental anguish, pain and suffering, medical expenses, lost wages, reasonable value of the working time, and damage to her professional career.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Donatucci and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

**COUNT II**
**AGAINST THE CITY OF PHILADELPHIA**
**42 U.S.C. § 1983 – Equal Protection – Class of One**

226.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

227.    Donatucci's practices in his office constitute a standard operating procedure of the City. The City, including its Court of Common Pleas, fails to properly supervise Donatucci, allows him to have policymaking authority in the office of the Register of Wills and the office of the Clerk of the Orphans' Court, and is deliberately indifferent to Donatucci's use of his office for personal gain, as a result of which the deprivation of Plaintiffs' constitutional rights is an obvious consequence of the City's choice to allow Donatucci's conduct to continue.

228.    Such practices effect a policy or custom, which in this case was the moving force behind

the violations of Plaintiffs' constitutional rights which caused and is continuing to cause injury to

Plaintiffs.

    **WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment

against the City and award Plaintiffs compensatory, punitive and consequential damages as set

forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other

additional relief that this Honorable Court deems just and equitable.

**COUNT III**
**AGAINST DONATUCCI AND THE CITY OF PHILADELPHIA**
*Against Donatucci in his Capacity as Register of Wills of the City of Philadelphia and*
*Orphans' Court Clerk and in his Individual Capacity*
**42 U.S.C. § 1983 – Substantive Due Process, Egregious Abuse of Power**

229.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

230.    Donatucci, exercising his official authority and acting under color of state law, and the City

by virtue of its deliberate indifference to Donatucci's conduct, as set forth throughout this

Complaint, repeatedly and with malice sabotaged and fabricated facts, meddled in Plaintiffs'

affairs, threatened, extorted and contrived claims, failed to comply with court orders, and stole,

withheld, altered and/or destroyed Plaintiffs' property due to personal and political motivation,

depriving Plaintiffs of equal protection of the law.

231.    Donatucci has betrayed and continues to betray the grant of discretion in his positions as

an employee of the state by deliberately targeting Plaintiffs for harassment, which violates

Plaintiffs' constitutional rights to due process, to which the City is deliberately indifferent and has

turned a blind eye, and for which 42 U.S.C. § 1983 provides a remedy.

232.    Donatucci's and the City's conduct and violations of Plaintiffs' rights as described

throughout this Complaint was and continues to be an egregious arbitrary abuse of government

power that shocks the conscience, to which the City and its officials and courts have turned a blind eye and/or are indifferent or complicit, and which has caused and is continuing to cause injury to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Donatucci and the City, jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

**COUNT IV**
**AGAINST DONATUCCI AND THE CITY OF PHILADELPHIA**
*Against Donatucci in his Capacity as Register of Wills of the City of Philadelphia and Orphans' Court Clerk and in his Individual Capacity*
**42 U.S.C. § 1983 – Violations of Free Speech and Access to Courts under First, Fifth, and Fourteenth Amendments**

233.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

234.    Donatucci's actions above under color of state law and the City's indifference to such actions by Donatucci violate Plaintiffs' constitutional rights to free speech and access to the courts provided by the First, Fifth and Fourteenth Amendments of the United States Constitution, including but not limited to the following:

- Threatening and interfering with Plaintiffs' counsel, impacting their rights to access to the courts in violation of the First, Fifth and Fourteenth Amendments.

- Harassing and retaliating against Plaintiffs for exercising their First Amendment rights to free speech and access to the courts, Fifth and Fourteenth Amendment rights to due process and equal protection in filing the Penn Peak Dissolution Case on June 30, 2017 regarding a property in which Donatucci had no legal or equitable interest, in filing the Removal Petition in his ex-wife's name and the Will Contest

63

appealing his judicial decision as Register to probate Michael's Will as being valid and enforceable.

- Harassing and retaliating against Plaintiffs for exercising their First Amendment rights to free speech and access to the courts in testifying in the Penn Peak Dissolution Case on August 18, 2017.

- The taunting and harassing of Plaintiffs in the courtroom in the Chester County Action on September 18, 2017 in retaliation for pursuing their legal rights in the courts, in violation of their rights under the First, Fifth and Fourteenth Amendments.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Donatucci and the City, jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

**COUNT V**
**AGAINST DONATUCCI AND THE CITY OF PHILADELPHIA**
*Against Donatucci in his Capacity as Register of Wills of the City of Philadelphia and*
*Orphans' Court Clerk and in his Individual Capacity*
**42 U.S.C. § 1983 – Violations of Rights Against Deprivation or Taking of Property Without**
**Due Process under Fifth and Fourteenth Amendments**

235.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

236.    Under the Takings Clause of the Fifth Amendment to the United States Constitution, which applies to the several states, as well as the Fourteenth Amendment, the State of Pennsylvania cannot take private property for public use without justly compensating the private property owner.

237.    Donatucci's actions above under color of state law and the City's deliberate indifference to such actions by Donatucci violate Plaintiffs' constitutional rights against the taking of property

64

without due process provided by the Fifth and Fourteenth Amendments of the United States

Constitution, including but not limited to the following:

- Entering the apartment Meghan and Michael shared without permission and taking
  Meghan's and Michael's belongings.

- Using city employees (including DiGregorio, Catalano and her husband, and Ruth)
  to remove Meghan's and Michael's belongings, including files and records
  regarding the Estate, and to manage real estate in which Donatucci, Donatucci Jr.,
  and Michael or his Estate have interests (including city employees DiGregorio and
  Samantha Valtri), by which Donatucci took Meghan's and the Estate's property
  and also took rents belonging to Plaintiffs without due process, right, public
  purpose, or just compensation, in violation of the Fifth and Fourteenth
  Amendments of the United States Constitution.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment

against Donatucci and the City, jointly and severally, and award Plaintiffs compensatory, punitive

and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-

judgment interest, and such other additional relief that this Honorable Court deems just and

equitable.

**COUNT VI**
**AGAINST ALL DEFENDANTS EXCEPT THE CITY and REAL ESTATE ENTITIES**
*Against Donatucci in his Capacity as Register of Wills and Clerk of the Orphans' Court
and in his Individual Capacity*
**42 U.S.C. § 1983 – Civil Conspiracy**

238.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

239.   Defendants, except the City, Ronald, Michael Ronald, L.P., and RRM Associates, LLC, have and continue to willfully participate in joint action to deprive Plaintiffs of their constitutional rights.

240.   Such Defendants acted and are continuing to act in concert pursuant to an agreement to deprive Plaintiffs of their constitutional rights.

241.   Such Defendants have and continue to conspire and act together to scheme and carry out a common plan to extort and take money and property of Plaintiffs, burden Plaintiffs with legal expenses and wear down Plaintiffs to hinder or prevent them from pursuing a proper partitioning of Michael's Commonly-Held Realty Interests, and coerce unfairly Plaintiffs to accept Donatucci's demands.

242.   Such Defendants knowingly and intentionally have and continue to scheme and work together in their common plan and are depriving Plaintiffs of their constitutional rights.

243.   As described above, Plaintiffs have and continue to suffer harm and injury as a result of the foregoing Defendants' continuing conspiracy to deprive her of her constitutional rights.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants Donatucci, Mannion, Mannion Prior, Foglietta, DeSimone, WSFS, Brimfield/Siu, and Donatucci Jr., jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

## COUNT VII
## AGAINST DONATUCCI AND THE CITY OF PHILADELPHIA
*Against Donatucci in his Capacity as Register of Wills of the City of Philadelphia and*
*Orphans' Court Clerk and in his Individual Capacity*
## Violations of Free Speech and Access to Courts, and Deprivation and Taking of Property
## Without Due Process under the Constitution and Laws of
## the Commonwealth of Pennsylvania

244.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

245.    Donatucci's actions above under color of state law violate Plaintiffs' constitutional rights

to free speech and access to the courts, and against deprivation of property without due process

provided by the Constitution of the Commonwealth of Pennsylvania, including as provided under

Article I thereof and by the laws of the Commonwealth of Pennsylvania.

   **WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment

against Donatucci and the City, jointly and severally, and award Plaintiffs compensatory, punitive

and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-

judgment interest, and such other additional relief that this Honorable Court deems just and

equitable.

## COUNT VIII
## AGAINST ALL DEFENDANTS EXCEPT THE CITY, DONATUCCI JR., and
## REAL ESTATE ENTITIES
*Against Donatucci in his Individual Capacity Only*
## Abuse of Process

246.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

247.    Defendants, not including the City, Donatucci Jr., Ronald, Michael Ronald, L.P., and RRM

Associates, LLC, used and/or continue to use the  Will Contest and Removal Petition litigation

and/or the Chester County Action solely to falsely conjure up claims, collude, and leverage and

carry out an extortion scheme by which they improperly stymied and delayed the Estate's

administration, interfered with and/or have wrongly taken property of the Estate, failed to comply

with rules of court and multiple court orders, and attempted to unfairly leverage and deliberately needlessly increased Plaintiffs' legal fees and costs to force a deal for themselves.

248.   The above-described actions were taken by such Defendants solely as a tactical weapon to coerce a result that is not the legitimate object of the legal process, including, but not limited to, unfairly delaying or prolonging the litigation process in order to improperly stymie and delay, unfairly leverage, needlessly increase Plaintiffs' legal fees and costs, put pressure upon Plaintiffs in order to compel them to accept their demands, and were intended to and in fact did cause harm to Plaintiffs.

249.   Such Defendants employed the use of court process and are continuing to do so through their pursuit of the Removal Petition and claims and averments in the Chester County Action as a tactical weapon to coerce a desired result that is/was not the legitimate object of the process.

250.   Plaintiffs have suffered, and continue to suffer, substantial damages and irreparable harm as a result of the unlawful acts of such Defendants, as described above.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants Donatucci, Mannion, Mannion Prior, Foglietta, DeSimone, WSFS, and Brimfield/Siu, jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

**COUNT IX**
**AGAINST DONATUCCI, MANNION, and MANNION PRIOR**
*Against Donatucci in his Individual Capacity Only*
**Malicious Prosecution**

251.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

252.    This count is for wrongful use of civil process or proceedings and arises under common law and the Dragonetti Act, 42 Pa. C.S. § 8351 *et seq.*

253.    Defendants Donatucci, Mannion, and Mannion Prior knowingly and intentionally initiated challenges and interference with the Estate following probate of Michael's Will, and the meritless Will Contest (i.e., the appeal of Donatucci's own decision to admit Michael's Will to probate and issuance of letters testamentary to Meghan as Executrix of the Estate).

254.    These challenges and interference with the Estate following probate and the Will Contest terminated in favor of Plaintiffs. Neither Donatucci nor Mannion and Mannion Prior were attempting to properly adjudicate their claims, and they did not answer the bell in the fight they started, which is a favorable determination for Plaintiffs.

255.    Defendants Donatucci, Mannion, and Mannion Prior knew when they instituted, initiated, procured and continued all such proceedings that their claims and/or appeal were meritless or without probable cause and made, instituted or filed for improper purposes.

256.    Defendants Donatucci, Mannion, and Mannion Prior, at all relevant times, acted in a grossly negligent manner and intended the claims for improper and wrongful purposes.

257.    Notwithstanding their knowledge that the claims were meritless, Defendants Donatucci, Mannion, and Mannion Prior nonetheless procured, initiated and continued all such proceedings against Plaintiffs.

258.    Defendants Donatucci, Mannion, and Mannion Prior, at all relevant times, knew their challenges and interference with the Estate following probate and the Will Contest were without factual or legally cognizable basis, and were solely to falsely conjure up and leverage an extortion scheme.

259.    Defendants Mannion and Mannion Prior acted without probable cause for belief in the possibility that the claims will succeed, and for an improper purpose, including to put pressure upon Plaintiffs in order to compel Plaintiffs' acceptance of Donatucci's demands as a result of which Mannion and Mannion Prior would also benefit, and solely to harass Plaintiffs by bringing claims known to be invalid, and as such Mannion and Mannion Prior, as well as Donatucci, are liable to Plaintiffs.

260.    Defendants Donatucci, Mannion, and Mannion Prior, at all relevant times, knew the challenges and interference with the Estate following probate and the Will Contest were baseless and were intended to, and in fact would cause harm to Plaintiffs, and no evidence to support those claims was ever introduced.

261.    Defendants Donatucci, Mannion, and Mannion Prior challenged and interfered with the Estate following probate and filed the Will Contest solely to improperly stymie and delay the Estate's administration, harass, bully, threaten, and intimidate Plaintiffs and their counsel, and unfairly leverage and needlessly increase Plaintiffs' legal fees and costs and other harm to force a deal for themselves.

262.    Defendants Donatucci, Mannion, and Mannion Prior reasonably should have known they had no legally cognizable basis for the claims asserted, including the Will Contest.

263.    Defendants Donatucci, Mannion, and Mannion Prior knew or should have known that the claims and proceedings they initiated, advanced and/or supported was a wrongful use of the civil process of the Orphans' Court and were being used and, in fact, were used, solely to falsely conjure up and leverage an extortion scheme by which they improperly stymied and delayed the Estate's administration, and attempted to unfairly leverage and deliberately needlessly increase Plaintiffs' legal fees and costs and other harm to force a deal for themselves.

264.    Defendants Donatucci, Mannion, and Mannion Prior by actively taking part in the procurement, initiation and/or continuation of their challenges and interference with the Estate following probate and the Will Contest and related proceedings against Plaintiffs, acted in a grossly negligent manner, without probable cause, with malice, and primarily for a purpose other than that of securing proper discovery, joinder of parties, or adjudication of the claims during the course of the proceedings regarding the Estate following probate of Michael's Will and in the Will Contest.

265.    Defendants Donatucci, Mannion, and Mannion Prior procured, initiated and/or continued the Will Contest without reasonably believing in the existence of any facts upon which the claims were based, solely for improper purposes of conjuring up and leveraging an extortion scheme by which they improperly stymied and delayed the Estate's administration, and attempted to unfairly leverage and deliberately needlessly increased Plaintiffs' legal fees and costs and other harm to force a deal for themselves, all to the detriment of Plaintiffs.

266.    Defendants Donatucci, Mannion, and Mannion Prior knew or should have known that their challenges and interference with the Estate following probate and the Will Contest they initiated, advanced and/or supported against Plaintiffs were primarily for a purpose other than that of securing proper discovery, joinder of parties, or adjudication of the claims.

267.    Defendants Donatucci, Mannion, and Mannion Prior all knew their challenges and interference with the Estate following probate and the Will Contest were groundless in fact and under existing or developing law, and were intended to merely harass and/or maliciously injure Plaintiffs.

268.    Defendants Donatucci, Mannion, and Mannion Prior actively took part in the procurement, initiation and/or continuation of their challenges and interference with the Estate following probate and the Will Contest and related proceedings knowing they were for improper purposes –

including, but not limited to, putting pressure upon Plaintiffs in order to compel them give up their

rights under Michael's probated Will and/or solely to harass or maliciously injure Plaintiffs – by

actively engaging in and supporting the claims with, *inter alia*, the lack of slight diligence or care,

conscious and with voluntary acts or omissions in reckless disregard of their legal duties and of

the consequences to Plaintiffs, and want of even scant care, without exercising even that care which

a careless person would use.

269.   The actions of Defendants Donatucci, Mannion, and Mannion Prior described above are

unlawful under 42 Pa. C.S. § 8351 *et seq.*

270.   Plaintiffs have suffered, and continue to suffer, substantial damages and irreparable harm

as a result of the unlawful acts of Defendants Donatucci, Mannion, and Mannion Prior, including,

but not limited to, harm resulting from the dispossession and/or interference with the advantageous

use of Plaintiffs' property and things suffered by Plaintiffs during the course of the proceedings

regarding this Estate following probate of Michael's Will and through the proceedings regarding

the Will Contest, the harm to Plaintiffs' reputation by defamatory matter alleged as the basis of all

such proceedings, the expense, including attorneys' fees and expenses incurred and owing in

connection with all such proceedings, all other pecuniary losses resulting from all such

proceedings, emotional distress that has and continues to be caused by all such proceedings and

matters related thereto, and punitive damages.

   **WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment

against Donatucci, Mannion, and Mannion Prior, jointly and severally, and award Plaintiffs

compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs,

pre-judgment and post-judgment interest, all damages set forth above and recoverable pursuant to

42 Pa. C.S. § 8353 and under applicable law, and such other additional relief that this Honorable Court deems just and equitable.

## COUNT X
## AGAINST ALL DEFENDANTS EXCEPT THE CITY
## and REAL ESTATE ENTITIES
*Against Donatucci in his Individual Capacity Only*
## Conspiracy

271.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

272.    All Defendants, not including the City and Ronald, Michael Ronald, L.P., and RRM Associates, LLC, have and continue to willfully participate in joint agreement and action to deprive Plaintiffs of their rights as Executrix and beneficiary of the Estate.

273.    Such Defendants acted in concert pursuant to an agreement to deprive Plaintiffs of their rights.

274.    Such Defendants conspired and acted together to scheme and carry out a common plan to extort and take money and property of Plaintiffs, including burdening Plaintiffs with legal expenses and wear down Plaintiffs to hinder or prevent them from pursuing a proper partitioning of Michael's Commonly-Held Realty Interests, and coerce unfairly Plaintiffs to accept Donatucci's demands.

275.    Such Defendants knowingly and intentionally have and continue to scheme and worked together in their common plan against Plaintiffs for unlawful purposes for the benefit of themselves and to the detriment of Plaintiffs, as described above.

276.    As described above, Plaintiffs have and continue to suffer harm and injury as a result of the foregoing Defendants' continuing conspiracy to deprive them of their rights as Executrix and beneficiary of the Estate.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants Donatucci, Mannion, Mannion Prior, Foglietta, DeSimone, WSFS, Brimfield/Siu, and Donatucci Jr., jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

**COUNT XI**
**AGAINST DONATUCCI, MANNION, MANNION PRIOR, and FOGLIETTA**
*Against Donatucci in his Individual Capacity Only*
**Defamation**

277.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

278.    Donatucci, Mannion, Mannion Prior, and Foglietta falsely accused Plaintiffs of committing perjury by reporting false information in the inheritance return.

279.    Donatucci, Mannion, Mannion Prior were the source of similar and other false and defamatory statements that they and Foglietta continue to make in the Removal Petition. As noted above, while the Removal Petition was falsely filed in Donatucci's ex-wife's name (Donatucci had no standing to raise any of the issues in the Removal Petition since he is not a beneficiary under Michael's Will), Donatucci, Mannion, and Mannion Prior are the source of the allegations, including the defamatory statements, in that Petition that continue to be made.

280.    On information and belief, Donatucci and Foglietta made similar false statements about Plaintiffs to the Pennsylvania Department of Revenue.

281.    Such statements and/or accusations of Donatucci, Mannion, Mannion Prior, and Foglietta are defamatory per se and actionable per se and have caused and continue to cause harm and are presumed to be causing such harm to Plaintiffs and their reputation, as well as embarrassment, mental anguish, and humiliation.

282.     Also, on information and belief, Foglietta has made and continues to make false statements about Plaintiffs in electronic communications and social media, including, but not limited to, on Facebook, that have caused and continue to cause harm to Plaintiffs and their reputation, as well as embarrassment, mental anguish, and humiliation.

283.     As a result of the foregoing, Donatucci, Mannion, Mannion Prior, and Foglietta are liable to Plaintiffs for substantial compensatory, consequential, and exemplary or punitive damages.

       **WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants Donatucci, Mannion, Mannion Prior, and Foglietta, jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

## COUNT XII
## AGAINST ALL DEFENDANTS EXCEPT THE CITY
## and REAL ESTATE ENTITIES
### *Against Donatucci in his Individual Capacity Only*
### Intentional Infliction of Emotional Distress

284.     Plaintiffs incorporate the above paragraphs as if fully set forth herein.

285.     As alleged above, all Defendants' conduct (not including City, Ronald, Michael Ronald, L.P., and RRM Associates, LLC) was extreme and outrageous; they acted with an intent to cause Meghan severe emotional distress or with reckless disregard that such conduct would cause severe emotional distress.

286.     Particularly in light of the circumstances of Michael's death, such Defendants actions went so beyond the bounds of decency that they give rise to a claim of intentional infliction of emotional distress.

287.    Meghan actually suffered extreme emotional distress as a result of such Defendants' actions.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants Donatucci, Mannion, Mannion Prior, Foglietta, DeSimone, WSFS, Brimfield/Siu, and Donatucci Jr., jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

### COUNT XIII
### AGAINST DONATUCCI
*In his Individual Capacity Only*
### Conversion / Wrongful Appropriation / Theft / Embezzlement

288.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

289.    Donatucci has taken money and property belonging to Plaintiffs without right or justification.

290.    Despite demand for delivery of such money and property made by Plaintiffs and the court orders compelling the same, Donatucci has failed and refused to turn over such money and property.

291.    As a direct and proximate result of this conversion, wrongful appropriation, theft, and embezzlement of such money and property, Plaintiffs have suffered substantial damages, including but not limited to compensatory damages, consequential damages consisting of, among other things, attorneys' fees and costs.

292.    Donatucci's actions have been willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs. Such conduct warrants an award to Plaintiff of punitive or

exemplary damages in an amount sufficient to punish Donatucci and deter similar wrongdoing by others.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Donatucci and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

**COUNT XIV**
**AGAINST DONATUCCI AND DONATUCCI JR.**
*Against Donatucci in his Individual Capacity Only*
**Trespass**

293.   Plaintiffs incorporates the above paragraphs as if fully set forth herein.

294.   Donatucci and Donatucci Jr., individually or through his agents acting at his direction, unlawfully entered Michael and Meghan's apartment, removed items or property from the apartment, and changed the locks on the apartment, without Plaintiffs' consent.

295.   As a direct and proximate result of this tespass, Plaintiffs have suffered substantial damages, including but not limited to compensatory damages, consequential damages consisting of, among other things, attorneys' fees and costs.

296.   Donatucci's and Donatucci Jr.'s actions have been willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs.

297.   Such conduct warrants an award to Plaintiffs of punitive or exemplary damages in an amount sufficient to punish Donatucci and Donatucci Jr. and deter similar wrongdoing by others.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment against Donatucci and Donatucci Jr., jointly and severally, and award Plaintiffs compensatory, punitive and consequential damages as set forth above, attorneys' fees and costs, pre-judgment

and post-judgment interest, and such other additional relief that this Honorable Court deems just and equitable.

## COUNT XV
### AGAINST DONATUCCI SR., DONATUCCI JR., RRM ASSOCIATES, LLC, AND RONALD, MICHAEL AND RONALD, L.P.
#### Partition

298.   Plaintiffs incorporates the above paragraphs as if fully set forth herein.

299.   The Pennsylvania Rules of Civil Procedure provide that any co-tenant owning real estate with other co-tenants may bring an action for partition of the property. Pa. R. Civ. P. 1551 et seq. (the "Partition Rules").

300.   Pa. R. Civ. P. 1551 provides that "the procedure in an action for the partition of real estate shall be in accordance with the rules relating to the civil action."

301.   Pa. R. Civ. P. 1553 provides that "[a]n action for partition may be brought by any one or more co-tenants." "All other co-tenants shall be joined as defendants." Pa. R. Civ. P. 1553.

302.   The Partition Rules provide that such actions "may be brought in and only in a county in which all or any part of any property which is the subject matter of the action is located." Pa. R. Civ. P. 1552. "The complaint shall include (a) a description of the property and (b) a statement of the nature and extent of the interest of each party in the property." Pa. R. Civ. P. 1552.

303.   Pa. R. Civ. P. 1555 provides that "[t]he plaintiff may state in the complaint causes of action for the partition of all or any part of any properties in which the plaintiff and the defendants are co-tenants, irrespective of their location in the Commonwealth or of the proportion of the plaintiff's interest in the several properties."

304.   Michael, together with his father, Donatucci, and brother, Donatucci Jr., was co-tenant of numerous real estate properties in Philadelphia, individually as co-tenants, as well as through a limited liability company, RRM Associates, LLC, and Ronald, Michael and Ronald, L.P.

305.    For purposes of Pa. R. Civ. P. 1552, below is a description of each property and a statement

and nature of the extent of the interest of each party in the property:

| | |
|---|---|
| 4537 Spruce Street | Tenants in common (Michael, Donattuci Sr. and Donatucci Jr.) |
| 1425 Spruce Street | Tenants in common (Michael, Donattuci Sr. and Donatucci Jr.) |
| 1179-81 S. 13th Street | Tenants in common (Michael, Donattuci Sr. and Donatucci Jr.) |
| 1541 S. 13th Street | Tenants in common (Michael, Donattuci Sr. and Donatucci Jr.) |
| 2249 S. 21st Street | Tenants in common (Michael, Donattuci Sr. and Donatucci Jr.) |
| 1615-17 Porter Street | *Ronald, Michael and Ronald, L.P.* |
| 1907 S. Broad Street | Tenants in common (Michael, Donattuci Sr. and Donatucci Jr.) |
| 1402 E. Moyamensing Avenue | *RRM Associates, LLC* |
| 1030-32 Colorado Street | *RRM Associates, LLC* |
| 1214 Annin Street | Tenant in common (Michael, Donatucci Sr. and Donatucci Jr.) |
| 1507-09 E. Moyamensing Avenue, Units A-C | *RRM Associates, LLC* |

306.    The description of each aforementioned property is set forth in each property's deed.  The

deeds for these properties are attached to this Complaint as **Exhibit D**.

307.    Plaintiffs have been wrongfully excluded from the aforementioned properties, including

by barring Plaintiffs from entering the aforementioned properties, reviewing any books or records

relating to ownership of such books and records, or receiving any rents or other distributions owed

to Plaintiffs as a result of their ownership in the aforementioned properties.

308.    As a result of Defendants' actions in wrongfully excluding Plaintiffs from the

aforementioned actions, it is no longer practicable for the parties to continue in co-ownership of

these properties.

309.    Defendant Ronald, Michael and Ronald, L.P. is a limited partnership with its principal place of business in Philadelphia, Pennsylvania. At the time of Michael's death, the limited partners of Ronald, Michael and Ronald, L.P., in addition to Michael (33%), were Donatucci (33%), and Donatucci Jr. (33%), and the general partner was Donatucci (1%).

310.    Defendant RRM Associates, LLC is a limited liability company with its principal place of business in Philadelphia, Pennsylvania. At the time of Michael's death, the members of RRM Associates, LLC, in addition to Michael (33%), were Donatucci (34%) and Donatucci Jr. (33%). The managing member of RRM Associates, LLC is Donatucci.

311.    Meghan, individually and as Executrix of the Estate of Michael P. Donatucci, brings this cause of action for partition and sale of the aforementioned properties owned in part by Michael, as the rightful beneficiary and/or Executrix of such ownership interests.

**WHEREFORE**, Plaintiffs demand judgment in Plaintiffs' favor and against such Defendants, either (i) dividing the aforementioned properties among the parties, pursuant to Pa. R. Civ. P. 1560, in accordance with the parties' ownership in the properties; or alternatively (ii) ordering the sale of the aforementioned properties pursuant to Pa. R. Civ. P. 1563 and distributing the proceeds of such sales in accordance with the parties' ownership in the properties. Plaintiffs further demand Plaintiffs' share of the rental value of the properties, as well as an accounting of rents, profits or other benefits received by the other co-tenants due and owing to Plaintiffs, as well as any liabilities purportedly incurred by Plaintiffs arising out of Plaintiffs' ownership interest in the properties.

## JURY DEMAND

Plaintiff hereby demands trial by jury of twelve as to all claims that may be tried to a jury.

80

Respectfully submitted,

BERKOWITZ KLEIN, LLP

Date:   March 21, 2019                    By:   /s/ Robert A. Klein
                                          Robert A. Klein, Esquire
                                          Pa. Attorney I.D. No. 44670
                                          629 B Swedesford Road
                                          Swedesford Corporate Center
                                          Malvern, PA 19355-1530
                                          Tel. 610-889-3200
                                          Fax 610-889-9564
                                          Email: rak@berklein.com
                                          *Local Counsel* for Plaintiffs, Meghan E.
                                          Klein, Individually and as Executrix of the
                                          Estate of Michael Philip Thomas Donatucci,
                                          Deceased

Of Counsel:
SCHLAM STONE & DOLAN, LLP
Jeffrey M. Eilender, Esquire
   *Pro Hac Vice Application to be Submitted*
Joshua Wurtzel, Esquire
   *Pro Hac Vice Application to be Submitted*
Seth D. Allen, Esquire
   *Pro Hac Vice Application to be Submitted*
26 Broadway
New York, NY 10004
Tel. 212-344-5400
Fax 212-344-7677
Email: jeilender@schlamstone.com;
jwurtzel@schlamstone.com;
sallen@schlamstone.com
Lead Counsel for Plaintiffs, Meghan E. Klein,
Individually and as Executrix of the
Estate of Michael Philip Thomas Donatucci, Deceased

# EXHIBIT A



First Judicial District of Pennsylvania
COURT OF COMMON PLEAS
OFFICE OF THE PRESIDENT JUDGE

IDEE C. FOX
PRESIDENT JUDGE

December 14, 2018

ROOM 386 CITY HALL
PHILADELPHIA, PA  19107
(215) 686-8334
FAX: (215) 567-7328

Benjamin Kohler, Deputy Prothonotary
Superior Court of PA
Room 315
530 Walnut Street
Philadelphia, PA  19106

FILED IN
SUPERIOR COURT

DEC 19 2018

EASTERN DISTRICT

Re:    Appeal of: Estate of John McGarry and Robert A. Klein
       Superior Court Nos. 1638 & 1640 EDA 2017
       (CP Phila. No 1904 DE of 2009)

Dear Mr. Kohler:

    I write this letter as President Judge, First Judicial District. By Order issued by the
Superior Court, the above mentioned matter was remanded to the Philadelphia Orphans' Court
"for 30 days for consideration of the party's Application for Approval of the Settlement
Agreement." This appeal is from a decision entered by Judge Matthew D. Carrafiello,
Administrative Judge of the Orphans Court.

    By Order docketed March 13, 2018, Judge Carrafiello recused himself from further
proceedings in this matter. In his recusal, the entire Orphans' Court bench was recused from
hearing matters involving Mr. Klein. Judge Carrafiello also notified the then President Judge
that a request to appoint an out of county judge should be made to the Supreme Court. No
such request was made because the matter was on appeal and no action from the common
pleas level was anticipated. [1]

---

[1] There was a Motion to Withdraw as counsel for the Estate that was assigned to a Trial Division judge for that
limited purpose only. Judge Sarmina decided that Motion. However, for reasons set forth in this letter, this
remand cannot be assigned to Judge Sarmina.

Although the remand appears to be only on the issue of approval of a settlement agreement, having read the proposed agreement, I believe it requires review, as well subsequent and continued involvement of a judge familiar with applicable rules and procedures under Orphans' Court Jurisdiction. I am prepared to submit a request to the Supreme Court for the appointment of an out of county judge. However, I would request that the Superior Court stay action on the remand pending the appointment of a judge by the Supreme Court. Alternatively, the Court may find this response sufficient to address the issues on the remand.

If you have any questions, please do not hesitate to let me know. In the interim, I'll await a decision by the Superior Court.

Thank you for your attention to this matter.

Sincerely,

Idee C. Fox
President Judge

cc:   Hon. Matthew D. Carrafiello
      Hon. M. Teresa Sarmina
      Robert A. Klein, Esquire, Administrator, DBN
      Michael D. O'Mara, Esquire

# EXHIBIT B

1.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
Orphan's court

— — —

ESTATE OF:           :
                     :   NO. 1904 DE OF 2009
JOHN MCGARRY         :
                     :
                     :
                     :
                     :
                     :
                     :
                     :

— — —

June 11, 2018
Courtroom 246, City Hall
Philadelphia, Pennsylvania

— — —

BEFORE:   THE HONORABLE M. TERESA SARMINA, J,

AND JUDGE IDEE FOX

— — —

MOTIONS

— — —

2

APPEARANCES:

       ROBERT KLEIN, ESQUIRE
       Administrator of Estate

       KEVIN KENT, ESQUIRE
       Attorney for Robert Feltoon

       ANDREW KABRICK GARDEN
       Attorney for Robert Feltoon.

       MICHAEL O'MARA, ESQUIRE
       Attorney for Dylan McGarry.

ALSO PRESENT:

       ROBERT FELTONE, ESQUIRE


- - -

19

### ESTATE OF McGARRY

1

2    sign it and that is what the record shows.

3            Getting back to the reasons my daughter

4    is here today.  So my wife is sitting back here

5    in the first row behind -- Mr. O'Mara is here.

6    There is a gentleman here and he wouldn't

7    identify himself to me.

8            THE COURT: Is he here for me?

9            Sir, who are you?

10            THE WITNESS:  I'm sorry.  Just an

11    spectator, Your Honor.

12            THE COURT:  Who are you?

13            THE WITNESS:  I'm answering the

14    question.  I'm for an entity that may be

15    interested in this proceeding, Your Honor.

16            THE COURT:  What do you have to do with

17    the proceeding?

18            THE WITNESS:  I don't.  I represent

19    someone who may have some interest in some of

20    the representation that Mr. Kleine may make.

21            MR. KLEINE:  May I ask who, Your Honor?

22            THE COURT:  So who are you here on

23    behalf of.

24            THE WITNESS:  I'm on behalf of a law

25    firm, Your Honor.

20

### ESTATE OF McGARRY

1

2        THE COURT:  Which one?

3        THE WITNESS:  Mannion Prior, a law firm

4   out of King of Prussia.

5        THE COURT:  Who do they represent?  Do

6   you know?

7        MR. KLEINE:  They represent

8   Mr. Donatucci, Your Honor.  Thank you.

9        THE COURT: Okay.

10        MR. KLEINE:  And for the record, the

11   Stradley  Firm that represents Mr. McGarry --

12        MR. O'MARA:  Your Honor, I don't know

13   that true.  I heard that last week.  I've been

14   unable to confirm that.  I too want to make

15   clear that I'm not necessarily agreeing with

16   that representation.

17        THE COURT: Thank you, Mr. O'Mara.

18        MR. KLEINE:  The case is pending in

19   Chester County before Judge Wheatcraft and two

20   lawyers have appeared on the Stradley Firm on

21   behalf of Mr. Donatucci.

22        THE COURT:  Who are they?

23        MR. KLEINE:  Mr. DeGeorgio was one of

24   the names.

25        MR. O'MARA:  He's an attorney in my law

### ESTATE OF McGARRY

1
2  firm.

3          MR. KLEINE:  His appearance is entered

4  of public record.  Is there a Samantha Kats?

5          MR. O;MARA:  There is an attorney at

6  our firm by that name.

7          MR. KLEINE:  She also appeared and she

8  also appeared on the McGarry Estate on behalf

9  of Mr. McGarry.  So everyone here knows each

10  other.

11          Getting back to the point that Mr. Kent

12  was speaking about.  Nothing in my affidavit

13  waived the attorney/client privilege.  I raised

14  something that is pending in a public record,

15  in a matter involving my daughter, as executrix

16  to Michael Donatucci's estate.  And I submit

17  the linkage there needs to be addressed.  It

18  needs to be addressed because it is the only

19  reason, the only, contained, the only reason

20  that Mr. Feltone sought to withdraw.  There

21  could be no other reason.  They know that.

22          Contained in there is alligation, and I

23  have, under subpoena, two individuals from the

24  Conrad O'Brien Firm and, respectfully, for your

25  order, Your Honor, and they will all testify on

47

# ESTATE OF McGARRY

1

2          MR. KLEINE:  Well, Your Honor, the

3    trouble I have with that is if Your Honor

4    should rule they're permitted to introduce the

5    privilege material.

6          THE COURT:  Yes.  But you're sort of in

7    between a rock and a hard place.  I'm required

8    to make you have to make a decision about what

9    you want to present at the hearing.  It is

10   unfortunate that things didn't get worked out

11   Monday, Thursday, Friday.

12         MR. KLEINE:  It is been eight years,

13   Judge.

14         THE COURT:  So --

15         MR. KLEINE:  It is not so fair to me,

16   unfortunately, but it is what it is.

17         THE COURT:  I mean, we all have a

18   position to take or a job to do, so we're here

19   to do it.

20         MR. KLEINE:  Well, I'm in between a

21   rock and a hard place and if you're going --

22         THE COURT:  I guess if you really have

23   confidence, things are -- you can withdraw your

24   objections and that is it.

25         MR. KLEINE:  That is just too easy.

# EXHIBIT C



FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS
JUDICIAL CHAMBERS

MATTHEW D. CARRAFIELLO
ADMINISTRATIVE JUDGE
ORPHANS' COURT DIVISION

519 CITY HALL
PHILADELPHIA, PA 19107
(215) 686-7902
Fax: (215) 686-9534

November 27, 2018

Honorable M. Teresa Sarmina
Room 258 City Hall
Philadelphia, PA 19107

RE: Estate of John McGarry, Deceased

Dear Judge Sarmina,

Enclosed please find a Certified Copy of Order issued by Superior Court in the above matter. Please be advised that upon my recusal, you are appointed in this matter.

Also, enclosed please find the original Acknowledgement Form, for your completion. I have completed a duplicate indicating that I am no longer the Trial Judge in this matter and have forwarded this to Mr. Kohler, Deputy Prothonotary of Superior Court.

Very truly yours,

Matthew D. Carrafiello, A.J.

MDC:pf

Enclosures

cc: Benjamin Kohler
Deputy Prothonotary
Superior Court of PA

Filed 11/19/2018

## IN THE SUPERIOR COURT OF PENNSYLVANIA
### EASTERN DISTRICT

ESTATE OF JOHN MCGARRY,          :   Nos. 1638 & 1640 EDA 2017
DECEASED                         :
                                 :
                                 :   (C.P. Philadelphia County
APPEAL OF: ESTATE OF JOHN        :   No. 1904 DE of 2009)
MCGARRY AND ROBERT A. KLEIN,     :
ESQUIRE, ADMINISTRATOR D.B.N.    :
AND ACCOUNTANT FOR THE ESTATE    :
OF JOHN MCGARRY                  :

## ORDER

Upon consideration of the "Joint Petition Of Appellants And Appellee For Stay Of Appeals And Briefing Schedule Pending Orphans Court's Approval Of Settlement Agreement And Release Entered Into Between Appellants And Appellee," the briefing schedule in these consolidated appeals is hereby **STAYED** for a period of thirty (30) days.

This case is **REMANDED** to the Orphans' Court for thirty (30) days for consideration of the parties' application for approval of the settlement agreement.

Jurisdiction is retained.

PER CURIAM

# The Superior Court of Pennsylvania

## Sitting at Philadelphia

Estate of John McGarry, Deceased

           v.

Appeal of:  Estate of John McGarry,
Deceased and Robert A. Klein, Esq.,
Administrator D.B.N. and Accountant
for the Estate of John McGarry

No. 1638 Eastern District Appeal 2017
    1640 Eastern District Appeal 2017
LC No(s): 1904 DE of 2009
    Philadelphia County - Orphans' Court
    Division

## Acknowledgment

_NOVEMBER 27_ , 2018.  Received from the Superior Court of Pennsylvania,

A Certified Copy of Order dated November 19, 2018, in the above-captioned matter.

I further acknowledge that I am no longer the Trial Judge, pursuant to recusal.  I

have forwarded the Order to the current Trial Judge, Honorable Teresa M. Sarmina.

 

MATTHEW D. CARRAFIELLO, AJ

(Please Return to 530 Walnut Street, Third Floor, Suite 315, Philadelphia, PA  19106)

The Honorable Matthew D. Carrafiello

# The Superior Court of Pennsylvania

## Sitting at Philadelphia

Estate of John McGarry, Deceased

v.

Appeal of:  Estate of John McGarry,
Deceased and Robert A. Klein, Esq.,
Administrator D.B.N. and Accountant
for the Estate of John McGarry

No. 1638 Eastern District Appeal 2017
    1640 Eastern District Appeal 2017
LC No(s): 1904 DE of 2009
Philadelphia County - Orphans' Court
Division

## Acknowledgment

November 28 , 2018.  Received from the Superior Court of Pennsylvania,
A Certified Copy of Order dated November 19, 2018, in the above-captioned matter.

M. Teresa Sarmina, J.

(Please Return to 530 Walnut Street, Third Floor, Suite 315, Philadelphia, PA  19106)

# EXHIBIT D

4537 Spruce

52578595
Page 1 of 7
12/28/2012 09 53AM

This Document Recorded          Doc Id: 52578595
12/28/2012   State RTT: 0.00    Receipt # 1190495
09 53AM      Local RTT: 0.00    Rec Fee: 230 00
Doc Code: D    Commissioner of Records, City of Philadelphia

Prepared by and Return to:
Jennifer Iacono, Esquire
Mattioni, Ltd.
399 Market Street, Suite 200
Philadelphia, PA 19106
(215) 629-1600
BRT # 881145530

## DEED

THIS INDENTURE, made the __26th__ day of __December__, 2012,

BETWEEN

DEBRO INVESTMENTS (a fictitious name)

(hereinafter called the Grantor), of the one part, and

RONALD R. DONATUCCI, MICHAEL P. DONATUCCI AND RONALD R. DONATUCCI, JR.,

(hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of One and 00/100 Dollar ($1.00) lawful money of the United States of America, unto him well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as sole owners, as follows:

RONALD R. DONATUCCI, an undivided sixty (60%) percent interest, MICHAEL P. DONATUCCI, an undivided twenty (20%) percent interest, AND RONALD R. DONATUCCI, JR., an undivided twenty (20%) percent interest, as tenants in common.

ALL THAT CERTAIN lot or piece of ground with the 3 story apartment building thereon erected.

1

SITUATE on the Northeast corner of 46th and Spruce Street.

BOUNDED and described according to a recent survey thereof made by J. Harvey Gillingham, Esq., Surveyor and Regulator of the 12th District on the 29th day of September A.D. 1915 as follows to wit:

CONTAINING in front or breadth on the said Spruce Street 95 feet and extending Northwardly of that width in length or depth along the said 46th Street 125 feet.

BEING NO. 4537 Spruce Street.

BEING the same premises which Sylvia G. Silver, George Gornish, Sidney B. Gornish, Executors under the Will of Samuel Gornish, deceased, Sylvia Gornish, Gerald Gornish and George Gornish, Executors under the Will of Edward H. Gornish, deceased, Sidney Gornish and George Gornish, Surviving co-partners trading as Edward H. Gornish and Co., by Deed dated 03/02/81 and recorded 03/04/81 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book 159, Page 44, granted and conveyed unto Ronald R. Donatucci, trading as Debro, in fee.

BEING the same premises which Ronald R. Donatucci, Trading as Debro, by Deed dated 09/08/05 and recorded 09/21/05 in the Office of the Recorder of Deeds in and for the County of Philadelphia as Document No. 51274592, granted and conveyed unto Debro Investments, in fee.

BEING known as No. 4537 Spruce Street.

TOGETHER with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantor, as well at law as in equity, of, in and to the same.

TO HAVE AND TO HOLD the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever.

AND the said Grantor for himself and his heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that he, the said Grantor, and his heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be with the appurtenances, unto the said Grantees, their heirs and assigns, against him, the said Grantor, and his heirs, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

2

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal.  Dated the day and year first above written.

SEALED AND DELIVERED
IN THE PRESENCE OF US:

_____                         _____(SEAL)

DEBRO INVESTMENTS (a fictitious name)
RONALD R. DONATUCCI T/A DEBRO
INVESTMENTS

3

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA      :
                                                  : SS.

COUNTY OF PHILADELPHIA                 :

On the _26th_ day of December, 2012, before me, the undersigned Notary Public, personally appeared Ronald R. Donatucci t/a Debro Investments, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Stephanie M. Bingnear_ (SEAL)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

4

DEBRO INVESTMENTS
(a fictitious name)

Grantor

and

RONALD R. DONATUCCI,
MICHAEL P. DONATUCCI AND
RONALD R. DONATUCCI, JR.

Grantees

Premises:

4537 Spruce Street, Philadelphia, PA

The address of the above-named Grantee
is 104 Queen Street, Philadelphia, PA

Jennifer Iacono, Esquire
On behalf of Grantees

RECORD AND RETURN TO:
JENNIFER IACONO, ESQUIRE
MATTIONI, LTD.
399 Market Street, Suite 200
Philadelphia, PA 19106
215-629-1600

5

GENERAL AFFIDAVIT

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary, *Stephanie M. Bingnear* _____ [name of Notary before whom affidavit is sworn], on this _24th_ day of _December_ [month], 20_12_, personally appeared _____ Jennifer Iacono _____ [name of affiant], known to me to be a credible person and of lawful age, who being by me first duly sworn, on ` `her ` ` [his or her] oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by _____ Jennifer Iacono, Esquire _____ a

☐ -Title Insurance company, as defined in 40 P.S. § 910-1, located at:

*[address of record for title insurance company]*

☑ - Law Firm/Individual Attorney, PA Bar ID # _309213_, located at:
399 Market Street, Suite 200, Philadelphia, PA 19106

*[address of record of law firm or individual attorney]*

The attached deed submitted for recording is for the following property address:

4537 Spruce Street, Philadelphia, PA 19138

*[signature of affiant]*

Jennifer Iacono
*[typed name of affiant]*

399 Market Street, Suite 200
*[address of affiant, line 1]*

Philadelphia, PA 19106
*[address of affiant, line 2]*

Subscribed and sworn to before me, this _24th_ [day of month] day of _Dec_ [month], 20_12_.

*[Notary Seal:]*

*[signature of Notary]*

Stephanie M. Bingnear
*[typed name of Notary]*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

NOTARY PUBLIC
My commission expires: _April 27, 2015_.

82-54_Int

52578596
Page: 1 of 7
12/28/2012 09:53AM

This Document Recorded                              Doc Id: 52578596
12/28/2012    State RTT: 0.00                       Receipt #: 1190495
09:53AM       Local RTT: 0.00                       Rec Fee: 230.00
Doc Code  D      Commissioner of Records, City of Philadelphia

1425  Spruce

Prepared by and Return to:
Jennifer Iacono, Esquire
Mattioni, Ltd.
399 Market Street, Suite 200
Philadelphia, PA 19106
(215) 629-1600
BRT # 883029700

## DEED

THIS INDENTURE, made the _26th_ day of _December_____, 2012,

BETWEEN

   DEBRO INVESTMENTS (a fictitious name)

                    (hereinafter called the Grantor), of the one part, and

   RONALD R. DONATUCCI, MICHAEL P. DONATUCCI AND RONALD R. DONATUCCI, JR.,

                    (hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of One and 00/100 Dollar ($1.00) lawful money of the United States of America, unto him well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as sole owners, as follows:

   RONALD R. DONATUCCI, an undivided sixty (60%) percent interest, MICHAEL P. DONATUCCI, an undivided twenty (20%) percent interest, AND RONALD R. DONATUCCI, JR., an undivided twenty (20%) percent interest, as tenants in common.

ALL THAT CERTAIN lot or piece of ground, SITUATE in the 8th Ward of the City of Philadelphia, described according to a Survey and Plan of Properties made for J.G.T. Investment Company by Lawrence

1

J. Cleary, Surveyor and Regulator of the 3rd District dated April 23, 1980 to wit:

BEGINNING at a point on the former Northerly side of Spruce Street (50.00 feet wide) within the bed of said Spruce Street (56.00 feet 9 inches) which point is measured Southeastwardly along the said former Northerly side of Spruce Street (50.00 feet wide) within the bed of said Spruce Street (56.00 feet 9 inches wide) the distance of 120.00 feet from a point formed by an intersection of the said former Northerly side of Spruce Street (50.00 feet wide) within the bed of said Spruce Street (56.00 feet 9 inches wide) and the Southeasterly side of 15th Street (50.00 feet wide) if extended; thence extending from said point of beginning Northeastwardly parallel with said 15th Street crossing the bed of said Spruce Street partly passing through a wall the distance of 120.00 feet to a point on the Southwesterly side of Manning Street (30.00 feet 3 inches wide); thence extending Southeastwardly along the said Southwesterly side of Manning Street the distance of 21.00 feet 8 inches to a point; thence extending Southwestwardly parallel with said 15th Street recrossing the bed of said Spruce Street the distance of 120.00 feet to a point on the said former Northerly side of Spruce Street (50.00 feet wide) within the bed of Spruce Street (56.00 feet 9 inches wide); thence extending Northwestwardly along the said former Northerly side of Spruce Street (50.00 feet wide) within the bed of said Spruce Street (56.00 feet 9 inches wide) the distance of 21.00 feet 8 inches to a point being the first mentioned point and place of beginning.

BEING known as No. 1425 Spruce Street.

UNDER AND SUBJECT to certain Conditions as of record.

BEING the same premises which the Philadelphia Authority for Industrial Development recorded 10/20/94 in the County of Philadelphia in Deed Book VCS 710, Page 372, conveyed unto Ronald R. Donatucci, trading as Debro, in fee.

BEING the same premises which Ronald R. Donatucci, trading as Debro, by Deed dated 09/08/05 and recorded 09/21/05 in the Office of the Recorder of Deeds in and for the County of Philadelphia as Document No. 51274593, granted and conveyed unto Debro Investments.

TOGETHER with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantor, as well at law as in equity, of, in and to the same.

TO HAVE AND TO HOLD the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever.

AND the said Grantor for himself and his heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that he, the said Grantor, and his heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be with the appurtenances, unto the said Grantees, their heirs and assigns, against him,

2

the said Grantor, and his heirs, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal. Dated the day and year first above written.

    SEALED AND DELIVERED
    IN THE PRESENCE OF US:

_____(SEAL)

DEBRO INVESTMENTS (a fictitious name)
RONALD R. DONATUCCI T/A DEBRO
INVESTMENTS

3

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA          :
                                      : SS.
COUNTY OF PHILADELPHIA                :

On the __26th__ day of December, 2012, before me, the undersigned Notary Public, personally appeared Ronald R. Donatucci t/a Debro Investments, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Stephanie M. Bingnear_ (SEAL)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

4

DEBRO INVESTMENTS
(a fictitious name)

Grantor

and

RONALD R. DONATUCCI,
MICHAEL P. DONATUCCI AND
RONALD R. DONATUCCI, JR.

Grantees

Premises:

1425 Spruce Street, Philadelphia, PA

The address of the above-named Grantee
is 104 Queen Street, Philadelphia, PA

_____
Jennifer Iacono, Esquire
On behalf of Grantees

RECORD AND RETURN TO:
JENNIFER IACONO, ESQUIRE
MATTIONI, LTD.
399 Market Street, Suite 200
Philadelphia, PA  19106
215-629-1600

5

## GENERAL AFFIDAVIT

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary, *Stephanie M. Bingnear* *[name of Notary before whom affidavit is sworn]*, on this *26th* day of *December [month]*, 20 *12*, personally appeared *Jennifer Iacono* *[name of affiant]*, known to me to be a credible person and of lawful age, who being by me first duly sworn, on *her [his or her]* oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by **Jennifer Iacono, Esquire** a

☐ -Title Insurance company, as defined in 40 P.S. § 910-1, located at:


*[address of record for title insurance company]*

☑ - Law Firm/Individual Attorney, PA Bar ID #  *309213* , located at:
399 Market Street, Suite 200, Philadelphia, PA 19106
*[address of record of law firm or individual attorney]*


The attached deed submitted for recording is for the following property address:

1425 Spruce Street, Philadelphia, PA 19102

*[signature of affiant]*

Jennifer Iacono
*[typed name of affiant]*

399 Market Street, Suite 200
*[address of affiant, line 1]*

Philadelphia, PA 19106
*[address of affiant, line 2]*

Subscribed and sworn to before me, this *26th [day of month]* day of *Dec [month]*, 20 *12* .

*[Notary Seal:]*

*[signature of Notary]*

*Stephanie M. Bingnear*
*[typed name of Notary]*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

NOTARY PUBLIC
My commission expires: *April 29, 2015* .

82-54_Int

DocuSign Envelope ID: 9FD7ECFB-F3E8-4D5A-B9E6-70BFCEB3E89A eRecorded in Philadelphia PA  Doc Id: 52762525

03/24/2014 08:43AM        Receipt#: 1347253
Page 1 of 10              Rec Fee: $235.00
Commissioner of Records  Doc Code: D
State RTT: $0.00   Local RTT: $0.00

Prepared by and Return to:

Diversified Settlement Services, Inc
1206 Veterans Highway
Bristol, Pa 19007
215-781-1900

1179 - 81

File No. ACCOMMODATION DEED

BRT Nos .: 021606000 & 021606100

**This Indenture**, made the _19th_ day of _March_ _____, _____

**Between**

RONALD R. DONATUCCI, MICHAEL P. DONATUCCI AND RONALD R. DONATUCCI, JR.

(hereinafter called the Grantors), of the one part, and

RONALD R. DONATUCCI (AN UNDIVIDED 34% INTEREST), MICHAEL P. DONATUCCI (AN UNDIVIDED 33% INTEREST) AND RONALD R. DONATUCCI, JR. (AN UNDIVIDED 33% INTEREST)

(hereinafter called the Grantees), of the other part,

**Witnesseth**, that the said Grantors for and in consideration of the sum of One And 00/100 Dollars ($1.00) lawful money of the United States of America, unto them well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, released and confirmed, and by these presents do grant, bargain and sell, release and confirm unto the said Grantees, as tenants in common

Street Address: 1179 - 1181 S. 13th Street, Philadelphia, PA 19147

ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected situate in the 2nd Ward of the City of Philadelphia, and described in accordance with a Survey and Plan of Property (198P2012) made January 14, 2013 by Robert C. Goodman, Surveyor & Regulator of the Second Survey District, to wit:

BEGINNING AT A POINT on the easterly side of 13th Street (Legally open on City Plan 50' wide), at a distance of 20 000' from the northerly side of Federal Street (Legally open on Cit Plan 50' wide);

THENCE extending northwardly along the said easterly side of 13th Street, N09°11'20"E the distance of 80 000' to a poin on the westerly side of a certain 10.0' wide alley, which extends northwardly to Annin Street (Legally open on City Plan 30' wide) and southwardly to the said northerly side of Federal Street;

THENCE extending southwardly along the said westerly side of the 10.0' wide alley, S09°11'20"W the distance of 34 000' to a point;

DocuSign Envelope ID: 9FD7ECFB-F3E6-4D5A-B9E6-70BFCEB3E89A

THENCE extending westwardly N80°48'40"W the distance of 80.000' to the said easterly side of 13th Street, said point being the FIRST MENTIONED POINT AND PLACE OF BEGINNING.

CONTAINING IN AREA 2,720 Square Feet / 0.06244 Acres.

Being Known As #1179-1181 S 13th Street

TOGETHER with the free and common use, right, liberty, and privilege of the aforementioned alley as for passageway and watercourse at all times hereafter, forever.

BEING the same premises which Ronald R. Donatucci T/A Debro Investments (a ficticious name), by Deed dated December 26, 2012, and recorded December 28, 2012, in the Philadelphia County Recorder of Deeds Office, as Instrument No. 52578592 granted and conveyed unto Ronald R. Donatucci, Michael P. Donatucci and Ronald R. Donatucci, Jr., in fee simple.

This is a transfer to consolidate two parcels into one and is therefore realty transfer tax-exempt.

**Together with** all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of them, the said grantors, as well at law as in equity, of, in and to the same.

**To have and to hold** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behalf of the said Grantees, their heirs and assigns, forever.

**And** the said Grantors, for themselves and their heirs, executors and administrators, do, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that they, the said Grantors, and their heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, against them, the said Grantors, and their heirs, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantors but not otherwise.

DocuSign Envelope ID: 9FD7ECFB-F3E6-4D5A-B9E6-70EFCEB3E89A

𝕴𝖓 𝖂𝖎𝖙𝖓𝖊𝖘𝖘 𝖂𝖍𝖊𝖗𝖊𝖔𝖋, the parties of the first part have hereunto set their hands and seals. Dated the day and year first above written

        𝕾𝖊𝖆𝖑𝖊𝖉 𝖆𝖓𝖉 𝕯𝖊𝖑𝖎𝖛𝖊𝖗𝖊𝖉
        IN THE PRESENCE OF US:

_____                   {SEAL}
                    RONALD R. DONATUCCI

_____                   {SEAL}
                    MICHAEL P. DONATUCCI

_____                   {SEAL}
                    RONALD R. DONATUCCI, JR.

Commonwealth of Pennsylvania  } ss
County of Philadelphia

    On this, the _19_ day of _March_, 2014 before me, the undersigned Notary Public, personally appeared **RONALD R. DONATUCCI**, **MICHAEL P. DONATUCCI** and **RONALD R. DONATUCCI, JR.**, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                          Notary Public
                          My commission expires _____

3

> NOTARIAL SEAL
> ANGELO M MATTEI
> Notary Public
> PHILADELPHIA CITY, PHILADELPHIA CNTY
> My Commission Expires Jul 22, 2014

Case 2:19-cv-01364-PBT   Document 1-1   Filed 04/01/19   Page 116 of 180
32762323   Page 4 of 10
Case 2:19-cv-02239-304CEM   Document 1-4   Filed 03/01/19   Page 17 of 51
DocuSign Envelope ID: 9FD7ECFB-F3E6-4D5A-B9E6-70BFCEB3E89A

The precise residence and the complete post office
address of the above-named Grantees is:

**104 Queen Street**
**Philadlephia, PA, 19147**

On behalf of the Grantees

Case 2:19-cv-01364-PBT   Document 1-1   Filed 04/01/19   Page 117 of 180
Case 2:19-cv-01364-PBT   Document 1-4   Filed 03/01/19   Page 18 of 51
DocuSign Envelope ID: 9FD7ECFB-F3E6-4D5A-B9E6-70BFCEB3E89A

# Deed

BRT Nos.: 021606000 & 021606100

RONALD R. DONATUCCI, MICHAEL P.
DONATUCCI and RONALD R.
DONATUCCI, JR.

TO

RONALD R. DONATUCCI, MICHAEL P.
DONATUCCI and RONALD R.
DONATUCCI, JR.

Diversified Settlement Services, Inc.
1206 Veterans Highway
Bristol, Pa 19007
Telephone: 215-781-1900 Fax: 215-781-
6340

## Philadelphia Exemption Affidavit

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary,

_____

on this _21st_ day of _MARCH_, 20_14_, personally appeared <u>STEPHEN A. DANASTORG, ESQ.</u> known to me to be a credible person and of lawful age, who being by me first duly sworn, on his/her/their oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by <u>Diversified Settlement Services, Inc.,</u> a

__X__-Title Insurance company, as defined in 40 P.S. § 910-1, located at

<u>1206 Veterans Highway, Bristol, Pa 19007</u>

_____- Law Firm/Individual Attorney, _____ Bar ID # _____, located at

The attached deed submitted for recording is for the following property address:

<u>1179 - 1181 S. 13th Street, Philadelphia, PA 19147</u>

STEPHEN A. DANASTORG

Subscribed and sworn to before me, this _21st_ day of _MARCH_, 20_14_.

_Signature of Notary_

_Brian G. Mays_
Typed Name of Notary

NOTARY PUBLIC

My commission expires: _Jan 6_, 20_15_.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
BRIAN G. MAYS, Notary Public
Middletown Twp., Bucks County
My Commission Expires January 6, 2015

1541 5 13th

52578593
Page: 1 of 7
12/28/2012 09:53AM

This Document Recorded
12/28/2012    State RTT: 0.00
09:53AM       Local RTT: 0.00
Doc Code: D   Commissioner of Records, City of Philadelphia

Doc Id: 52578593
Receipt #: 1190495
Rec Fee: 290.00

Prepared by and Return to:
Jennifer Iacono, Esquire
Mattioni, Ltd.
399 Market Street, Suite 200
Philadelphia, PA 19106
(215) 629-1600
BRT # 881133047

## DEED

THIS INDENTURE, made the __26th__ day of __December__, 2012,

BETWEEN

    RONALD R. DONATUCCI T/A DEBRO INVESTMENTS (a fictitious name)

        (hereinafter called the Grantor), of the one part, and

    RONALD R. DONATUCCI, MICHAEL P. DONATUCCI AND RONALD R. DONATUCCI, JR.,

        (hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of One and 00/100 Dollar ($1.00) lawful money of the United States of America, unto him well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as sole owners, as follows:

    RONALD R. DONATUCCI, an undivided thirty-four (34%) percent interest, MICHAEL P. DONATUCCI, an undivided thirty-three (33%) percent interest, AND RONALD R. DONATUCCI, JR., an undivided thirty-three (33%) percent interest, as tenants in common.

ALL THAT CERTAIN lot or piece of ground.

1

SITUATE on the Easterly side of 13th Street at the distance of 320 feet 11-5/8 inches Southward from the South side of Dickinson Street in the 1st Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 13th Street 16 feet and extending of that width in length or depth Eastwardly 97 feet 7-1/2 inches on the North line and on the South line 97 feet 9 inches to a certain 5 feet wide alley extending Northward and Southward from Dickinson Street to Tasker Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alleys as and for a passageway and watercourse at all times hereafter forever.

BEING No. 1541 South 13th Street.

BRT NO. 88-1133047.

BEING the same premises which Ronald R. Donatucci, trading as Debro, by Deed dated 09-08-05 and recorded 09-21-05 in the Office of the Recorder of Deeds in and for the County of Philadelphia as Document No. 51274591, granted and conveyed unto Debro Investments.

BEING the same premises which Ronald R. Donatucci t/a Debro Investments incorrectly stated on prior Deed as Debro Investments by Deed dated 11-08-12 and recorded 11-09-12 in the Office of the Recorder of Deeds in and for the County of Philadelphia as Document No. 52558621, granted and conveyed unto Ronald R. Donatucci t/a Debro Investments.

TOGETHER with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate right, title, interest, property, claim and demand whatsoever of him, the said Grantor, as well at law as in equity, of, in and to the same.

TO HAVE AND TO HOLD the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever.

AND the said Grantor for himself and his heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that he, the said Grantor, and his heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be with the appurtenances, unto the said Grantees, their heirs and assigns, against him, the said Grantor, and his heirs, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

2

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal. Dated the day and year first above written.

SEALED AND DELIVERED
IN THE PRESENCE OF US:

_____ (SEAL)
RONALD R. DONATUCCI T/A DEBRO
INVESTMENTS (a fictitious name)

3

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA         :
                                              : SS.

COUNTY OF PHILADELPHIA                           :

On the __26th__ day of December, 2012, before me, the undersigned Notary Public, personally appeared Ronald R. Donatucci t/a Debro Investments, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Stephanie M. Bingnear_ (SEAL)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

4

RONALD R. DONATUCCI T/A
DEBRO INVESTMENTS
(a fictitious name)

                                    Grantor

        and

RONALD R. DONATUCCI,
MICHAEL P. DONATUCCI AND
RONALD R. DONATUCCI, JR.

                                    Grantees

Premises:

1541 South 13th Street, Philadelphia, PA

The address of the above-named Grantees
is 104 Queen Street, Philadelphia, PA

_____
Jennifer Iacono, Esquire
On behalf of Grantees

RECORD AND RETURN TO:
JENNIFER IACONO, ESQUIRE
MATTIONI, LTD.
399 Market Street, Suite 200
Philadelphia, PA  19106
215-629-1600

5

### GENERAL AFFIDAVIT

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary, *Stephanie M. Bingnar* [name of Notary before whom affidavit is sworn], on this 26th day of December [month], 20 12 , personally appeared *Jennifer Iacono* [name of affiant], known to me to be a credible person and of lawful age, who being by me first duly sworn, on   her   [his or her] oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by               **Jennifer Iacono, Esquire**                      a

☐ Title Insurance company, as defined in 40 P.S. § 910-1, located at:

[address of record for title insurance company]

☑ Law Firm/Individual Attorney, PA Bar ID # 309213 , located at:
   399 Market Street, Suite 200, Philadelphia, PA 19106

[address of record of law firm or individual attorney]

The attached deed submitted for recording is for the following property address:

1541 S. 13th Street, Philadelphia, PA 19147

*[signature]*
[signature of affiant]

     Jennifer Iacono
[typed name of affiant]

     399 Market Street, Suite 200
[address of affiant, line 1]

     Philadelphia, PA 19106
[address of affiant, line 2]

Subscribed and sworn to before me, this 26th [day of month] day of Dec [month], 20 12 .

[Notary Seal:]

*[signature]*
[signature of Notary]

*Stephanie M. Bingnar*
[typed name of Notary]

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnar, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

NOTARY PUBLIC
My commission expires: April 29 , 2015 .

82-54_Int

2249

Commonwealth Land Title Insurance Co.
1700 Market Street - Suite 2110
Philadelphia, PA 19103

T#PH150468TP

# This Indenture Made this 30 day of JUNE , 2005.

Between FRANK J. DONATUCCI and EDITH M. DONATUCCI, husband and wife

(hereinafter called the Grantors)

AND

RONALD R. DONATUCCI,          RONALD R. DONATUCCI, JR. and MICHAEL
DONATUCCI

(hereinafter called the Grantees)

Witnesseth That the said Grantors for and in consideration of the sum of $170,000.00 lawful money of the United States of America, unto them well and truly paid by the said Grantees and at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, their heirs and assigns, as tenants in common

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE on the Northeast corner of 21st Street and Passyunk Avenue in the 48th Ward of the City of Philadelphia.

BEGINNING at a point in the East side of 21st Street at the distance of 376 feet Southward from the South side of Jackson Street; thence extending Eastward along a line at right angles to the said 21st Street 90 feet 5-3/4 inches to a point in the Northwesterly side of Passyunk Avenue; thence extending Southwesterly along Northwesterly side of Passyunk Avenue 61 feet 4-7/8 inches to a point in the North side of Wolf Avenue; thence extending Westwardly along the North side of Wolf Street 33 feet 11-1/2 inches to a point in the East side of 21st Street; thence Northwardly along the East side of 21st Street 24 feet to the point and place of beginning.

BEING No. 2249 South 21st Street.



51241742
Page: 1 of 6
08/12/2005 01:39PM

This Document Recorded          Doc Id: 51241742
08/12/2005   State RTT: 1,700.00     Receipt # 428132
01:39PM      Local RTT: 0.00         Rec Fee: 84.50
Doc Code: D      Commissioner of Records, City of Philadelphia

BEING the same premises which Violet Carbone, Widow by Deed dated 7/20/1973 and recorded 7/27/1973 in Philadelphia County in Deed Book DCC 425 Page 350 conveyed unto Frank J. Donatucci and Edith M. Donatucci, his wife, their heirs and assigns, as tenants by the entirety, in fee.

UNDER AND SUBJECT to restrictions of record.

Together with all and singular the buildings improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantors, as well at law as in equity, of, in, and to the same.

To have and to hold the said lot(s) or piece(s) of ground above described with the buildings and improvements thereon erected hereditaments and premises hereby granted, or mentioned, and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever, as tenants in common.

UNDER AND SUBJECT as aforesaid.

And the said Grantors, for themselves, their heirs, executors, administrators do by these presents, covenant, grant and agree, to and with the said Grantees, their heirs, and assigns, that they the said Grantors, their heirs, all and singular the Hereditaments and premises herein above described and granted, or mentioned and intended so to be with the Appurtenances unto the said Grantees, their heirs and assigns, against them the said Grantors, their heirs and against all and every Person or Persons whomsoever lawfully claiming or to claim the same or any part thereof, by from, or under him, her, them or any of them shall and will SUBJECT as aforesaid WARRANT and forever DEFEND.

(THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK)



CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER
TAX          AUG·4·06
P.O.11394          999.99

CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER
TAX          AUG·4·06
P.O.11394          999.99

CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER
TAX          AUG·4·06
P.O.11394          999.99

CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER
TAX          AUG·4·06
P.O.11394          999.99

CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER
TAX          AUG·4·06
P.O.11394          999.99

CITY OF PHILADELPHIA
DEPARTMENT OF REVENUE
REALTY TRANSFER
TAX          AUG·4·06
P.O.11394          100.05

In Witness Whereof, the said Grantors, have caused these presents to be duly executed dated the day and year first above written.

## Sealed and Delivered
IN THE PRESENCE OF US

_____ (SEAL)
Frank J. Donatucci

_____ (SEAL)
Edith M. Donatucci


COMMONWEALTH OF PENNSYLVANIA     )
                                 )SS
COUNTY OF  PHILA                 )

On this, the  30  day of  JUNE  ,A.D 2005, before me, a notary public the undersigned officer, personally appeared FRANK J. DONATUCCI and EDITH M. DONATUCCI, husband and wife known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.


_____
Notary Public


My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANNA L. D'ANNUNZIO, Notary Public
City of Philadelphia, Phila. County
My Commission Expires February 19, 2009

# DEED
PH150468TP

**Grantors:** FRANK J. DONATUCCI and EDITH M. DONATUCCI, husband and wife

# TO

**Grantees:** RONALD R. DONATUCCI,      RONALD R. DONATUCCI, JR. and MICHAEL DONATUCCI

**PREMISES**
2249 South 21st Street
Forty-eighth Ward
Philadelphia
Pennsylvania

The address of the above named Grantee is:

~~1616 S. BROAD ST   FLOOR 1~~

~~PHILA   PA   19145~~

Certified by: _____

1615-17

52072634
Page: 1 of 6
06/04/2009 12:28PM

**THIS INDENTURE** made the 27th day of April in the year of our Lord two thousand nine (2009)

**BETWEEN** DEBRO INVESTMENTS, Ronald R. Donatucci, Michael Donatucci and Ronald R.
Donatucci, Jr., Principals, a general partnership
Grantor

and

RONALD, MICHAEL AND RONALD, L.P.
Grantee

**NOW** This Indenture witnesseth, that the said DEBRO INVESTMENTS, for and in consideration of the sum of $1.00 lawful money of the United States, to it well and truly paid by the said RONALD, MICHAEL AND RONALD, L.P., at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, released, and confirmed and by these present, does grant, bargain, sell, alien, release and confirm unto the said RONALD, MICHAEL AND RONALD, L.P., in fee:

**PREMISES "A"**

**ALL THAT CERTAIN** lot or piece of ground with the buildings and improvements thereon erected.

**SITUATE** on the North side of Porter Street and the West side of Bancroft Street in the 26th Ward of the City of Philadelphia.

**CONTAINING** in front or breadth on the said Porter Street Seventeen feet and extending of that width in length or depth Northwardly along the West side of the said Bancroft Street between parallel lines at right angles to the said Porter Street Sixty feet to Four feet wide alley extending from Chadwick Street to the said Bancroft Street.

**TOGETHER** with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever.

**BEING NO.** 1615 Porter Street.

Tax Parcel #261039005.

This Document Recorded
06/04/2009            State RTT: 0.00
12:28PM              Local RTT: 0.00
Doc Code: D          Commissioner of Records, City of Philadelphia

Doc Id: 52072634
Receipt # 804278
Rec Fee: :99.50

**PREMISES "B"**

**ALL THAT CERTAIN** lot or piece of ground with the 2 story brick messuage or tenement thereon erected.

__SITUATE__ on the North side of Porter Street at the distance of Seventeen feet Westward from the West side of Bancroft Street in the 26th Ward of the City of Philadelphia..

__CONTAINING__ in front or breadth on the said Porter Street Fifteen feet and extending in length or depth Northwardly Sixty feet to a Four feet wide alley extending from said Bancroft Street to Chadwick Street.

__TOGETHER__        with the free and common use, right, liberty and privilege of the said alley as and for a passageway and watercourse at all times hereafter, forever.

__BEING__        the same premises which His Eminence, JOHN CARDINAL KROL, as Archbishop of Philadelphia, recorded 03/22/1979 in the County of Philadelphia in Deed Book DCC 1613, Page 405, conveyed unto Ronald R. Donatucci, trading as Debro, in fee.

__TRANSFER FROM GENERAL PARTNERSHIP TO A LIMITED PARTNERSHIP; THIS TRANSFER IS THEREFORE EXEMPT FROM TRANSFER TAX.__

__Together__ with all and singular the buildings, improvements, ways, streets, alleys, passageways, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, in law, equity, or otherwise howsoever, of, in, to, or out of the same;

__To have and to hold__ the said lot or piece of ground above described with the buildings and improvements thereon erected------hereditaments and premises hereby granted and released, or mentioned and intended so to be, with the appurtenances, unto the said __Grantee__, her heirs and assigns, to and for the only proper use and behoof of the said grantee, her heirs and assigns forever.

__AND__ the said GRANTOR, for itself, its heirs, executors and administrators does covenant, promise and agree, to and with the said GRANTEE, its heirs and assigns, that it, the said GRANTOR, had not done, committed, or knowingly or willingly suffered to be done or committed, any act, matter or thing whatsoever whereby the premises hereby granted, or any part thereof, is, are, shall or may be impeached, charged or encumbered, in title, charge, estate or otherwise howsoever, and against all and every person or persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from, or under them or any of them, shall and will WARRANT and forever DEFEND.

    __In Witness Whereof__ the said DEBRO INVESTMENTS hereunto sets its hand and seal the day and year first above written.

                              DEBRO INVESTMENTS

                                                                    (SEAL)
                    BY:    Ronald R. Donatucci, Owner

COMMONWEALTH OF PENNSYLVANIA          :
                                      : SS.
COUNTY OF PHILADELPHIA                 :

On this, the 27 th day of April , 2009, before me, a Notary Public for the Commonwealth of Pennsylvania personally appeared DEBRO INVESTMENTS by RONALD R. DONATUCCI known to me (satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____ (SEAL)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Mary Novella Eley - Notary Public
City of Philadelphia, Philadelphia County
MY COMMISSION EXPIRES SEP 30, 2012

DEBRO INVESTMENTS

Grantor

to

RONALD, MICHAEL AND RONALD, L.P.

Grantee

Premises:
1615 Porter Street
1617 Porter Street
Philadelphia, PA 19145

The address of the above-named Grantees
is 1616 South Broad Street, Philadelphia, PA 19145

Michael Mattioni, Esquire
On behalf of Grantees

RECORD AND RETURN TO:
MICHAEL MATTIONI, ESQUIRE
MATTIONI, LTD.
399 Market Street, Suite 200
Philadelphia, PA 19106
215-629-1600

### GENERAL AFFIDAVIT

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary, CHRISTINE SLIDER _____ [name of Notary before whom affidavit is sworn], on this 3rd day of June [month], 20 09, personally appeared MICHAEL MATTIONI _____ [name of affiant], known to me to be a credible person and of lawful age, who being by me first duly sworn, on his [his or her] oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by MICHAEL MATTIONI, ESQUIRE _____ a

☐ Title Insurance company, as defined in 40 P.S. § 910-1, located at:

_____

[address of record for title insurance company]

☒ Law Firm/Individual Attorney, Bar ID # 57458 located at: 399 Market Street, Suite 200 Philadelphia, PA 19106

[address of record of law firm or individual attorney]

The attached deed submitted for recording is for the following property address: 1615 Porter Street
1617 Porter Street

_[signature of affiant]_

MICHAEL MATTIONI, ESQUIRE
[typed name of affiant]

399 Market Street, Suite 200
[address of affiant, line 1]

Philadelphia, PA 19106
[address of affiant, line 2]

Subscribed and sworn to before me, this 3rd [day of month] day of June [month], 20 09

[Notary Seal:]

_[signature of Notary]_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE SLIDER, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 20, 2010

CHRISTINE SLIDER
[typed name of Notary]

NOTARY PUBLIC
My commission expires: 12/20 20 10

82-54_Int

52578594
Page: 1 of 7
12/28/2012 09:53AM

This Document Recorded
12/28/2012    State RTT: 0.00          Doc Id· 52578594
09·53AM       Local RTT: 0.00          Receipt #: 1190498
Doc Code· D   Commissioner of Records, City of Philadelphia   Rec Fee: 230.00

1907

Prepared by and Return to:
Jennifer Iacono, Esquire
Mattioni, Ltd.
399 Market Street, Suite 200
Philadelphia, PA 19106
(215) 629-1600
BRT # 39-4648100

## DEED

THIS INDENTURE, made the _26th_ day of _December_, 2012,

BETWEEN

    RONALD R. DONATUCCI T/A DEBRO INVESTMENTS (a fictitious name)

        (hereinafter called the Grantor), of the one part, and

    RONALD R. DONATUCCI, MICHAEL P. DONATUCCI AND RONALD R. DONATUCCI, JR.,

        (hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of One and 00/100 Dollar ($1.00) lawful money of the United States of America, unto him well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as sole owners, as follows:

    RONALD R. DONATUCCI, an undivided thirty-four (34%) percent interest, MICHAEL P. DONATUCCI, an undivided thirty-three (33%) percent interest, AND RONALD R. DONATUCCI, JR., an undivided thirty-three (33%) percent interest, as tenants in common.

ALL THAT CERTAIN lot or piece of ground.

SITUATE on the East side of Broad Street at the distance of 54 feet Southward from the South side of Mifflin Street in the 39th Ward of the City of Philadelphia, thence extending Southwardly along the East side of said Broad Street 17 feet 6 inches to ground now or late of Hugh McNeill; thence Eastwardly by the same and on a line parallel with Mifflin Street 100 feet to a certain 4 feet wide alley; thence Northwardly along the Westerly line of said 4 feet wide alley 14 feet 6 inches to the Southern line of a certain 3 feet wide alley extending Northwardly and Eastwardly into Juniper Street; thence Westwardly along the Southern line of said 3 feet wide alley on a line parallel with said Mifflin Street 13 feet; thence Northward along the Western line of said alley, which also extends Northwardly along the Western line of said premises 3 feet to other ground late of the said Hugh McNeill; thence Westward along the Southern line of said land, parallel with Mifflin Street 87 feet to the East side of said Broad Street and place of beginning.

TOGETHER with the use of said alleys, as and for passageways and watercourses at all times hereafter, forever.

BEING known as No. 1907 South Broad Street.

BRT NO. 39-4648100.

BEING the same premises which Mary E. Gambescia, by Deed dated 07-07-98 and recorded 09-17-98 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JTD 796 Page 278, granted and conveyed unto Debro Investments.

BEING the same premises which Ronald R. Donatucci t/a Debro Investments incorrectly stated on prior Deed as Debro Investments by Deed dated 11-08-12 and recorded 11-09-12 in the Office of the Recorder of Deeds in and for the County of Philadelphia as Document No. 52558611, granted and conveyed unto Ronald R. Donatucci t/a Debro Investments.

TOGETHER with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate right, title, interest, property, claim and demand whatsoever of him, the said Grantor, as well at law as in equity, of, in and to the same.

TO HAVE AND TO HOLD the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns, forever.

AND the said Grantor for himself and his heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantees, their heirs and assigns, that he, the said Grantor, and his heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be with the appurtenances, unto the said Grantees, their heirs and assigns, against him, the said Grantor, and his heirs, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

2

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal. Dated the day and year first above written.

SEALED AND DELIVERED
IN THE PRESENCE OF US:

_____                    _____(SEAL)

RONALD R. DONATUCCI T/A DEBRO
INVESTMENTS (a fictitious name)

3

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA        :

                                           : SS.

COUNTY OF PHILADELPHIA              :

     On the _26th_ day of December, 2012, before me, the undersigned Notary Public, personally appeared Ronald R. Donatucci t/a Debro Investments, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                             _Stephanie M. Bingnear_ (SEAL)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

4

RONALD R. DONATUCCI T/A
DEBRO INVESTMENTS
(a fictitious name)

Grantor

and

RONALD R. DONATUCCI,
MICHAEL P. DONATUCCI AND
RONALD R. DONATUCCI, JR.

Grantees

Premises:

1907 South Broad Street, Philadelphia, PA

The address of the above-named Grantee
is 104 Queen Street, Philadelphia, PA

Jennifer Iacono, Esquire
On behalf of Grantees

RECORD AND RETURN TO:
JENNIFER IACONO, ESQUIRE
MATTIONI, LTD.
399 Market Street, Suite 200
Philadelphia, PA  19106
215-629-1600

5.

## GENERAL AFFIDAVIT

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary, *Stephanie M. Bingnear* [name of Notary before whom affidavit is sworn], on this *26th* day of December [month], 20 12 , personally appeared *Jennifer Iacono* [name of affiant], known to me to be a credible person and of lawful age, who being by me first duly sworn, on ' her [his or her] oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by _____ Jennifer Iacono, Esquire _____ a

☐  Title Insurance company, as defined in 40 P.S. § 910-1, located at:

[address of record for title insurance company]

☑ - Law Firm/Individual Attorney, PA Bar ID # 309213 , located at:

399 Market Street, Suite 200, Philadelphia, PA 19106

[address of record of law firm or individual attorney]

The attached deed submitted for recording is for the following property address:

1907 S. Broad Street, Philadelphia, PA 19148

*[signature of affiant]*
[signature of affiant]

Jennifer Iacono
[typed name of affiant]

399 Market Street, Suite 200
[address of affiant, line 1]

Philadelphia, PA 19106
[address of affiant, line 2]

Subscribed and sworn to before me, this *26th* [day of month] day of   Dec   [month], 20  12 .

[Notary Seal:]

*[signature of Notary]*
[signature of Notary]

*Stephanie M. Bingnear*
[typed name of Notary]

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Stephanie M. Bingnear, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 29, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

NOTARY PUBLIC
My commission expires: *April 29 20 15*

82-54_Int

Case 2:19-cv-00893-MMB   eRecorded in Philadelphia 3701/Doc Id 52891226451
03/13/2015 10:32AM        Receipt#: 1461503
Page 1 of 5                Rec Fee: $252.00
Commissioner of Records   Doc Code: D
State RTT: $8,000.00    Local RTT: $24,000.00

Prepared by and Return to:

Land Services USA, Inc.
1835 Market St, Suite 420
Philadelphia, PA  19103
15-563-5468

File No. PAFA15-0449   MMY (1 of 7)

BRT # 88-1-0021-00

1402

**This Indenture** made the **24**th day of **FEBRUARY**, **2015**,

Between

HOM MANAGEMENT, LLC, A PENNSYLVANIA LIMITED LIABILITY
COMPANY

(hereinafter called the Grantor), of the one part, and

RRM ASSOCIATES, LLC, A PENNSYLVANIA LIMITED LIABILITY
COMPANY

(hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantor for and in consideration of the sum of Eight Hundred Thousand
And 00/100 Dollars ($800,000.00) lawful money of the United States of America, unto it well and truly
paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby
acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant,
bargain and sell, release and confirm unto the said Grantee

Street Address: 1402 East Moyamensing Avenue, Philadelphia, PA 19147

ALL THAT CERTAIN 3 story brick messuage or tenement and lot or piece of ground
thereon belonging.

SITUATE on the West side of Moyamensing Avenue between Reed and Dickinson Street
in the 1st Ward of the City of Philadelphia.

BEGINNING at a distance of 72 feet 3 ½ inches North from the North side of Dickinson
Street.

CONTAINING in front or breadth on the said Moyamensing Avenue 23 feet and
extending of that width in length or depth West between parallel lines with Gerrit Street
formerly called Jervis Street 135 feet.

BOUNDED East by said Moyamensing Avenue North by ground now or formerly of Joseph L. Atkerson South by ground now or late of Jonus R. Severson and West by ground conveyed by Henry Goldner to Joseph T. Atkerson and J. Powell Atkerson.

BEING known as 1402 East Moyamensing Avenue.

BEING Parcel #88-1-0021-00.

BEING the same premises which GAML Properties, L.L.C. by Deed dated 5/23/2005 and recorded 5/31/2005 in the County of Philadelphia in Document ID #51188336, conveyed unto Horn Management, LLC, in fee.

**T**ogether **With** all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said grantor, as well at law as in equity, of, in and to the same.

**T**o **have and to hold** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns, forever.

**And** the said Grantor, for itself, its successors and assigns, does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that it, the said Grantor, and its successors and assigns, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, against it, the said Grantor, and its successors and assigns, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

**I**n **Witness Whereof**, the herein-named Grantor(s) has caused its common and corporate seal to be affixed to these presents by the hand of its        President, and the same to be duly attested by its Secretary. Dated the day and year first above written.

ATTEST:

HOM MANAGEMENT, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

By: _____
    Leonard K. Hom, Member

_____

{SEAL}

Commonwealth of Pennsylvania   } ss.
County of Philadelphia

AND NOW, this 24 day of February, 2015, before me, the undersigned Notary Public, appeared Leonard K. Hom, Member who acknowledged himself to be the Member of Hom Management, LLC, a Pennsylvania Limited Liability Company and he as such Member being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the Limited Liability Company by himself as Member.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
Notary Public
My commission expires  2/2/16

The precise residence and the complete post office address of the above-named Grantee is:

104 Queen Street
Phila, PA   19147
_____
On behalf of the Grantee

SONAL M PARIKH
Notary Public of New Jersey
Commission Expires 2/02/2016

3

# Deed

BRT # 88-1-0021-00

From:

Hom Management, LLC, a Pennsylvania
Limited Liability Company

To:

RRM Associates, LLC, a Pennsylvania
Limited Liability Company

Property Address:

1402 East Moyamensing Avenue
Philadelphia, PA 19147

Land Services USA, Inc.
1835 Market St, Suite 420
Philadelphia, PA 19103
Phone 215-563-5468 Fax 215-568-8219

Case 2:19-cv-00893-MMB Document 1-1 Filed 03/01/19 Page 23 of 51
Recorded in Philadelphia 8/12/2015 ID 52052882
08/12/2015 02:42PM     Receipt#: 1515378
Page 1 of 12                    Rec Fee: $252.00
Commissioner of Records      Doc Code: D
State RTT: $0.00   Local RTT: $0.00

Prepared by and Return to:

Land Services USA, Inc.
1835 Market St, Suite 420
Philadelphia, PA 19103
15-563-5468

File No. PAFA15-0595TK

BRT # 88-4-3461-70

1030-32
Colorado

DEED OF CORRECTION

**This Indenture**, made the **6ᵗʰ** day of **AUGUST, 2015**

**Between**

RRM ASSOCIATES, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

(hereinafter called the Grantor), of the one part, and

RRM ASSOCIATES, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY

(hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantor for and in consideration of the sum of ONE DOLLAR And 00/100 Dollars ($1.00) lawful money of the United States of America, unto her well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, its successors and assigns,

Street Address: 1030-32 South Colorado Street, Philadelphia, PA 19146

ALL THAT CERTAIN lot or piece of ground with the two story brick messuage or tenement thereon erected situate on the West side of a 40 foot wide street called Stocker Street, at the distance of 242 feet Southward from the South side of Tidmarsh or Carpenter Street in the 30ᵗʰ Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Stocker Street 16 feet and extending in length or depth Westward of that width between line parallel with the said Tidmarsh or Carpenter Street 49 feet to a four foot wide alley leading into Washington Avenue (lately called Prime Street).

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alleys as and for passageways and water-courses at all times hereafter, forever.

BOUNDED Northward by ground granted or intended to have been granted unto Samuel Lawson on ground rent; Eastward by the said Stocker Street; Southward by ground granted or intended to have granted unto Thomas Bell on ground rent; and Westward by the said four foot wide alley.

AND ALL THAT CERTAIN lot or piece of ground with the messuage or tenement thereon erected, hereditaments and appurtenances situate in the 30th Ward of the City of Philadelphia and Commonwealth of Pennsylvania, situate on the West side of Colorado Street at the distance of 258 feet Southward from the South side of Carpenter Street;

CONTAINING in front or breath on the said Colorado Street, 16 feet and extending of that width in length or depth Westward between lines parallel with said Carpenter Street 49 feet to a certain 4 feet wide alley which leads Southward into Washington Avenue.

BOUNDED Northward by ground now or late of William Bell; Southward by ground now or late of Thomas Bell; Eastward by said Colorado Street; and Westward by the aforementioned 4 feet wide alley.

BEING known as 1030-32 South Colorado Street.

TOGETHER BEING Parcel No.: 88-4-3461-70.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley, as and for a passageway and watercourse at all times hereafter, forever.

BEING THE SAME PRMISES which Ronald R. Donatucci by deed dated July 22, 2015 and recorded in Philadelphia County in Document ID# 52945770 conveyed unto RRM Associates, LLC, A Pennsylvania Limited Liability Company

(THIS DEED IS BEING RECORDED TO REMOVE THE WORDING (SPECIAL WARRANTY ACCOMMODATION DEED, NOT INSURED)

**Together with** all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of her, the said grantor, as well at law as in equity, of, in and to the same.

**To have and to hold** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns, forever.

**And** the said Grantors, for themselves and their heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that they, the said Grantors, and their heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, its successors and assigns, against them the said Grantors, and their heirs, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, by, from or under them shall and will

2

𝔚𝔞𝔯𝔯𝔞𝔫𝔱 𝔞𝔫𝔡 𝔉𝔬𝔯𝔢𝔳𝔢𝔯 𝔇𝔢𝔣𝔢𝔫𝔡.

𝔍𝔫 𝔚𝔦𝔱𝔫𝔢𝔰𝔰 𝔚𝔥𝔢𝔯𝔢𝔬𝔣, the party of the first part has hereunto set his hand and seal. Dated the day and year first above written.

𝔖𝔢𝔞𝔩𝔢𝔡 𝔞𝔫𝔡 𝔇𝔢𝔩𝔦𝔳𝔢𝔯𝔢𝔡
IN THE PRESENCE OF US:

By: RRM ASSOCIATES, LLC, A PENNSYLVANIA

LIMITED LIABILITY COMPANY

By:
_____
Ronald R. Donatucci, Sr.  Managing Member

Commonwealth of Pennsylvania  } ss
County of Philadelphia          }

AND NOW, this  6   day of AUGUST 2015, before me, the undersigned Notary Public, appeared Ronald R. Donatucci, Sr., who acknowledged himself to be the **Managing Member** of RRM Associates, LLC, a Pennsylvania Limited Liability Company and he as such Managing Member being authorized to do so, executed the foregoing instrument for the purposes therein contained  by signing the name of the Limited Liability Company by himself as Managing Member thereof.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
Notary Public
My commission expires _____ 11-25-17

The precise residence and the complete post office address of the above-named Grantee is:

104 Queen St

Phila, PA 19147
_____
On behalf of the Grantee

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Scott W. Froggatt, Notary Public
Upper Southampton Twp., Bucks County
My Commission Expires Nov. 25, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

3

# Deed

BRT # 88-4-3461-70
RRM Associates, LLC, a Pennsylvania
Limited Liability Company

TO

RRM Associates, LLC, a Pennsylvania
Limited Liability Company

Land Services USA, Inc.
1835 Market St, Suite 420
Philadelphia, PA  19103
Phone 215-563-5468 Fax 215-568-8219

03/12/2015 02:42PM

eRecorded In Philadelphia PA   Doc Id: 52945770
07/27/2015 12:58PM          Receipt#: 1509532
Page 1 of 6                 Rec Fee: $252.00
Commissioner of Records     Doc Code: D
State RTT: $959.50   Local RTT: $2,878.50

**SPECIAL WARRANTY ACCOMMODATION
DEED; NOT INSURED**

Prepared by and Return to:

Land Services USA, Inc.
1835 Market St, Suite 420
Philadelphia, PA  19103
15-563-5468

File No. PAFA15-0595

BRT # 88-4-3461-70

**This Indenture**, made the _22_ day of _JULY_ , _2015_

**Between**

    RONALD R. DONATUCCI

                  (hereinafter called the Grantor), of the one part, and

    RRM ASSOCIATES, LLC, A PENNSYLVANIA LIMITED LIABILITY
    COMPANY

                  (hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantor for and in consideration of the sum of One And 00/100 Dollars ($1.00) lawful money of the United States of America, unto him well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee.

    Street Address: 1030-32 South Colorado Street, Philadelphia, PA 19146

    ALL THAT CERTAIN lot or piece of ground with the two story brick messuage or tenement thereon erected situate on the West side of a 40 foot wide street called Stocker Street, at the distance of 242 feet Southward from the South side of Tidmarsh or Carpenter Street in the 30th Ward of the City of Philadelphia.

    CONTAINING in front or breadth on the said Stocker Street 16 feet and extending in length or depth Westward of that width between line parallel with the said Tidmarsh or Carpenter Street 49 feet to a four foot wide alley leading into Washington Avenue (lately called Prime Street).

    TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alleys as and for passageways and water-courses at all times hereafter, forever.

    BOUNDED Northward by ground granted or intended to have been granted unto Samuel Lawson on ground rent; Eastward by the said Stocker Street; Southward by ground granted or intended to have granted unto Thomas Bell on ground rent; and Westward by the said four foot wide alley.

Case 2:19-cv-01364-PBT  Document 1-1  Filed 04/01/19  Page 150 of 180

Case 2:19-cv-01364-MMB  Document 1-4  Filed 03/01/19  Page 51 of 51
08/12/2015 02:42PM
52945770  Page 2 of 6
07/27/2015 12:58PM

### SPECIAL WARRANTY ACCOMMODATION DEED

AND ALL THAT CERTAIN lot or piece of ground with the messuage or tenement thereon erected, hereditaments and appurtenances situate in the 30th Ward of the City of Philadelphia and Commonwealth of Pennsylvania, situate on the West side of Colorado Street at the distance of 258 feet Southward from the South side of Carpenter Street.

CONTAINING in front or breath on the said Colorado Street, 16 feet and extending of that width in length or depth Westward between lines parallel with said Carpenter Street 49 feet to a certain 4 feet wide alley which leads Southward into Washington Avenue.

BOUNDED Northward by ground now or late of William Bell; Southward by ground now or late of Thomas Bell; Eastward by said Colorado Street; and Westward by the aforementioned 4 feet wide alley.

BEING known as 1030-32 South Colorado Street.

TOGETHER BEING Parcel No.: 88-4-3461-70.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley, as and for a passageway and watercourse at all times hereafter, forever.

BEING the same premises which Paul Retaks, by Deed dated 4/29/1987 and recorded in Philadelphia County in Deed Book FHS 774 page 513, conveyed unto Ronald R. Donatucci and Robert C. Donatucci, Co-partners, in fee.

FUTHER BEING the same premises which Philadelphia Authority for Industrial Development, a Body Politic and Corporate existing under the laws of the Commonwealth of Pennsylvania, by Deed dated 816/1989 and recorded 8/31/1989, in Philadelphia County in Deed Book 1428 page 320, conveyed unto Ronald R. Donatucci and Robert C. Donatucci, Co-Partners, in fee.

FURTHER BEING the same premises which Robert C. Donatucci by Deed dated 8/16/1989 and recorded 8/31/1989 in Philadelphia County in Deed Book 1428 page 327, conveyed unto Ronald R. Donatucci and Robert C. Donatucci, Co-partners, in fee.

AND the said Robert C. Donatucci being so seized thereof, in fee, departed this life the 9th day of November A.D., 2010, Intestate, and Letters of Administration were duly granted by the Register of Wills of Philadelphia on the 19th day of April A.D., 2011 unto Maria P. Donatucci in Administration No. A1686-2011.

AND ALSO BEING the same premises which Maria P. Donatucci, Administratrix of the Estate of Robert C. Donatucci, deceased by Deed dated 6/12/2013 and recorded 6/13/2013 in Philadelphia County in Document No. 52653361, conveyed unto Robert R. Donatucci, as sole owner, in fee.

**Together with** all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of him, the said grantor, as well at law as in equity, of, in and to the same.

**To have and to hold** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns, forever.

**And** the said Grantor, for himself and his heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that he, the said Grantor, and his heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, against him, the said Grantor, and his heirs, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

**In Witness Whereof**, the herein-named Grantor(s) has hereunto set his hand and seal. Dated the day and year first above written.

      **Sealed and Delivered**
      IN THE PRESENCE OF US:

_____      _____ {SEAL}
                                          Ronald R. Donatucci

Commonwealth of Pennsylvania  } ss
County of Philadelphia        }

    On this, the __22__ day of __JULY__, __2015__, before me, the undersigned Notary Public, personally appeared, Ronald R. Donatucci known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                         Notary Public
                         My commission expires __11-25-17__

The precise residence and the complete post office address of the above-named Grantee is:

    104 Queen Street
    Philadelphia, PA 19147

        On behalf of the Grantee

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Scott W. Froggatt, Notary Public
Upper Southampton Twp., Bucks County
My Commission Expires Nov. 25, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

3

Case 2:19-cv-01364-PBT   Document 1-1   Filed 04/01/19   Page 152 of 180
Case 2:19-cv-00383-WB   Document 1-5   Filed 03/01/19   Page 2 of 13
52945770   Page 4 of 6
07/27/2015 12:58PM

# Deed

BRT # 88-4-3461-70

From:

Ronald R. Donattucci

To:

RRM Associates, LLC, a Pennsylvania
Limited Liability Company

Property Address:

1030-32 South Colorado Street
Philadelphia, PA 19146

SPECIAL WARRANTY
ACCOMMODATION DEED
NOT INSURED

Land Services USA, Inc.
1835 Market St, Suite 420
Philadelphia, PA 19103
Phone 215-563-5468 Fax 215-568-8219

Case 2:19-cv-00893-MMB Recorded in Philadelphia PA Document 5 Doc Id: 53663874 13
06/13/2013 01:50PM        Receipt#: 1254390
Page 1 of 8             Rec Fee: $230.00
Commissioner of Records   Doc Code: D
State RTT: $254.80  Local RTT: $764.40

Prepared by and Return to:

Diversified Settlement Services, Inc.
1206 Veterans Highway
Bristol, PA 19007
215-781-1900

File No. DSS-41802

Tax Parcel No.: 7S24-237, 7S24-238 & 7S24-174

BRT #871037850

*1214 Annin*

## This Indenture, made the _12th_ day of _JUNE_, _2013_,

### Between

    MARIA P. DONATUCCI, ADMINISTRATRIX OF THE ESTATE OF ROBERT
    C. DONATUCCI, DECEASED

                     (hereinafter called the Grantor), of the one part, and

    RONALD R. DONATUCCI

                     (hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantor for and in consideration of the sum of One And 00/100 Dollars ($1.00) lawful money of the United States of America, unto it well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, as sole owner

    Street Address: 1223 Federal Street, 1229 Federal Street, 1216 Annin Street, Philadelphia, PA 19147

Premises "A"

ALL that certain lot or piece of ground with the buildings and improvements thereon erected.

Situate on the Northerly side of Federal Street at the distance of One Hundred Sixty Nine Feet Eleven Inches (169' 11") from the Westwardly from the Westerly side of 12th Street in the 2nd Ward of the City of Philadelphia.

Containing in front or breadth on the said Federal Street Seventeen feet (17') and extending of that width in length or depth between parallel lines with said 12th Street Ninety Five Feet (95') on the Westerly line thereof and Ninety Four Feet Eight Inches (94' 8") on the Easterly line thereof

Being No.: 1223 Federal Street

FOR INFORMATIONAL PURPOSES ONLY:

OPA Number: 871037850

Plan & Parcel Number: 7S24-237

<u>Premises "B"</u>

All that certain lot or piece of ground with the buildings and improvements thereon erected.

Situate on the South side of Annin Street at the distance of One Hundred Fifty Two Feet Eleven Inches (152' 11") Westward from the West side of 12th Street in the 26th Ward of the City of Philadelphia.

Containing in front or breadth on the said Annin Street Seventeen Feet (17') and extending of that width in length or depth Southward between parallel lines with 12th Street Seventy Five Feet (75').

Being No.: 1229 Federal Street

FOR INFORMATIONAL PURPOSES ONLY:

OPA Number: 884340450

Plan & Parcel Number: 7S24-174

<u>Premises "C"</u>

All that certain lot or piece of ground with the buildings and improvements thereon erected.

Situate on the North side of Federal Street at the distance of Two Hundred Twenty Feet Seven and One-half Inches (220' 7 ½") Westward from the West side of 12th Street in the 26th Ward of the City of Philadelphia.

Containing in front or breadth on the said Federal Street Seventeen Feet Three and One-half Inches (17' 3 ½") and extending of that width in length or depth between parallel lines at right angles to said North side of Federal Street Seventy Two Feet Ten Inches (72' 10")

Being No.: 1216 Annin Street

FOR INFORMATIONAL PURPOSES ONLY:

OPA Number: 021252105

Plan & Parcel Number: 7S24-238

2

BEING the premises which Philadelphia Authority for Industrial Development, by Deed dated September 23, 1996, and recorded in the Philadelphia County Recorder of Deeds Office, in Deed Book JTD 617, Page 52, page 495, granted and conveyed unto Ronald R. Donatucci and Robert C. Donatucci, Co-Partners, in fee simple.

FURTHER BEING the premises which Ronald R. Donatucci and Robert C. Donatucci, Co-Partners, by Deed dated March 30, 1998, and recorded March 31, 1998, in the Philadelphia County Recorder of Deeds Office, in Deed Book 630, page 495, granted and conveyed unto Ronald R. Donatucci and Robert C. Donatucci, Co-Partners, in fee simple.

𝔗𝔬𝔤𝔢𝔱𝔥𝔢𝔯 𝔴𝔦𝔱𝔥 all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said grantor, as well at law as in equity, of, in and to the same.

𝔗𝔬 𝔥𝔞𝔳𝔢 𝔞𝔫𝔡 𝔱𝔬 𝔥𝔬𝔩𝔡 the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, his heirs and assigns, to and for the only proper use and behalf of the said Grantee, his heirs and assigns, forever.

𝔄𝔫𝔡 the said Grantor, for itself, its successors and assigns, does, by these presents, covenant, grant and agree, to and with the said Grantee, his heirs and assigns, that it, the said Grantor, and its successors and assigns, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, his heirs and assigns, against it, the said Grantor, and its successors and assigns, will warrant and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

𝔍𝔫 𝔚𝔦𝔱𝔫𝔢𝔰𝔰 𝔚𝔥𝔢𝔯𝔢𝔬𝔣, the party of the first part has caused its common and corporate seal to be affixed to these presents by the hand of its ADMINISTRATRIX, and the same to be duly attested by its Secretary. Dated the day and year first above written.

ATTEST:                                          ESTATE OF ROBERT C. DONATUCCI

_Brenda L. Maller_                          By: _Maria P. Donatucci_
                                                MARIA P. DONATUCCI, ADMINISTRATRIX

{SEAL}

3

Case 2:19-cv-01364-PBT   Document 1-1   Filed 04/01/19   Page 156 of 180
Case 2:19-cv-00893-MMB   Document 1-5   Filed 03/01/19   Page 6 of 13
08/13/2013 01:35PM

Commonwealth of Pennsylvania } ss
County of  DAUPHIN }

AND NOW, this 12 day of JUNE , 2013 before me, the undersigned Notary Public, appeared **MARIA P. DONATUCCI**, who acknowledged himself/herself to be the **ADMINISTRATRIX** of **ESTATE OF ROBERT C. DONATUCCI**, and he/she, as such **ADMINISTRATRIX** being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the estate by himself/herself as **ADMINISTRATRIX**.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

Notary Public
My commission expires  MARCH 8, 2016

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Denise A. Johnson, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires March 8, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

The precise residence and the complete post office address of the above-named Grantee is:

104 Queen Street
Philadelphia, PA 19147

On behalf of the Grantee

4

# Deed

Tax Parcel No.: 7S24-237, 7S24-238 & 7S24-174

BRT #871037850

MARIA P. DONATUCCI,
ADMINISTRATRIX OF THE ESTATE OF
ROBERT C. DONATUCCI
TO

RONALD R. DONATUCCI

Diversified Settlement Services, Inc.
1206 Veterans Highway
Bristol, PA 19007
Phone 215-781-1900 Fax 215-781-6340

# Philadelphia Exemption Affidavit

City of Philadelphia
Records Department

BEFORE ME, the undersigned Notary,

*DENISE A. JOHNSON*

on this __12__ day of __JUNE__, 20 __13__, personally appeared __RONALD R. DONATUCCI__ known to me to be a credible person and of lawful age, who being by me first duly sworn, on his/her/their oath, deposes and says:

In accordance with Section 2-200 of the City of Philadelphia Code of Ordinances, the attached deed is being filed by __Diversified Settlement Services, Inc.__, a

__X__ -Title Insurance company, as defined in 40 P.S. § 910-1, located at

1205 Veterans Highway, Bristol, PA 19007

_____ - Law Firm/Individual Attorney, _____ Bar ID # _____, located at


The attached deed submitted for recording is for the following property address:

1223 Federal Street, Philadelphia, PA 19147, 1229 Federal Street, Philadelphia, PA 19147, 1216 Annin Street, Philadelphia, PA 19147

RONALD R. DONATUCCI


Subscribed and sworn to before me, this __12__ day of __JUNE__, 20 __13__

Signature of Notary

*DENISE A. JOHNSON*
Typed Name of Notary

NOTARY PUBLIC

My commission expires: __MARCH 8__, 20 __13__

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Denise A. Johnson, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires March 8, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

07/02/2014 09:43AM       Receipt#: 1379799
Page 1 of 6                      Rec Fee: $235.00
Commissioner of Records    Doc Code: D
State RTT: $7,850.00·   Local RTT: $23,550.00

Prepared by and Return to:

Sentex Settlement Services, Inc.
2655 Philmont Avenue
Suite 206
Huntingdon Valley, PA 19006
15-947-8277

1507

File No. 3798-S

BRT # 888010180,888010182,888010184,
888010186

## This Indenture, made the 26 ᵗʰ day of _June_ , 2014,

Between

BENEFICIAL SAVINGS BANK

(hereinafter called the Grantor), of the one part, and

1507-1509 E. MOYAMENSING, LLC

(hereinafter called the Grantees), of the other part,

Witnesseth, that the said Grantor for and in consideration of the sum of Seven Hundred Eighty-Five Thousand And 00/100 Dollars ($785,000.00) lawful money of the United States of America, unto it well and truly paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantees, as tenants by the entirety

Street Address: 1507 E. Moyamensing Ave, Units A, B, C, D, Philadelphia, PA 19147

Premises "A"
SITUATE in the City of Philadelphia and Commonwealth of Pennsylvania, as designated in Declaration of Condominium of the Precinct Lofts of Pennsport, A Condominium, bearing date the 3ʳᵈ day of June, A.D., 2008 and recorded in the Department of Records, in and for the City of Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania on the 17ᵗʰ day of July, A.D. 2008, as ID No. 51938952, as amended by First Amendment to Declaration of Condominium for Pennsport Condominium, A Condominium, dated 09/07/2009 and recorded as ID No. 5214908 in aforesaid office. Being and designated on Declaration Plan as Unit A as more fully described in such Declaration Plan and Declaration Amendment together with a proportionate undivided interest in the Common Elements (as defined in such Declaration and Amendment) of 25% for each unit.

BEING No. 1507 East Moyamensing Avenue Unit A
BEING BRT Nos. 888010180

Premises "B"
SITUATE in the City of Philadelphia and Commonwealth of Pennsylvania, as designated in Declaration of Condominium of the Precinct Lofts of Pennsport, A Condominium, bearing date the 3rd day of June, A.D., 2008 and recorded in the Department of Records, in and for the City of Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania on the 17th day of July, A.D. 2008, as ID No. 51938952, as amended by First Amendment to Declaration of Condominium for Pennsport Condominium, A Condominium, dated 09/07/2009 and recorded as ID No. 5214908 in aforesaid office. Being and designated on Declaration Plan as Unit B as more fully described in such Declaration Plan and Declaration Amendment together with a proportionate undivided interest in the Common Elements (as defined in such Declaration and Amendment) of 25% for each unit.

BEING No. 1507 East Moyamensing Avenue Unit B
BEING BRT Nos. 888010182

Premises "C"
SITUATE in the City of Philadelphia and Commonwealth of Pennsylvania, as designated in Declaration of Condominium of the Precinct Lofts of Pennsport, A Condominium, bearing date the 3rd day of June, A.D., 2008 and recorded in the Department of Records, in and for the City of Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania on the 17th day of July, A.D. 2008, as ID No. 51938952, as amended by First Amendment to Declaration of Condominium for Pennsport Condominium, A Condominium, dated 09/07/2009 and recorded as ID No. 5214908 in aforesaid office. Being and designated on Declaration Plan as Unit C as more fully described in such Declaration Plan and Declaration Amendment together with a proportionate undivided interest in the Common Elements (as defined in such Declaration and Amendment) of 25% for each unit.

BEING No. 1507 East Moyamensing Avenue Unit C
BEING BRT Nos. 888010184

Premises "D"
SITUATE in the City of Philadelphia and Commonwealth of Pennsylvania, as designated in Declaration of Condominium of the Precinct Lofts of Pennsport, A Condominium, bearing date the 3rd day of June, A.D., 2008 and recorded in the Department of Records, in and for the City of Philadelphia, County of Philadelphia, and Commonwealth of Pennsylvania on the 17th day of July, A.D. 2008, as ID No. 51938952, as amended by First Amendment to Declaration of Condominium for Pennsport Condominium, A Condominium, dated 09/07/2009 and recorded as ID No. 5214908 in aforesaid office. Being and designated on Declaration Plan as Unit D as more fully described in such Declaration Plan and Declaration Amendment together with a proportionate undivided interest in the Common Elements (as defined in such Declaration and Amendment) of 25% for each unit.

BEING No. 1507 East Moyamensing Avenue Unit D
BEING BRT Nos. 888010186

BEING the same premises which Jewell Williams, Sheriff of the County of Philadelphia, by Deed dated May 27, 2014, and recorded June 18, 2014, in the Office of the Recorder of Deeds in and for the County of Philadelphia, Pennsylvania, as Instrument No. 52794198, granted and conveyed unto Beneficial Mutual Savings Bank, in fee.

Together with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said grantor, as well at law as in equity, of, in and to the same.

To have and to hold the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their successors, heirs and assigns, to and for the only proper use and behoof of the said Grantees, their successors, heirs and assigns, forever.

And the said Grantor, for itself, its successors and assigns, does, by these presents, covenant, grant and agree, to and with the said Grantees, their successors, heirs and assigns, that it, the said Grantor, and its successors and assigns, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their successors, heirs and assigns, against it, the said Grantor, and its successors and assigns, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, shall and will

Warrant and Forever Defend.

In Witness Whereof, the party of the first part has caused its common and corporate seal to be affixed to these presents by the hand of its       President, and the same to be duly attested by its Secretary. Dated the day and year first above written.

ATTESTED:

BENEFICIAL SAVINGS BANK

By: Melissa S. Dick

Melissa Dick, Senior Vice President

3

Commonwealth of Pennsylvania  } ss
County of Philadelphia         }

    AND NOW, this 26th day of June, 2014, before me, the undersigned Notary Public, appeared __Melissa Dick__, who acknowledged himself/herself to be the __Senior Vice President__ *(title)* of Beneficial Savings Bank, a corporation, and he/she, as such __Senior Vice President__ *(title)* being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself as __Senior Vice President__ *(title)*.

    IN WITNESS WHEREOF, I hereunder set my hand and official seal.

Notary Public

My commission expires _____

The precise residence and the complete post office address of the above-named Grantees is:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHASA SMITH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 19, 2018

PO Box 4740
Philadelphia PA 19134

On behalf of the Grantees

4

# Deed

BRT # 888010180,888010182,888010184,
888010186

Beneficial Savings Bank

TO

1507-1509 E. Moyamensing, LLC

Sentex Settlement Services, Inc.
2655 Philmont Avenue
Suite 206
Huntingdon Valley, PA 19006
Phone 215-947-8277 Fax 215-933-5280

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Meghan E. Klein, individually and as Executrix of the Estate of Michael P. Donatucci | : | CIVIL ACTION |
| v. | : | |
| Ronald R. Donatucci, Sr., Esq., individually and in his capacity as the Register of Wills of the City of Philadelphia and Clerk of the Orphans' Court Division of the Court of Common Pleas of Phila. et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                              (✓)

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( )

| | | |
|---|---|---|
| 3-1-19 | *Robert A. Klein, Esq.* | *Plaintiffs* |
| Date | Attorney-at-law | Attorney for |
| 610-889-3200, Ext. 2 | 610-889-9564 | rak@berklein.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 – Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

JS 44 (Rev. 06/17)

Case 2:19-cv-00893  **CIVIL COVER SHEET**  Filed 03/01/19   Page 1 of 2

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Meghan E. Klein, individually and in her capacity as Executrix of the Estate of Michael P. Donatucci

### DEFENDANTS
Ronald R. Donatucci, Sr., Esq., individually and in his capacity as Register of Wills of the City of Philadelphia et al.

**(b)** County of Residence of First Listed Plaintiff   Montgomery/Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert A. Klein, Esq., Berkowitz Klein, LLP, 629 B Swedesford Rd., Malvern, PA 19355, 610-889-3200, ext. 2 (Local Counsel)

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983
Brief description of cause:
Violation of civil rights (Equal Protection, Egregious Abuse of Power, Free Speech, Access to Courts, Takings)

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
In Excess $3 million

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
3/01/2019

SIGNATURE OF ATTORNEY OF RECORD
*Local Counsel:*
*Robert A. Klein, Esq., Berkowitz Klein LLP*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

#### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity. Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Note:


This Designation Form must be <u>signed</u> before submission to the Clerk's Office *or a case number will not be assigned.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 629 Swedesford Road, Malvern, PA 19355 _____

Address of Defendant: _____ Room 180, City Hall, Philadelphia, PA 19107 _____

Place of Accident, Incident or Transaction: _____ Chester and Montgomery Counties _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ N/A _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __3-1-19__   _____Robert A. Klein, Esq._____   __PA 44670__
                    *Attorney-at-Law / Pro Se Plaintiff   Local Counsel*   *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

**A.   Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     *(Please specify): _____*

**B.   Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
     *(Please specify): _____*

---

ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Robert A. Klein _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __3/01/2019__   _____Robert A. Klein, Esq._____   __PA 44670__
                       *Attorney-at-Law / Pro Se Plaintiff   Local Counsel*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA         19      893

Civil Action No#_____

*APPLICATION FORM FOR THOSE ATTORNEYS SEEKING TO PRACTICE IN THIS COURT PURSUANT TO
LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b)*

I. APPLICANT'S STATEMENT

I, _____ Joshua Wurtzel, Esq. _____ the undersigned, am an attorney who is not currently admitted to
either the bar of this court or the bar of the Supreme Court of Pennsylvania, and I hereby apply for admission to practice in this court
pursuant to Local Rule of Civil Procedure 83.5.2(b), and am submitting a check, number _1137_____, for the $40.00 admission
fee.

A.      *I state that I am currently admitted to practice in the following state jurisdictions:*

New York_____        04/28/2014_____        5210356_____
(State where admitted)      (Admission date)            (Attorney Identification Number)


_____        _____        _____
(State where admitted)      (Admission date)            (Attorney Identification Number)


_____        _____        _____
(State where admitted)      (Admission date)            (Attorney Identification Number)


B.      *I state that I am currently admitted to practice in the following federal jurisdictions:*

SDNY_____            09/09/2014_____        JW5191_____
(Court where admitted)      (Admission date)            (Attorney Identification Number)

EDNY_____            09/09/2014_____        JW5191_____
(Court where admitted)      (Admission date)            (Attorney Identification Number)

COA, 2nd Circuit_____        _____        JW5191_____
(Court where admitted)      (Admission date)            (Attorney Identification Number)

C.      *I state that I am at present a member of the aforesaid bars in good standing, and that I will demean myself as an attorney of
this court uprightly and according to law, and that I will support and defend the Constitution of the United States.*

I am entering my appearance for         Plaintiffs_____

_____
(Applicant's Signature)

2/28/2019
(Date)

APPLICANT'S FIRM NAME / ADDRESS / TELEPHONE NUMBER:

Schlam Stone & Dolan LLP_____

26 Broadway New York, NY 10004_____

(212) 344-5400_____

Sworn and subscribed before me this

28th Day of February, 2019

_____
Notary Public

GRETA  JERNSTEDT
Notary Public State of New York
No. 31-xxxxx12
Qualified in New York County
Commission Expires April 1, 2019

10/04

II. SPONSOR'S STATEMENT, MOTION AND CERTIFICATE OF SERVICE

The undersigned member of the bar of the United States District Court for the Eastern District of Pennsylvania hereby moves for the admission of ____Joshua Wurtzel, Esq.____ to practice in said court pursuant to Local Rule of Civil Procedure 83.5.2(b), and certify that I know (or after reasonable inquiry believe) that the applicant is a member in good standing of the above-referenced state and federal courts and that the applicant's private and personal character is good. I certify that this application form was on this date mailed, with postage prepaid, to all interested counsel.

| Robert A. Klein | | 1986 | PA 44670 |
|---|---|---|---|
| Sponsor's Name | Sponsor's Signature | Admission date | Attorney Identification No. |

SPONSOR'S OFFICE ADDRESS AND TELEPHONE NUMBER:

Berkowitz Klein, LLP

629 B Swedesford Road, Swedesford Corporate Center, Malvern, PA 19355-1530

610-889-3200, ext. 2

Sworn and subscribed before me this

___ Day of _____, 200__

_____
Notary Public

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGHAN E. KLEIN, et al,                    :        CIVIL ACTION
                                           :
                                           :
           v.                              :
RONALD R. DONATUCCI, SR, ESQ  et al        :
                                           :        NO.


CERTIFICATE OF SERVICE

I declare under penalty of perjury that a copy of the application of___Joshua Wurtzel, Esq._____

Esquire, to practice in this court pursuant to Local Rule of Civil Procedure 83.5.2(b) and the relevant

proposed Order which, if granted, would permit such practice in this court was served as follows:


All Defendants listed in the complaint._____

To be served together with original process._____

_____


_____
Signature of Attorney

Robert A. Klein, Esq.
_____
Name of Attorney

Plaintiffs
_____
Name of Moving Party

2/28/2019
_____
Date



APPENDIX X

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGHAN E. KLEIN, et al.

                    :    CIVIL ACTION
                    :
       v.             :
RONALD R. DONATUCCI, SR., ESQ  et al  :
                    :    NO.

19     893

ORDER

AND NOW, this         Day of            , 2019 , it is hereby

ORDERED that the application of <u>Joshua Wurtzel, Esq.</u>, Esquire, to practice in this

court pursuant to Local Rule of Civil Procedure 83.5.2(b) is

    □  GRANTED.

    □  DENIED.

_____ J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA       1 9      8 9 3 

Civil Action No#_____

*APPLICATION FORM FOR THOSE ATTORNEYS SEEKING TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b)*

I. APPLICANT'S STATEMENT

I, _____Jeffrey M. Eilender, Esq._____ the undersigned, am an attorney who is not currently admitted to either the bar of this court or the bar of the Supreme Court of Pennsylvania, and I hereby apply for admission to practice in this court pursuant to Local Rule of Civil Procedure 83.5.2(b), and am submitting a check, number ___1137___, for the $40.00 admission fee.

A.       I state that I am currently admitted to practice in the following state jurisdictions:

New York_____     04/13/1992_____     2479046_____
(State where admitted)       (Admission date)          (Attorney Identification Number)

_____     _____     _____
(State where admitted)       (Admission date)          (Attorney Identification Number)

_____     _____     _____
(State where admitted)       (Admission date)          (Attorney Identification Number)

B.       I state that I am currently admitted to practice in the following federal jurisdictions:

SDNY_____     07/08/1992_____     JE8250_____
(Court where admitted)       (Admission date)          (Attorney Identification Number)

EDNY_____     07/08/1992_____     JE8250_____
(Court where admitted)       (Admission date)          (Attorney Identification Number)

COA, 2nd Circuit_____     _____     JE8250_____
(Court where admitted)       (Admission date)          (Attorney Identification Number)

C.       I state that I am at present a member of the aforesaid bars in good standing, and that I will demean myself as an attorney of this court uprightly and according to law, and that I will support and defend the Constitution of the United States.

I am entering my appearance for          Plaintiffs_____

_____
(Applicant's Signature)

2/28/2019
(Date)

APPLICANT'S FIRM NAME / ADDRESS / TELEPHONE NUMBER:

Schlam Stone & Dolan LLP_____

26 Broadway New York, NY 10004_____

(212) 344-5400_____

Sworn and subscribed before me this

28th Day of February 200 19
_____
Notary Public

GRETA  JERUSTEOT
Notary        New York
C                 County
Commission Expired April 1, 2?

10/04

II. SPONSOR'S STATEMENT, MOTION AND CERTIFICATE OF SERVICE

    The undersigned member of the bar of the United States District Court for the Eastern
District of Pennsylvania hereby moves for the admission of _____Jeffrey M. Eilender, Esq_____ to
practice in said court pursuant to Local Rule of Civil Procedure 83.5.2(b), and certify that I know (or
after reasonable inquiry believe) that the applicant is a member in good standing of the above-
referenced state and federal courts and that the applicant's private and personal character is good.  I
certify that this application form was on this date mailed, with postage prepaid, to all interested
counsel.

Robert A. Klein            _____        1986            PA 44670
Sponsor's Name            Sponsor's Signature        Admission date        Attorney
                                Identification No.


SPONSOR'S OFFICE ADDRESS AND TELEPHONE NUMBER:

Berkowitz Klein, LLP

629 B Swedesford Road, Swedesford Corporate Center, Malvern, PA 19355-1530

610-889-3200, ext. 2


Sworn and subscribed before me this

____ Day of _____, 200__


_____
Notary Public

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGHAN E. KLEIN, et al.                            :        CIVIL ACTION
                                                   :
                                                   :
            v.                                     :
RONALD R. DONATUCCI, SR, ESQ  et al                :
                                                   :        NO.

CERTIFICATE OF SERVICE

I declare under penalty of perjury that a copy of the application of _____ Jeffrey M. Ellender, Esq. _____

Esquire, to practice in this court pursuant to Local Rule of Civil Procedure 83.5.2(b) and the relevant

proposed Order which, if granted, would permit such practice in this court was served as follows:

All Defendants listed in the complaint.

To be served together with original process.

Signature of Attorney

Robert A. Klein, Esq.
Name of Attorney

Plaintiffs
Name of Moving Party

2/28/2019
Date

APPENDIX X

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19      8931

MEGHAN E. KLEIN, et al.                                 :        CIVIL ACTION
                                                        :
                          v.                            :
RONALD R. DONATUCCI, SR, ESQ. et al                     :
                                                        :        NO.

ORDER

AND NOW, this            Day of              , 2019 , it is hereby

ORDERED that the application of Jeffrey M. Eilender, Esq.        , Esquire, to practice in this

court pursuant to Local Rule of Civil Procedure 83.5.2(b) is

☐  GRANTED.

☐  DENIED.

_____
                                            J.

## VERIFICATION

The undersigned, having read the attached Complaint, verifies that the pleading/filing is based on information gathered by and/or in consultation with counsel. The language of the pleading/filing is that of counsel and not the signer. Signer verifies that she has read the within pleading/filing and that it is true and correct to the best of the signer's knowledge, information and belief. To the extent that the contents of the pleading/filing are that of counsel, verifier has relied upon counsel in taking this Verification.

This Verification is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: 3/21/2019

Meghan E. Klein, individually, and
in her capacity as Executrix of the
Estate of Michael P. Donatucci

# IN THE COURT OF COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

MEGHAN E. KLEIN, individually and in her capacity as Executrix of the ESTATE OF MICHAEL P. DONATUCCI

Docket No. 2018-12018-TT

*Plaintiffs*

*vs.*

RONALD R. DONATUCCI, SR., ESQUIRE, individually and in his capacity as REGISTER OF WILLS OF THE CITY OF PHILADELPHIA and CLERK OF THE ORPHANS' COURT DIVISION OF THE COURT OF COMMON PLEAS OF PHILADELPHIA, *et al.*

*Defendants*



## CERTIFICATE OF SERVICE

It is hereby certified that on the 21st day of March, 2019, a true and correct court-stamped copy of the foregoing Plaintiffs' Complaint with Notice to Plead and exhibits was served by U.S. Mail, postage prepaid, upon the following parties and/or their counsel of record:

Ronald R. Donatucci, Sr., Esquire
Office of the Register of Wills of Philadelphia
Room 180, City Hall
Philadelphia, PA 19107

Ms. Debra J. Foglietta
1402 E. Moyamensing Avenue, Unit 3
Philadelphia, PA 19107

Jeffrey B. McCarron, Esquire
Swartz Campbell, LLC
50 S. 16th Street, 28th Floor
Philadelphia, PA 19102
Attorneys for Defendants James F. Mannion, Esquire and Mannion Prior, LLP

1

Paul C. Troy, Esquire
Kane, Pugh, Knoell, Troy & Kramer LLP
510 Swede Street
Norristown, PA 19401-4807
Attorneys for Defendant Frank DeSimone, Esquire

**BERKOWITZ KLEIN, LLP**

DATE: March 21, 2019

By: /s/ Robert A. Klein
Robert A. Klein, Esquire
Local Counsel for Plaintiffs
629 B Swedesford Road
Swedesford Corporate Center
Malvern, PA 19355
O: 610-889-3200

2